UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-22780-CIV-SEITZ-McALILEY

FILED BY
2006 APR 10 PM 4:35

PAUL ORAVEC,

     Plaintiff,

v.

SUNNY ISLES LUXURY VENTURES L.C.,
THE SIEGER SUAREZ ARCHITECTURAL
PARTNERSHIP, INC., CHARLES M.
SIEGER, JOSE J. SUAREZ, DEZER
PROPERTIES LLC, DEZER
DEVELOPMENT, LLC, MICHAEL DEZER,
GIL DEZER, THE TRUMP CORPORATION,
DONALD J. TRUMP, RESIDENCES AT
OCEAN GRANDE, INC. and ROYAL
DEVELOPMENT HOLDINGS, LLC.,

     Defendants.

_____/

## TRUMP AND DEVELOPER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

     Defendants Sunny Isles Luxury Ventures L.C. ("Sunny Isles"), Dezer Properties LLC ("Dezer Properties"), Dezer Development, LLC ("Dezer Development"), Michael Dezer, Gil Dezer, The Trump Corporation ("Trump Corporation"), Donald J. Trump ("Trump"), Residences at Ocean Grande, Inc. ("Residences"), and Royal Development Holdings, LLC ("Royale Development"), through their undersigned counsel, pursuant to Rule 56, Fed. R. Civ. P., hereby move this Honorable Court to enter Final Summary Judgment in its favor against Plaintiff, Paul Oravec ("Oravec"), as to the claims for relief set forth in Plaintiff's Second Amended Complaint for Copyright Infringement, Damages and Permanent Injunctive Relief . As will be made clear below, there are no genuine issues of material fact as to the bases for the Defendants' Motion, and



the Defendants are entitled to judgment as a matter of law and attorney's fees pursuant to 17 U.S.C. § 505.

## I.   **INTRODUCTION**

Oravec, a self-described architect who happens to possess no architect's license, alleges that rudimentary designs he created for a building for which he has a copyright has been infringed due to the design and development by the Defendants of two buildings in Sunny Isles, Florida – the Trump Palace and the Trump Royale.   Separate from the fact that there was simply no infringement here, there are numerous weaknesses and deficiencies in Plaintiff's case.

Plaintiff's three-count Second Amended Complaint is based upon allegations of copyright infringement.   (*See* Exhibit A.)   Count I of Plaintiff's Second Amended Complaint seeks permanent injunctive relief, damages and other remedies based on Sunny Isles', The Sieger Suarez Architectural Partnership, Inc.'s ("Sieger Suarez"), Charles M. Sieger's ("Sieger"), Jose J. Suarez's ("Suarez"), and Dezer Properties' willful, knowing, and intentional copyright infringement in violation of Plaintiff's rights under the Copyright Law of the United States, 17 U.S.C. § 101, *et. seq.* (*See* 2nd Amend. Comp. at ¶ 5, 41-45.) Count II of Plaintiff's Second Amended Complaint seeks, under U.S. and Florida common law, damages, injunctive relief and other remedies for vicarious copyright infringement by Dezer Development, Michael Dezer, Gil Dezer, the Trump Corporation, and Trump. (*See* 2nd Amend. Comp. at ¶ 5, 46-56.) Count III of Plaintiff's Second Amended Complaint seeks, under U.S. and Florida common law, damages, injunctive relief and other remedies for contributory copyright infringement by the Trump Corporation and Trump. (*See* 2nd Amend. Comp. at ¶ 5, 57-63.)

According to Plaintiff's Second Amended Complaint, Oravec alleges that he designed a unique building concept consisting of twin tower buildings, each in a convex/concave

configuration and having three distinct segments. (*See* 2nd Amend. Comp. at ¶ 21.) Oravec further alleges that at sometime between the years of 1996 and 1997, he created a number of full-scale drawings, models and computer generated color schematics of this concept. (*See* 2nd Amend. Comp. at ¶ 21.) Despite not being a licensed architect in the United States, Plaintiff, in violation of Fla. Stat. 481.223,[1] and Florida Criminal Statutes §§ 775.082-775.083 (Misdemeanors in the 1st Degree),[2] misrepresented himself as an architect and began to market his design. In or about 1998, Sieger Suarez, was retained to design a hotel and residential condominiums for the location/site at issue. Oravec alleges that the twin towers (now named Trump Palace and Trump Royale), which were designed by Sieger Suarez, are a copy of his twin tower design he allegedly created back in 1996 and 1997. Oravec's entire case is based upon his unsupported speculation that someone somewhere, provided his alleged design to Sieger Suarez, or that Sieger Suarez and/or other named Defendants were given access to, or a reasonable opportunity to view Oravec's design and copied it.

Looking at the record in the above-styled action as a whole, there are no genuine issues of material fact as to any of Oravec's claims within his Second Amended Complaint. As to As to Count I for direct copyright infringement, Final Summary Judgment should be entered in favor of Sunny Isles and Dezer Properties based upon the undisputed material fact that the entities of Sunny Isles and Dezer Properties are not the developer and/or owner for either of the buildings at issue in this case, the Trump Palace or the Trump Royale.

As to Count II for vicarious copyright infringement, Final Summary Judgment should be entered in favor of Dezer Development based upon the undisputed material fact that Dezer Development is not the developer and/or owner for either of the buildings at issue in this case, the

---

[1] Fla. Stat. § 481.223: a person may not knowingly "[p]ractice architecture unless the person is an architect or a registered architect." (*See* Exhibit B.)
[2] (Exhibit C.)

Trump Palace or the Trump Royale. In addition, Final Summary Judgment should be entered in favor of Michael Dezer and Gil Dezer as to Count II based upon the undisputed material fact that Oravec has failed to establish that Michael Dezer and Gil Dezer has or will derive direct profit from the alleged infringement of the Trump Palace and the Trump Royale. Furthermore, Final Summary Judgment should also be entered in favor of the Trump Corporation and Trump as to Count II based upon the undisputed material fact that neither the Trump Corporation nor Trump had the ability to exercise their right to stop and/or limit the alleged direct infringement.

As to Count III for contributory infringement, Final Summary Judgment should be entered in favor of the Trump Corporation and Trump based upon the undisputed material fact that the Trump Corporation and Trump had no knowledge of the alleged infringement and did not materially contribute to the alleged infringement.

Final Summary Judgment should be entered in favor of the Trump and Developer Defendants as to damages based upon the undisputed fact that there is no conceivable connection between the alleged infringement and the revenues or profits from the sales of the condominium units; and assuming, *arguendo*, the existence of a conceivable connection, Oravec has offered only speculation as to the existence of a causal link between the infringement and the revenues or profits.

Final Summary Judgment in favor of the Trump and Developer Defendants is appropriate as to the Affirmative Defense of Laches based upon the undisputed facts that Oravec delayed asserting his rights of this claim for approximately twenty (20) months, Oravec provided no reasonable excuse for this delay, and Oravec's delay caused the Trump and Developer Defendants undue prejudice due to the fact that construction of the alleged infringing building, the Trump Palace, was all but complete when Oravec finally filed the instant claim.

Final Summary Judgment in favor of the Trump and Developer Defendants is appropriate as to the Affirmative Defense of Waiver of Claim based upon the undisputed fact that through Oravec's 2002 submission to the LMDC, Oravec has knowingly waived and/or abandoned his claims of copyright infringement in this case.

Furthermore, Final Summary Judgment in favor of the Trump and Developer Defendants is appropriate as to the Affirmative Defense relating to Oravec's Illegal Solicitation of his alleged design based upon the undisputed fact that Oravec solicited business from many different developers, including Donald J. Trump, by offering for sale his alleged building design while representing himself as an architect. Pursuant to Florida Statute § 481.223, such acts are illegal in the state of Florida and are punishable as a misdemeanor in the first degree under § 775.082 or § 775.083.

## II.      MEMORANDUM OF LAW

Defendants Sunny Isles, Dezer Properties, Dezer Development, Michael Dezer, Gil Dezer, the Trump Corporation, Trump, Residences, and Royal Development submit this Memorandum of Law in support of their Motion for Summary Judgment.

### A. LEGAL STANDARD ON SUMMARY JUDGMENT

It is well settled that under Rule 56, Fed. R. Civ. P., summary judgment is proper where it is shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986); Beal v. Paramount Pictures Corp., 20 F.3d 454, 458 (11th Cir.1994). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party bears the burden of pointing to that part of the record, which shows the absence of a genuine issue

of material fact.  Hairston v. Gainsville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993).  If the

movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine

dispute of material facts exists.  Id.  In response, the non-moving party must provide more than a

mere "scintilla" of evidence supporting its position.  Anderson v. Liberty Lobby, Inc., 447 U.S.

242, 248-50 (1986).  To meet this burden, the non-moving party must go beyond the pleadings and

"come forward with significant, probative evidence demonstrating the existence of a triable issue

of fact."  Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991).

### B. THE TRUMP AND DEVELOPER DEFENDANTS' INCORPORATION OF SIEGER SUAREZ DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

To avoid duplication of argument, the Trump and Developer Defendants incorporate by

reference the Sieger Suarez Defendants' arguments concerning Oravec's claims as to Count I for

direct copyright infringement.  (*See* Sieger Suarez Motion for Summary Judgment and Sieger

Suarez Statement of Facts.)

### C. RESIDENCES AT OCEAN GRANDE, INC. AND ROYAL DEVELOPMENT HOLDINGS, LLC ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiff lists Defendants Residences at Ocean Grande, Inc. and Royal Development

Holdings, LLC as parties in the caption of its Second Amended Complaint.  In addition, Plaintiff

simply identifies these two entities in his general allegations, and alleges that they are "proper

part[ies] for a full and complete adjudication of the matter."  (Second Amended Complaint ¶¶ 14-

15)  Plaintiff makes no other reference to these defendants elsewhere in the complaint.  Nor does

Plaintiff actually include these two defendants in Counts I, II, or III.  Accordingly, Final Summary

Judgment should be entered against Defendants Residences at Ocean Grande, Inc. and Royal

Development Holdings, LLC for failure to state a claim upon which relief may be granted.

CASE NO. 04-22780-CIV-SEITZ-McALILEY

### D.  **SUNNY ISLES AND DEZER PROPERTIES ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I FOR DIRECT COPYRIGHT INFRINGEMENT**

Count I of Plaintiff's Second Amended Complaint seeks permanent injunctive relief, damages and other remedies based on Sunny Isles' and Dezer Properties' willful, knowing, and intentional copyright infringement in violation of Plaintiff's rights under the Copyright Law of the United States, 17 U.S.C. § 101, *et. seq.* (*See* 2nd Amend. Comp. at ¶ 5, 41-45.)

#### *(i)     Legal Standard on Direct Copyright Infringement*

To make out a prima facie claim of direct infringement, a plaintiff must show:  (1) that it owned a valid copyright, and (2) that the defendant copied constituent elements of the work that are original.  Feist Publications, Inc. v. Rural Tel. Serv. Co., 449 U.S. 340, 361 (1991); Calhoun v. Lillenas Publishing, 298 F.3d 1228, 1232 (11th Cir. 2002).   See also Nelson-Sables, Inc. v. Morningside Development, LLC, 284 F.3d 505, 513 (4th Cir. 2002) (quoting Towler v. Sayles, 76 F.3d 579, 581 (4th Cir. 1996));  Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 644 (7th Cir. 2001) (quoting Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 507 (7th Cir. 1994); Prostar v. Massachi, 239 F.3d 669, 677 (5th Cir. 2001). (quoting Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 790 (5th Cir. 1999)); 3 Melville B. Nimmer, Nimmer on Copyright, § 13.01[A], at 13-6 (1993).

#### *(ii)    Legal Argument in Support of Sunny Isles' and Dezer Properties' Summary Judgment as to Count I – Direct Copyright Infringement*

**Background as to Sunny Isles**

Plaintiff's Second Amended Complaint alleges that Sunny Isles is the legal owner of the Trump Grande Ocean Resort and Residences and is a limited liability company created by Dezer Development and organized and existing under the laws of Florida.  (*See* 2nd Amended Complaint at ¶ 7.)  Plaintiff's Second Amended Complaint further alleges that Sunny Isles is the owner of the

- 7 -

**RUSSOMANNO & BORRELLO, P.A.**

Trump Palace and Trump Royale buildings, which it authorized or caused to be constructed, and has a direct financial interest in the [alleged] infringing activities. (*See* 2nd Amended Complaint at ¶ 44, 53.)

The Trump Grande Ocean Resort and Residences ("Resort") is located in Sunny Isles Beach, Florida. The Resort consists of three separate and distinct developments and/or buildings named the Trump International Sonesta Resort ("Sonesta Hotel"), the Trump Palace and the Trump Royale.  Each of the three buildings within the Resort consists of three separate and distinct entities, developers and owners for each building.  The Sonesta Hotel's owner and developer is the entity named Sunny Isles Luxury Ventures L.C. ("Sunny Isles"), the Trump Palace's owner and developer is the entity named Residences at Ocean Grande, Inc. ("Residences"), and the Trump Royale's owner and developer is the entity named Royale Florida Enterprises, Inc. ("Royale Florida").[3]

Oravec alleges that two of the three buildings within the Trump Grande Ocean Resort and Residences, the "Trump Palace" and the "Trump Royale", comprising of twin condominium towers, are strikingly and substantially similar to twin towers of Plaintiff's copyrighted design. (*See* 2nd Amend. Comp. at ¶ 2-3, 32-33, 36.)  Because Plaintiff's Second Amended Complaint alleges that the design of the Trump Palace and Trump Royale infringes upon his alleged copyrighted designs, Oravec may only bring this action against the entities of Residences and Royale Florida, and not against Sunny Isles, Dezer Properties and Dezer Development.

---

[3] Plaintiff has sued Royal Development Holdings, LLC ("Royal Development") and has not sued Royale Florida Enterprises, Inc. ("Royale Florida").  The developer of the Trump Royale is Royale Florida.  Royal Development is an entity owned by Michael and Neomi Dezer which acquired the real property for development of the Trump Royale and sold that real property to Royale Florida for development.  (SOF ¶ 75.)

## _Summary Judgment in favor of Sunny Isles_

Final Summary Judgment should be entered in favor of Sunny Isles based upon the undisputed material fact that the Sunny Isles entity is not the developer or owner for either of the buildings at issue in this case, the Trump Palace or the Trump Royale.

Oravec's claims are based on the allegations that two of the three buildings within the Trump Grande Ocean Resort and Residences, the "Trump Palace" and the "Trump Royale", comprising of twin condominium towers are strikingly and substantially similar to twin towers of Plaintiff's copyrighted design. (_See_ 2nd Amend. Comp. at ¶ 2-3, 32-33, 36.)  Sunny Isles Luxury Ventures L.C., has nothing to do with the condominium buildings that are now the Trump Palace and the Trump Royale.  (SOF ¶¶ 60-66.)  Sunny Isles Luxury Ventures L.C. is the developer company for the hotel building, called the Trump International Sonesta Resort. (SOF ¶ 63.)

The Dezer entity named Sunny Isles Luxury Ventures L.C. was responsible for the contract with Sieger Suarez for the Trump International Sonesta Resort. (SOF ¶ 64.)  Sunny Isles Luxury Ventures L.C. would only benefit from any profits from the hotel [Trump International Sonesta Resort], and would not share in any of the profits for either the Trump Palace or the Trump Royale. (SOF ¶¶ 60-62, 67-75.)  Furthermore, Oravec's damage expert, Louis Dudney, provided no expert analysis or deposition testimony establishing that Sunny Isles Luxury Ventures L.C. has or will have derived direct profit or revenue from either the Trump Palace or the Trump Royale.  (_See_ Dudney Dep.; Exhibit G Report of Dudney; Exhibit F Rebuttal Report of Dudney.)  Because is it undisputed facts that Sunny Isles was not and is not responsible for the development of either the Trump Palace or the Trump Royale, Oravec, under Feist Publications, Inc., and Calhoun, has not provided the court with any evidence that Sunny Isles copied or was responsible for the alleged copying of constituent elements of his design.

Looking at the record in the above-styled action as a whole, there is no genuine issue of material fact as to which entities currently own, derive direct profit, and are developing the Trump Palace and the Trump Royale.  The facts are undisputed that the owners, profiteers and developers of the Trump Palace and the Trump Royale, are Residences of Ocean Grande, Inc., and Royale Florida Enterprises, Inc., respectively, and not Sunny Isles Luxury Ventures L.C.  Because there are no genuine issues of material fact to support the necessary elements of Oravec's claim for direct copyright infringement, Final Summary Judgment should be entered in favor of Sunny Isles Luxury Ventures, L.C.

### *Background as to Dezer Properties*

Plaintiff's Second Amended Complaint alleges that Dezer Properties is a limited liability company organized and existing under the law of New York.  (*See* 2nd Amended Complaint at ¶ 10.) Plaintiff's Second Amended Complaint also alleges Michael and Gil Dezer are principals of, personally in control of and supervise the actions of Dezer Properties, which in turn controls and supervises the operations of Sunny Isles.  (*See* 2nd Amended Complaint at ¶ 47.)  Plaintiff's Second Amended Complaint further alleges that Dezer Properties has an interest and involvement financially in the Trump Palace and Trump Royale.  (*See* 2nd Amended Complaint at ¶ 49.)

### *Summary Judgment in favor of Dezer Properties*

Final Summary Judgment should be entered in favor of Dezer Properties based upon the undisputed material fact that Dezer Properties is not the developer or owner for either of the buildings at issue in this case, the Trump Palace or the Trump Royale.

Oravec's claims are based on the allegations that two of the three buildings within the Trump Grande Ocean Resort and Residences, the "Trump Palace" and the "Trump Royale",

comprising of twin condominium towers are strikingly and substantially similar to twin towers of Plaintiff's copyrighted design. (*See* 2nd Amend. Comp. at ¶ 2-3, 32-33, 36.)

As stated above, the owners and developers of the two buildings at issue are Residences at Ocean Grande, Inc., and Royale Florida Enterprises, Inc.; at no point in time was a company other than these two responsible for the development of the two buildings.

The entities involved with the Trump Palace and Trump Royale to which the Dezers are affiliated are Residences at Ocean Grande, Inc. and Royale Florida Enterprises, Inc. (SOF ¶¶ 60-62, 67-75.) Any profits generated by the Trump Palace and the Trump Royale roll or will roll directly into the two entities of Residences at Ocean Grande, Inc. and Royale Florida Enterprises, Inc. (SOF ¶¶ 60-62, 67-75.) Each entity acting as the owner/developer of its respective building would be the sole shareholder, the sole owner of the land, and each of them only benefit from the building they develop and own. (SOF ¶ 62.) Because each entity is the owner and developer of its respective building, each one of the entities is entitled to the profits of the building it actually owns. (SOF ¶¶ 60-62.)

Dezer Properties LLC does not have a relationship to the project other than being an affiliate of the Dezer Group. (SOF ¶ 59.) Furthermore, Oravec's damage expert Louis Dudney provides no expert analysis or deposition testimony establishing the fact that Dezer Properties LLC has or will have derived profit or revenue from either the Trump Palace or the Trump Royale. (*See* Dudney Dep.; Exhibit G Report of Dudney; Exhibit F Rebuttal Report of Dudney.) Because the undisputed facts in this case establish that Dezer Properties was not and is not responsible for the development of either the Trump Palace or the Trump Royale, Oravec, under <u>Feist Publications, Inc.</u>, and <u>Calhoun</u>, has not provided the court with any evidence that Dezer Properties copied and/or was responsible for the alleged copying of constituent elements of his design.

Looking at the record in the above-styled action as a whole, there is no genuine issue of material fact as to which entities currently own, derive profit, and are developing the Trump Palace and the Trump Royale. The facts are undisputed that the owner, profiteer and developer of the Trump Palace, is Residences of Ocean Grande, Inc., and not Dezer Properties LLC. The facts are also undisputed that the owner, profiteer and developer of the Trump Royale is Royale Florida Enterprises, Inc., not Dezer Properties LLC. Because there are no genuine issues of material fact to support the necessary elements of Oravec's claim for direct copyright infringement, Final Summary Judgment should be entered in favor of Dezer Properties LLC.

**E. DEZER DEVELOPMENT, MICHAEL DEZER, GIL DEZER, THE TRUMP CORPORATION, AND TRUMP ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR VICARIOUS COPYRIGHT INFRINGEMENT**

Count II of Plaintiff's Second Amended Complaint seeks, under U.S. and Florida common law, damages, injunctive relief and other remedies for vicarious copyright infringement by Dezer Development, Michael Dezer, Gil Dezer, the Trump Corporation, and Trump. (*See* 2nd Amend. Comp. at ¶ 5, 46-56.)

### (i)     *Legal Standard on Vicarious Copyright Infringement*

A Defendant infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it. MGM Studios Inc. v. Grokster, Ltd., 125 S.Ct. 2764, 2776 (U.S. 2005) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2nd Cir. 1963) (vicarious liability for copyright infringement may be imposed "[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials.")). The vicarious liability theory allows imposition of liability when the defendant profits directly from the infringement and has both the right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement. Id. *See also* CoStar

Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 550 (4th Cir. 2004); Gordon v. Nextel Communications

& Mullen Advertising, Inc., 345 F.3d 922, 925 (6th Cir. 2003); Nelson-Sables, Inc. v. Morningside

Development, LLC, 284 F.3d 505, 513 (4th Cir. 2002); RCA/Ariola Intern., Inc. v. Thomas &

Grayston Co., 845 F.2d 773, 781 (8th Cir. 1998); Softel, Inc. v. Dragon Medical and Scientific

Communications, Inc., 118 F.2d 955, 971 (2nd Cir. 1997) (quoting Shapiro, Bernstein & Co. v.

H.L. Green Co., *supra.*).

> ### (ii)    *Legal Argument in Support of Dezer Development's, Michael Dezer's, Gil Dezer's, the Trump Corporation's and Trump's Summary Judgment as to Count II – Vicarious Copyright Infringement*

### Background as to Dezer Development and Michael Dezer and Gil Dezer

Plaintiff's Second Amended Complaint alleges that Dezer Development is a co-developer

of the Trump Grande Ocean Resort and Residences and is a limited liability company organized

and existing under the laws of Florida.  (*See* 2nd Amended Complaint at ¶ 9.)  Plaintiff's Second

Amended Complaint also alleges Michael and Gil Dezer are principals of, personally in control of

and supervise the actions of Dezer Development, which in turn controls and supervises the

operations of Sunny Isles.  (*See* 2nd Amended Complaint at ¶ 47.)  Plaintiff's Second Amended

Complaint further alleges that Dezer Development has a direct and substantial financial interest in

Sunny Isles and in the profit and success of the Resort, the Trump Palace and Trump Royale. (*See*

2nd Amended Complaint at ¶ 48-49, 53.)

### Summary Judgment in favor of Dezer Development

Final Summary Judgment must be entered in favor of Dezer Development based upon the

undisputed material facts that (1) the Dezer Development entity is not the developer or owner for

either the Trump Palace or the Trump Royale and (2) the Dezer Development entity has not and

will not directly profit from the alleged infringement of either the Trump Palace or the Trump Royale developments.

Residences at Ocean Grande, Inc. is the developer entity for the Trump Palace. (SOF ¶¶ 67-70.) (*See also* Exhibit D Property Report of Trump Palace; Exhibit E General Ledger of Trump Palace; Exhibit F Rebuttal Report of Dudney at 2.)   At no point was any entity other than Residences at Ocean Grande, Inc. responsible for the development of the Trump Palace building. (SOF ¶ 70.)   Likewise, Royale Florida Enterprises, Inc., is the developer entity for the Trump Royale.  (SOF ¶¶ 71-74.) (*See also* Exhibit H Property Report of Trump Royale; Exhibit I General Ledger of Trump Royale; Exhibit F Rebuttal Report of Dudney at 3.)  At no point was any entity other than Royale Florida Enterprises, Inc. responsible for the development of the Trump Royale building. (SOF ¶ 74.)

The entities involved with the Trump Palace and Trump Royale to which the Dezers are affiliated are Residences at Ocean Grande, Inc. and Royale Florida Enterprises, Inc.  (SOF ¶¶ 60-75.)  Any profits generated by the Trump Palace and the Trump Royale roll or will roll directly into the two entities of Residences at Ocean Grande, Inc. and Royale Florida Enterprises, Inc. (SOF ¶¶ 60-62, 67-75.)  Each entity acting as the owner/developer of its respective building would be the sole shareholder, the sole owner of the land, and each of them only benefit from the building they develop and own.  (SOF ¶ 62.)   Because each entity is the owner and developer of its respective building, each one of the entities is entitled to the profits of the building it actually owns. (SOF ¶¶ 60-75.)

Oravec's damage expert, Louis Dudney, provides no expert analysis or deposition testimony establishing that Dezer Development LLC has or will have derived direct profits from either the Trump Palace or the Trump Royale. (*See* Dudney Dep.; Exhibit G Report of Dudney.;

Exhibit F Rebuttal Report of Dudney.)   Looking at the record in the above-styled action as a whole, there is no genuine issue of material fact as to which entities currently own, derive direct profit, and are developing the Trump Palace and the Trump Royale.  The facts are undisputed that the owner, profiteer and developer of the Trump Palace, is Residences of Ocean Grande, Inc., and not Dezer Development LLC.   The facts are also undisputed that the owner, profiteer and developer of the Trump Royale is Royale Florida Enterprises, Inc., and is not Dezer Development LLC.

The undisputed facts in this case prove that Dezer Development cannot be held vicariously liable for the infringements alleged by Oravec, and Final Summary Judgment should be entered in favor of Dezer Development LLC.

### *Summary Judgment in favor of Michael Dezer and Gil Dezer*

Final Summary Judgment should be entered in favor of Michael Dezer and Gil Dezer based upon the undisputed material fact that Oravec has failed to establish that Michael Dezer and/or Gil Dezer have or will directly profit from the alleged infringement in either the Trump Palace or the Trump Royale developments.

The profit generated by the Trump Palace and Trump Royale rolls directly into the two entities of Residences at Ocean Grande, Inc., and Royale Florida Enterprises, Inc.  (SOF ¶¶ 60-75.) Each entity acting as the owner/developer of their respective building, would be the sole shareholder, the sole owner of the land, and each of them only benefit from the building they develop and own.  (SOF ¶ 62.)  Because each entity is the owner and developer of their own respective building, each one of the entities is entitled to the profits of the building it actually owns. (SOF ¶¶ 60-75.)

Oravec's damage expert, Louis Dudney, provides no expert analysis or deposition testimony establishing the fact that Michael Dezer or Gil Dezer has or will have derived direct profit from either the Trump Palace or the Trump Royale. (*See* Dudney Dep.; Exhibit G Report of Dudney.; Exhibit F Rebut. Report of Dudney.)  Looking at the record in the above-styled action as a whole, there is no genuine issue of material fact as to who owns, derives direct profit from the Trump Palace and the Trump Royale.  The facts are undisputed that the owner, profiteer and developer of the Trump Palace, is Residences of Ocean Grande, Inc., and not Michael Dezer or Gil Dezer.  The facts are also undisputed that the owner, profiteer and developer of the Trump Royale is Royale Florida Enterprises, Inc., and is not Michael Dezer or Gil Dezer.

The facts in this case are undisputed that Michael Dezer and Gil Dezer have not and will not derive direct profits from the alleged infringement of the Trump Palace and the Trump Royale. Pursuant to MGM Studios, and CoStar Group, Oravec has not provided the court with any evidence that Michael Dezer and Gil Dezer have or will derive direct profits from the alleged infringement.  Because there are no genuine issues of material fact to support the necessary elements of Oravec's claim for vicarious copyright infringement, Final Summary Judgment should be entered in favor of Michael Dezer and Gil Dezer.

### ***Background as to the Trump Corporation and Trump***

Plaintiff's Second Amendment Complaint alleges that Trump, in licensing his name to Dezer Development and Sunny Isles for the Trump Grande Ocean Resort and Residences, obtained control over various aspects of the project as part of that agreement. (*See* 2nd Amend. Comp. ¶ 50.) Count II of Plaintiff's Second Amended Complaint also alleges, that "Trump entered into a joint venture with Dezer Development and Sunny Isles to construct this development and became a business associate, as well as a co-developer, of the project." (*See* 2nd Amend. Comp. ¶ 51.)

In addition, Count II of Plaintiff's Second Amended Complaint alleges that "the Trump Corporation and Trump have direct control over Dezer Development and Sunny Isles and the use of [Plaintiff's] drawings and design and a direct financial interest in the infringing activities, and that the aforesaid acts constitute vicarious liability for willful, knowing, and intentional copyright infringement in violation of [Plaintiff's] rights under the Copyright Law of the United States, 17 U.S.C. § 106." (*See* 2nd Amend. Comp. ¶¶ 53-54.)   Count II of Plaintiff's Second Amended Complaint concludes by alleging that "the Trump Corporation and Trump have through their own actions and with a direct financial interest in the infringing acts, caused the structure for the Trump Palace and the Trump Royale to be designed and to be in the process of being constructed strikingly and substantially similar to Plaintiff's copyrighted drawings and design without right or authorization." (*See* 2nd Amend. Comp. ¶ 55.)

### *Summary Judgment in favor of the Trump Corporation and Trump*

Final Summary Judgment must be entered in favor of the Trump Corporation and Trump based upon the undisputed material fact that neither the Trump Corporation nor Trump had the ability to exercise their right to stop or limit the alleged direct infringement.

Plaintiff's original theory as to how his design ended up with the Sieger Suarez architectural firm – by way of Donald J. Trump – has been discredited because Mr. Trump's involvement in the project started *after* the design was all but complete. (SOF ¶¶ 38-53.)

It is undisputed that none of the Defendants in this matter conducted any business with Trump during the operative time-period when the designs of the buildings were developed, that is, from 1997 to 2000. (SOF ¶¶ 38-40.)  Prior to February 2000, Sieger Suarez created the design at issue for a luxury residential condominium with substantially the same external appearance as the Trump Palace now has.  (SOF ¶ 38.)  In the spring of 2001, Peter Weiner (counsel for the Dezers)

called Trump's Senior Vice President of Development (Bernie Diamond) to inquire whether Trump was interested in licensing his name in connection with a beachfront development project that was already in progress in Sunny Isles Beach, Florida. (SOF ¶ 42.) It was not until December 2, 2001, that Trump entered into a License Agreement in which licensed use of the Trump name in connection with the Trump Grande Ocean Resort and Residences; pursuant to the Licensing Agreement, the two residential condominiums eventually were named the Trump Palace and the Trump Royale. (SOF ¶¶ 41-45.) At the time Trump first became involved in the project the exterior of the project was already fully designed and approved. (SOF ¶¶ 46-49.)

At the time Trump entered into the License Agreement, it was too late for Trump and the Trump Organization to require any significant changes in the exterior design of the Trump Palace and the Trump Royale. (SOF ¶ 49.)[4] As a practical matter, the only changes that Trump had the ability to make were modifications in the interior of the Trump Palace and the Trump Royale. (SOF ¶¶ 50-53.) Neither Trump, nor any of his employees, had the ability to require the developers or the architects to make any changes to the overall exterior appearance of the Trump Palace or the Trump Royale buildings. (SOF ¶ 51.) After Trump and his organization became involved in the project, only minor changes were made to the design at the request of the Trump Organization, e.g., the addition of a few inches to the ceiling height of each floor and some changes to the interior layouts of the individual apartments. (SOF ¶¶ 50, 52.)

When applying the Supreme Court's standard on vicarious copyright infringement, as stated in MGM Studios, to the undisputed facts in this case, it is clear that neither the Trump Corporation nor Trump had any real "ability" to stop or limit the alleged direct infringement.

---

[4] The License Agreement contains language suggesting that Trump had the power to approve all aspects of the building including its overall design. (Exhibit X, p. 7) However, as discussed above, by the time the project was offered to Trump, the exterior design had already been finalized and therefore was presented as a take or leave it proposition. Thus, Trump had no effect right to make changes to the exterior.

RUSSOMANNO & BORRELLO, P.A.

Under the principals of CoStar Group, the Trump Corporation and Trump would not be found liable for vicarious copyright infringement because the Trump Corporation and Trump did not have the right "*and*" the "ability" to supervise the alleged infringing act. (SOF ¶¶ 38-53.) Because there are no genuine issues of material fact to support the necessary elements of Oravec's claim for vicarious copyright infringement, Final Summary Judgment should be entered in favor of the Trump Corporation and Trump.

## F. THE TRUMP CORPORATION AND TRUMP ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT

Count III of Plaintiff's Second Amended Complaint seeks, under U.S. and Florida common law, damages, injunctive relief and other remedies for contributory copyright infringement by the Trump Corporation and Trump. (2nd Amend. Comp. ¶¶ 5, 57-63.)

### (i)     *Legal Standard on Contributory Copyright Infringement*

One infringes contributorily by intentionally inducing or encouraging direct infringement. MGM Studios, Inc., 125 S.Ct. at 2776.  The three elements required to establish contributory copyright liability are:  (1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) material contribution to the infringement.   Contessa Food Prods. v. Lockpur Fish Processing Co., 123 Fed. Appx. 747, 749-750 (9th Cir. 2005) (quoting MGM Studios, Inc. v. Grokster Ltd., 380 F.3d 1154, 1160 (9th Cir. 2004); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996) (noting that contributory liability is based in tort law and "stems from the notion that one who directly contributes to another's infringement should be held accountable").

The Eleventh Circuit Court of Appeals has found that contributory infringement necessarily must follow a finding of direct or primary infringement.   Cable/Home Communication Corp. v.

CASE NO. 04-22780-CIV-SEITZ-McALILEY

Network Productions, Inc., 902 F.2d 829, 845-846 (11th Cir. 1990). *See also* 3 Nimmer on Copyright § 12.04[A] at 12-42 to -42.1. The Eleventh Circuit has stated the well-settled test for a contributory infringer as "'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." Id. (quoting Casella v. Morris, 820 F.2d 362, 365 (11th Cir. 1987); Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984); *see also* Sony, 464 U.S. at 437, 104 S. Ct. at 786 (The Supreme Court has defined a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."); 3 Nimmer on Copyright § 12.04 (generally discussing contributory infringement). In addition, the Eleventh Circuit explicated that "the standard of knowledge is objective: 'Know, or have reason to know." Id. (quoting Casella, 820 F.2d at 365 n. 29 (quoting Gershwin, 443 F.2d at 1162)).

### (ii)   *Legal Argument in Support of the Trump Corporation and Trump' Summary Judgment as to Count III – Contributory Copyright Infringement*

Final Summary Judgment must be entered in favor of the Trump Corporation and Trump based upon the undisputed material fact that: (1) there was no direct infringement by a primary infringer (*See* Sieger Suarez Motion for Summary Judgment); (2) even if the alleged infringement did occur, the Trump Corporation and Trump had no knowledge of the alleged infringement; and (3) the Trump Corporation and Trump did not materially contribute to the alleged infringement.

*The Trump Corporation and Trump had no knowledge of the alleged infringement*

Trump and the Trump organization had nothing to do with the design of this project, and were not involved in the project until long after the design had been developed and approved. (SOF ¶¶ 38-53.) As discussed above, prior to February 2000, Sieger Suarez created the design at

issue for a luxury residential condominium with substantially the same external appearance as the Trump Palace now has. (SOF ¶ 38.)

Prior to Trump's involvement in the project, no one in the Trump Organization, including Trump, knew who the Michael Dezer and Gil Dezer were, and prior to 2001, Trump had never spoken to either Michael Dezer, Gil Dezer, or anyone at Dezer Properties.

In the spring of 2001, Peter Weiner (counsel for the Dezers) called Trump's Senior Vice President of Development (Bernie Diamond) inquiring into whether Trump was interested in licensing his name in connection with a beach front development project that was already in progress in Sunny Isles Beach, Florida. (SOF ¶ 42.) On December 2, 2001, Trump entered into a License Agreement, in which Trump licensed his name in connection with the Trump Grande Ocean Resort and Residences, and pursuant to the licensing agreement, the two residential condominiums eventually were named the Trump Palace and the Trump Royale. (SOF ¶ 45.) At the time Trump first became involved in the project, the exterior of the project was fully designed and approved. (SOF ¶¶ 46-49.)

When applying the Supreme Court's standard for contributory copyright infringement in MGM Studios, and the Eleventh Circuit's standard for contributory copyright infringement in Cable/Home Comm., to the undisputed fact that the exterior design (the design at issue in this case) of the Trump Palace/Trump Royale was fully designed and approved approximately one –year prior to Trump's involvement in the project, it is clear that neither the Trump Corporation nor Trump had "knowledge" of the alleged infringement in time to induce, cause or materially contribute to it. (SOF ¶¶ 38-53.)

CASE NO. 04-22780-CIV-SEITZ-McALILEY

### *The Trump Corporation and Trump did not materially contribute to the alleged infringement*

Contrasted with the unequivocal testimony and affidavits in this case is Plaintiff's sheer conjecture that because he so widely distributed his design around South Florida, someone affiliated with the defendants had to have seen it and used it. Realizing that his original theory of access is fatally flawed, Oravec now asserts that because he allegedly distributed his design so widely around south Florida, one of the defendants must have – somehow - seen it and copied it. Such an assertion is based on nothing more than guesswork, speculation and conjecture.

Oravec testified that has no specific answers to who could have been the source of access for his designs. (SOF ¶ 12.)   Oravec testified that it could have been anybody.  (SOF ¶ 12.) Oravec does not know who it was specifically.  (SOF ¶ 12.)

Oravec claims that one of the accesses to his design could have been Donald Trump. (*See* Oravec Dep. at 110, 112.)  However, Oravec testified that he has no proof that Trump received the package of his design, and that he cannot confirm that Trump received a package that Oravec alleges he sent in a general mailing to Trump in either 1998 or 1999. (SOF ¶¶ 13-14.)

Oravec claims that Trump could have access to his design because he asked a man named Neil Litman to use a contact of Litman's, Jason Binn, to deliver Oravec's design to Trump. (SOF ¶ 16.) Binn does not recall receiving a package from Litman, but Binn did remember a big tube.  Binn does not recall opening the tube or does not recall what he did with the tube.  (SOF ¶ 19.) Binn does not recall ever getting back to Litman to tell him that Binn had delivered the packages to Mr. Trump. (SOF ¶ 20.)  Binn does not recall ever having any conversation with Trump about any packages delivered to him. (SOF ¶ 21.)  Binn does not recall ever talking to Trump about a design that had been furnished to him. (SOF ¶ 22.)

Trump has never received or seen any of Oravec's designs prior to the initiation of this lawsuit. (SOF ¶ 27.)  Trump has never received anything from Binn or Oravec concerning this project. (SOF ¶ 28.)  No one employed by Trump or by his entities that he controls ever saw these drawings or designs allegedly submitted by, or on behalf of Oravec. (SOF ¶ 30.)  It is Trump's practice not to use unsolicited architectural drawings as a basis for any of his projects. (SOF ¶ 31.) Even assuming that Jason Binn provided and/or showed Trump the designs, Trump never gave any copies of the drawings to anyone, including Michael Dezer, Gil Dezer, or the Sieger Suarez Architectural Partnership. (SOF ¶ 32.)

Trump and the Trump organization had nothing to do with the exterior design of the buildings in this project. (SOF ¶ 38-52.)  As mentioned above, at the time Trump first became involved in the project the exterior of the project was fully designed and approved. (SOF ¶¶ 46-49.)  At the time Trump entered into the License Agreement, it was too late for Trump and the Trump Organization to make any major changes to the exterior design of the Trump Palace and the Trump Royale.  (SOF ¶ 49.)  Trump only had the ability to make changes on the inside of the Trump Palace and the Trump Royale. (SOF ¶¶ 50-52.)  Neither Trump, nor any of his employees, required the Dezers or Sieger Suarez to make any changes to the overall exterior appearance of the Trump Palace or the Trump Royale buildings. (SOF ¶ 51.)  When Trump and his organization became involved in the Trump project, only minor changes were made to the design by the Trump Organization such as an increase in the ceiling height and some minor changes to the interior layouts of the apartments.  (SOF ¶ 52.)

When applying the Supreme Court's standard for contributory copyright infringement in MGM Studios, and the Eleventh Circuit's standard for contributory copyright infringement in Cable/Home Comm., to the undisputed facts that:  (1) the Trump Corporation or Trump did not

receive Oravec's alleged package of his design: (2) the Trump Corporation or Trump did not provide Oravec's alleged design to either Sieger Suarez or the Dezers; and (3) the Trump Corporation and Trump did not make any changes, and did not have the ability to make any changes to the exterior design of the Trump Palace/Trump Royale.  In sum, it is clear that neither the Trump Corporation nor Trump, "induced", "caused", or "materially contributed" to the alleged infringement.  Because there are no genuine issues of material fact to support the necessary elements of Oravec's claim for contributory copyright infringement, final summary judgment should be entered in favor of the Trump Corporation and Trump.

## G. THE TRUMP AND DEVELOPER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ORAVEC'S CLAIM FOR INFRINGER'S PROFITS

Oravec seek compensatory damages in the form of the alleged infringer's profits in his second amended complaint.[5]  (2d Amended Complaint p. 17, ¶ 5)  Under 17 U.S.C. § 504(b), the copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement."  The statute provides: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  Section 504(b) sets forth a burden shifting mechanism in which the plaintiff bears the initial burden of demonstrating the infringer's gross revenues after which the burden shifts to the infringer to prove expenses and to apportion the profit to factors other than the infringement.

---

[5] To the extent that Oravec's claims are premised on the designs in March and April 2004 copyright registrations, Oravec failed to register his copyright claims in time to have the benefit of the statutory damages remedy provided in 17 U.S.C. § 504(c), *see* 17 U.S.C. § 412.

### (i)      *The Legal Standard and Summary Judgment on Infringer's Profits*

The Fourth Circuit's decision in <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514 (4th Cir. 2003), provides a useful analysis of the shifting burdens of § 504(b) in the context of summary judgment proceedings.   There, an artist brought an action against the Baltimore Ravens professional football team and its licensing agent, alleging infringement of his copyrighted logo designs.   The case was tried on liability and the jury found infringement. Subsequently, the district court entered partial summary judgment limiting the scope of the artist's profits claim.  The jury rejected the remaining portions of the artist's profits claim.  The artist appealed the summary judgment rulings, arguing that the district court failed to give him the benefit of the § 504(b) statutory presumption that an infringer's revenues are entirely attributable to the infringement. <u>Id</u>. at 519.

On appeal, the Fourth Circuit framed the issue as follows:

> We begin by looking to the decisions of our sister circuits.  The § 504(b) cases in which partial summary judgment in favor of an infringer with respect to part, or all, of the infringer's revenues has been found proper, fall roughly into two categories:  (1) those in which there existed no conceivable connection between the infringement and a given revenue stream;  and (2) those in which, despite the existence of a conceivable link, the plaintiff failed to offer anything more than mere speculation as to the existence of a causal connection between the infringement and the claimed revenues.

<u>Id</u>. at 520.   The Fourth Circuit reviewed decisions in which summary judgments had been entered on claims for infringer's profits. <u>On Davis v. The Gap, Inc.</u>, 246 F.3d 152, 161 (2d Cir. 2001) (upholding summary judgment on claim for infringer's profits on basis that there existed no conceivable connection between the infringement and a substantial portion of the revenues claimed by the plaintiff); <u>Mackie v. Rieser</u>, 296 F.3d 909, 916 (9th Cir. 2002) (upholding summary judgment on claim for infringer's profits as the plaintiff failed to offer anything more than mere speculation as to existence of causal link between the infringement and the claimed

revenues).  See also Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 716 (9th Cir.

2004) (holding that plaintiff failed to demonstrate a non-speculative link between infringement

and revenues and therefore claim for infringer's profits was vacated); 4 M. Nimmer and D.

Nimmer, Nimmer on Copyright, § 14.03 at 14-34 ("When an infringer's profits are only remotely

and speculatively attributable to the infringement, courts will deny recovery to the copyright

owner.").

> After analyzing these authorities, the Fourth Circuit in Bouchat held as follows:

> Despite § 504(b)'s presumption that the recoverable "profits ... attributable to the infringement" are equal to the infringer's gross revenues, the statute does not exempt the copyright plaintiff from the requirement of Rule 56 that he respond to a properly supported motion for summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  Should the plaintiff fail so to respond--whether that failure is due to the absence of any conceivable connection between the infringement and the claimed revenues, or instead simply due to the plaintiff's inability to muster nonspeculative evidence in support of the alleged causal link--then summary judgment may properly be awarded to the infringer with respect to part or all of the contested revenues.

> In sum, we conclude that the Defendants could properly be awarded summary judgment with respect to any given revenue stream if either (1) there exists no conceivable connection between the infringement and those revenues; or (2) despite the existence of a conceivable connection, Bouchat offered only speculation as to the existence of a causal link between the infringement and the revenues.

346 F.3d at 522-23.  The court noted that the defendants supported their motion for summary

judgment with affidavits establishing that revenues were derived from business and consumer

interest in NFL football and not in response to the infringed logo design.  In response, the artist

"failed to offer any nonspeculative evidence demonstrating the existence of a genuine dispute of

material fact."  Id. at 525.  Because the defendants established the absence of a causal link and

the artist "rested on his speculation that somehow, somewhere some part of the Defendants'

revenues from these sources were influenced by the fact that the Defendants" infringed his

design, the Fourth Circuit held that summary judgment was proper.  Id. at 526.

### (ii) *The Limited Scope of Oravec's Copyright Claims*

Oravec acknowledges the limits to his infringement claim. He claims a copyrightable interest in the particular combination of convex and concave vertically stacked shapes of his design. (SOF ¶ 76, Oravec Dep. at 404.) He further acknowledges the conceptual nature of his claim. He admits he did not perform architectural services, just a purported design. (SOF ¶ 77, Oravec Dep. at 463-65.) Thus, he did not create any blueprints or construction drawings, which would be required to actually build the building; he simply registered designs. (SOF ¶ 78, Oravec Dep. at 143.) He also concedes that the Trump Palace and Royale differ from his design because only one side has a combined convex-concave characterization. (SOF ¶ 79, Oravec Dep. at 414-15.)

Given the limited nature of his claim, it is undisputed that Oravec can claim no infringement by the design or layouts of the units themselves. Thus, all that he claims is the look of one portion of the common elements, i.e., the exterior on one side of the building. He cannot claim infringement of the façade <u>structure</u> itself (e.g., steel, concrete, windows) because they are materials and the building would have had a façade of some type anyway. Nor does he have any claim to the design of the lobby, parking garage, the recreational facilities (i.e., swimming pools, pool decks, spas, exercise rooms, tennis courts) or any other aspect of the extensive and luxurious common elements of the development.

### (iii) *Oravec's Profits Claim*

Despite the limited scope of the alleged infringement, Oravec claims <u>all</u> of the "profits" to be generated from the sale of the individual units in the two buildings. Oravec has submitted an accountant expert, Louis Dudney, C.P.A., to support his claim for infringer's profits. Dudney simply tallied up the contract prices for all units of the Trump Palace (closings of which are just

starting to occur) and of the Trump Royale (ground breaking has just occurred and closings are not anticipated for more than a year).  After reducing this gross revenue projection by estimated direct construction costs and indirect costs, Dudney concluded that "expected profit related to the development of the Trump Palace and Trump Royale is $97.7 million to $109.8 million." (*See* Exhibit F, Rebuttal Report of Dudney, at 4.) Thus, in Dudney's view, *every* dollar of "profit" from the entire condominium development is assumed to be based on the allegedly infringing design of one side of the buildings and should be awarded to Oravec.

Yet, Oravec has presented no evidence that any of the gross revenues or profits are attributable to the convex-concave design of one side of each of the two buildings.  His damage expert, Dudney, freely admitted in deposition that he was not providing any opinion as to causation issues.  (SOF ¶ 81.) (*See* Dudney Dep. at 66-67 (admitting he performed no analysis of buyers' motivations, a subject outside of the scope of his expertise).)  He merely crunched numbers.

At the eleventh hour, Oravec has attempted to inject a new theory to assert a causal relationship between the alleged infringement and the revenues or profits from the development. Oravec submitted as a purported rebuttal expert, Jeffrey E. Sueck.  Sueck has provided a report claiming that the allegedly infringing convex-concave design of the Trump Palace and Trump Royale cost 21-25% more to build than "two structures embodying the more basic Y-shaped design originally contemplated for the site."[6]  (Exhibit J, Report of Sueck, at 1, 3.) Based on this, Dudney opines that no reasonable investor or developer would have invested "this significant additional amount if there was not an expectation of a reasonable return on this

---

[6] Defendants have contemporaneously filed a motion to strike Sueck as an expert because his report is not rebuttal in nature and therefore he was disclosed untimely.  Sueck admits that his "cost estimator analysis" does not rebut anything in Cannon's expert report. (SOF ¶ 80, Sueck Dep. at 177-78.)  Moreover, Sueck, a "cost estimator", does not even possess similar expertise to that of the expert he is offered to rebut, Defendant's real estate marketing expert Michael Cannon.

investment." (Exhibit F, Rebuttal Report of Dudney, at 28-29.) In deposition, Dudney acknowledged he had no opinion as to whether the "expected return" actually occurred. (Dudney Dep. at 182.) Thus, this new "opinion" offers, at best, speculation as to whether the "expected return" from the change in design ever occurred and if so whether the greater return had anything to do with the concave-convex features in the building.[7]  As noted above, speculation does not provide a basis for avoiding summary judgment.

### (iv)    *Undisputed Evidence of Lack of Causal Link Between Gross Revenues or Profits and Alleged Infringement*

In contrast to the dearth of evidence on causation offered by Oravec or his experts, the Defendants have provided uncontradicted evidence that there is no causal link between the gross revenues or profits and the alleged infringement. Defendants rely on the report and testimony of expert Michael Y. Cannon, MAI, SRA, ASA, CRE, the testimony of architect Charles Sieger, and the testimony of the principal of the developer, Gil Dezer.

Cannon is a Florida state-certified general appraiser and a licensed real estate broker. (Exhibit K, Cannon Rpt., CV.) He has been designated an Accredited Senior Appraiser by the American Society of Appraisers, a Senior Residential Appraiser by the Appraisal Institute, a Counselor of Real Estate, and a Senior Mortgage Consultant by the Society of Mortgage Consultants of the National Association of Mortgage Brokers. (*See* Id.) Cannon has practiced real estate analysis, valuation, consulting and finance in South Florida for over 40 years. (*See* Id.) He has provided these services for numerous lending institutions, governmental agencies,

---

[7] The architects and developer testified that the change of design occurred when the developer purchased additional land to accommodate the second building and was intended to maximize views. (SOF ¶ 82, Sieger Dep. at 127; Suarez Dep. at 179; G. Dezer Dep. at 49-50.) Michael Dezer testified that he did not know that the new design was more expensive and that the change was made to allow more units on more land. (SOF ¶ 83, M. Dezer Dep. at 86, 95-96.) Moreover, neither Sueck nor Dudney can even suggest that it was the allegedly infringing (convex-concave on one façade) features of the larger buildings that resulted in the allegedly higher cost. For example, neither expert provided any indication that the cost would have differed if the building was convex on both sides or concave on both sides. (Dudney Dep. at 186-87.)

developers, investors, builders, and insurance companies. (*See* Id.)  He has testified before governmental bodies, appeared before municipal and county bodies, and testified in state and federal courts as an expert relating to marketable land use and other real estate issues. (*See* Id.) He has also lectured and taught extensively in the area of market analysis and business valuations. (*See* Id.)

Cannon performed a market survey of high-rise condominium developments in the area and concluded that the unit pricing and price point range for the Trump Palace and Royale are in line with those of comparable developments. (SOF ¶ 85.) (Exhibit K, Expert Report of Michael Cannon, at 9; Cannon Dep. at 84-85.)  Thus, there are no premiums in the sales prices for units in this development compared to those of comparable developments, regardless of any differing design considerations.[8]  (SOF ¶ 86, Cannon Dep. 35-36.)  Thus, the design elements involved in Oravec's claim add nothing to the revenues generated from sales of the units. (Indeed, if this design was more expensive than others, it actually reduced the profits realized from the project.)

Cannon testified that the exterior façade is not an important factor to the purchaser in his decision making process in purchasing a unit.  (SOF ¶ 87, Cannon Dep. at 41-42.)  It must simply meet a minimal threshold of functionality and overall compatibility to be acceptable to the market. (SOF ¶ 88, Cannon Dep. at 121.)  The design of building becomes relevant only if it is so outlandish as to render the building unmarketable.  (SOF ¶ 89, Cannon Dep. at 41-42, 92.) According to Cannon, no portion of the profit is attributable to the exterior design of the building.  (SOF ¶ 90, Cannon Dep. at 81-82, 121, 152.)  Cannon notes that the building would have had a façade in any event whether it allegedly infringed or not. (SOF ¶ 91, Cannon Dep. at 81, 83.)

---

[8] Cannon's market survey refutes the speculative "expected return" theory espoused by Dudney and Sueck.

Cannon explains that in high-rise residential developments the developer is advertising and the buyer is concerned with the unit, the size of the units, the features of the unit, the common elements such as the swimming pool, recreational facilities, location, and accessibility. (SOF ¶ 92, Cannon Dep. at 42.)  Other factors of interest to buyers are the ambience of the lobby, ambiance and functionality of the unit sizes, the ambience and functionality of the common elements, the pool, and the view.[9]  (SOF ¶ 93, Cannon Dep. at 123.)  In surveys of sales directors, manager and various buyers, Cannon has confirmed that they did not even think about the exterior look of the building unless, as noted above, it was outlandish.  (SOF ¶ 94, Cannon Dep. at 42.)

Similarly, Charles Sieger, who has been a well-established architect in Florida and has designed numerous high-rise residential buildings in South Florida, testified that a building's exterior has nothing to do with the salability of the unit and imparts no additional value in marketing residential real estate.  (SOF ¶ 95, Sieger Dep. at 55-58.)  Values are imparted by location, views, and interior layouts.  (Id. at 57.)  "[T]he relative look of the exterior or façade of a building unfortunately as an architect is not very meaningful when it comes to the sale of real estate."  (Id.)

Moreover, it is undisputed that the Trump name associated with the project made a substantial difference in the marketability of the units.  (SOF ¶ 96, Gil Dezer Dep. at 113-14.)  Gil Dezer, a principal of the developer entities who among other things runs sales operations,

---

[9] Trump Palace/Trump Royale are part of an 11-acre, exclusive oceanfront enclave with features and amenities that include: (1) A beautifully manicured gatehouse entry with 24-hour attendant; (2) A magnificent two-story lobby entrance; (3) 1,000 feet of pristine beachfront; (4) A tropically landscaped water activities center; (5) Temperature-controlled lagoon pool with sloped, beach-grade entry; (6) Two temperature controlled lap pools; (7) Jacuzzis; (8) Waterfalls; (9) Snack bar & grill; (10) Private, high-speed elevators leading to residence entrance galleries with handcrafted coffered ceilings and solid-wood double doors; (11) Ten-foot ceilings and floor to ceiling windows; (12) Spacious outdoor terraces in all units, accessible from master suites with panoramic ocean and Intracoastal views (13) A 5,000 sq. ft. duplex spa with his-and-hers Jacuzzi, sauna, steam room, treadmills, stationary bikes and state-of-the-art Nautilus equipment (14) Two floors of multi-purpose rooms, such as a billiards room and conference rooms; and (15) Full service valet and car wash.  (Exhibit L, CANNON-00163-00182; 00294-00311.)

CASE NO. 04-22780-CIV-SEITZ-McALILEY

further explained that units are marketable due to the Trump name, the project's amenities, the location, and views. (Id. at 115.) Gil Dezer testified the design of the building was not a factor in the sales of the units: (SOF ¶¶ 96-98.)

```
13        THE WITNESS:  People don't buy the design
14    of a building, that's not any reason why
15    somebody would chose me over somebody else.
16        When we had the design of the building and
17    we were just Residences at Ocean Grande, we
18    weren't selling that well.  We were somewhat of
19    a dog condo project, we had to undercut our
20    competition in order to make sales, and it
21    wasn't really a viable business at the time.
22        We were almost came to the point of
23    scrapping the entire Residences at Ocean Grande
24    project because the 50 percent sales we had
25    were at such low numbers that it wouldn't have
0117
1    made sense to try to build the building because
2    it didn't look like we were going make a
3    profit.
4        Once we got involved with Donald Trump and
5    the Trump organization we were able to increase
6    prices by selling the same square footage and
7    so, therefore, the margins had definitely
8    increased and the pace of sales increased.  The
9    people wanted the building more and, again, not
10   because anything but design, it had to do with
11   location, had to do with amenities.
12       We went overboard as far as amenities go
13   throughout the building.  And, you know, we,
14   the first, first buyers got the advantage of
15   the uptick in the price, and that's why you see
16   that some of them actually took a financial
17   advantage in reselling.  It was all because of
18   the Trump name.
```

In sum, based on the evidence in the record and as supported by this motion for summary judgment (1) there exists no conceivable connection between the alleged infringement and the revenues or profits from the sales of the individual condominium units; and (2) assuming, *arguendo*, the existence of a conceivable connection, Oravec has offered only speculation as to the

- 32 -

existence of a causal link between the infringement and such revenues or profits. See Bouchat, 346

F.3d at 522-23. Therefore, summary judgment should be entered on Oravec's claim for infringer's

profits under § 504(b).

### H. THE TRUMP AND DEVELOPER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE – LACHES

#### (i)    *Background as to the Affirmative Defense of Laches*

Plaintiff's Second Amended Complaint alleges that "Oravec first became aware of the

Trump Grande Ocean Resort and Residences via the February 15, 2003, Miami Herald article

when his son, noticing the striking resemblance of the models of the Trump Palace and the Trump

Royale pictured in the article to his father's design, drew it to his father's attention. (*See* 2nd

Amend. Comp. ¶ 32.) Plaintiff's Second Amended Complaint further alleges that "[t]hat date was

the first time Oravec knew or reasonably should have known of the copyright infringement of his

drawings or design. *See* Id. In addition, Plaintiff's Second Amended Complaint alleges that

"[a]pproximately one week after learning of the Trump Grande Ocean Resort and Residences,

Oravec visited the sales office and saw large scale models of the proposed twin towers and

confirmed that these towers were copies of his work." (*See* 2nd Amend. Comp. ¶ 33.) At that time,

Oravec took photographs of the models and obtained sales brochures that contained pictures of the

proposed twin towers. *See* Id.

In answering Plaintiff's Second Amended Complaint, Defendants contend that Oravec's

action is barred by laches. (*See* 4th Affirm. Def. in Answer to 2nd Amend. Comp. ¶ 67, attached

hereto as Exhibit M.) Oravec discovered the alleged infringement at least as early February 2003,

before construction of the Trump Palace and Trump Royale began. *See* Id. Oravec initially filed

this lawsuit in November 2004, over twenty (20) months [almost two (2) years] after discovering

the alleged infringement. *See* Id.  During this over twenty (20) month period, construction of the Trump Palace was substantially completed. *See* Id.  Oravec failed to notify any of the Defendants during this period that he believed his alleged design was being infringed, and only notified the Defendants until [almost two (2) years] after construction of the Trump Palace was substantially completed. *See* Id.

### (ii)    *Legal Standard on Laches*

The United States Supreme Court has held that the laches defense requires proof of lack of diligence by party against whom defense is asserted, and prejudice to party asserting the defense.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121-22 (2002).  *See also* Costello v. U.S., 365 U.S. 265, 282 (1961).  Courts will not aid in enforcing stale demands, where a party has been guilty of negligence and has slept on his rights.  Godden v. Kimmell, 99 U.S. 201 (1878).  *See also* Piatt v. Vattier, 34 U.S. 405 (1835).  Independently of any statute of limitation, courts have inherent powers to refuse relief after undue and unexplained delay, and when injustice would be done by granting the relief asked.  Abraham v. Ordway, 158 U.S. 416 (1985).

The Eleventh Circuit Court of Appeals has held that laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in absence of appropriate statute of limitations.  Equal Employment Opportunity Comm. v. Dresser Indus., Inc., 668 F.2d 1199, 1201 (11th Cir. 1982).  To establish laches, a litigant must demonstrate there was a delay in asserting a right or a claim, the delay was not excusable, and the delay caused the litigant undue prejudice.  U.S. v. Barfield, 396 F.3d 144, 1150 (11th Cir. 2005); Venus Lines Agency, Inc. v. CVG Intern. America, Inc., 234 F.3d 1225 (11th Cir. 2000); Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199 (11th Cir. 1997).

### (iii)   *Legal Argument in Support of the Trump and Developer Defendants' Summary Judgment as to the Affirmative Defense of Laches*

Oravec's action is barred by laches.  Oravec discovered the alleged infringement at least as early February 2003, before construction of the Trump Palace and Trump Royale began.  (SOF ¶ 54.)  Oravec testified that when he visited the site on February 16, 2003, only the foundation of the Palace had been laid.  (SOF ¶ 55.)  Oravec initially filed this lawsuit in November 2004, over twenty (20) months [almost two (2) years] after discovering the alleged infringement.  (SOF ¶ 57.)  Oravec failed to notify any of the Defendants during this period that he believed his alleged design was being infringed, and only notified the Defendants until [almost two (2) years] after construction of the Trump Palace was substantially completed.  (SOF ¶ 56-57.)  Exhibit H of Plaintiff's initial Complaint, dated November 2, 2004, contained pictures, taken by Oravec, of the Trump Palace's status on/or around the time in which Oravec filed this action  (*See* Initial Complaint & Oravec Pics. attached hereto as Exhibit N.)  As the Court will see in the pictures, between the twenty months (20) months that Oravec waited to file this lawsuit, the structure went from the foundation (February 16, 2003) to almost the complete construction of the building (November 2, 2004).  If Oravec had notified the developer or architect of his infringement claim in February of 2003, the developers and the architects of project could have considered alternative options as to the project and perhaps obviate the claim.  (SOF ¶ 58.)

Under the Supreme Court's analysis in National R.R. Passenger Corp., Oravec's claims for copyright infringement would be barred due to the prejudice that have been imposed upon Defendants as a result of Oravec's lack of diligence to bring his claims in a timely fashion. Pursuant to the Eleventh Circuit's holding in Equal Employment Opportunity Comm., Defendants in this matter have established: (1) Oravec delayed asserting his rights for approximately twenty (20) months; (2) Oravec provided no reasonable excuse for this delay; and (3) Oravec's delay has

caused Defendants undue prejudice due to the fact that construction of the alleged infringing building, the Trump Palace, is all but complete. Oravec's unexplained delay of choosing to sleep on his rights for a period of twenty (20) months while construction of the Trump Palace commenced, and choosing not to notify anyone of the alleged infringement, should in of itself, bar his claims based solely on the laches defense. Oravec should not be awarded relief for the undue prejudice he has caused Defendants. As such, the Court should therefore enter Final Summary Judgment in favor of Defendants on Oravec's copyright infringement claims.

### I. THE TRUMP AND DEVELOPER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE – WAIVER OF CLAIM

To avoid duplication of argument, the Trump and Developer Defendants incorporate by reference the Sieger Suarez Defendants' arguments concerning waiver of claim.

### J. THE TRUMP AND DEVELOPER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE – ORAVEC'S ILLEGAL SOLICITATION OF DESIGN

To avoid duplication of argument, the Trump and Developer Defendants incorporate by reference the Sieger Suarez Defendants' arguments concerning Oravec's illegal solicitation of his design.

**WHEREFORE**, Defendants Sunny Isles, Dezer Properties, Dezer Development, Michael Dezer, Gil Dezer, the Trump Corporation, Trump, Residences, and Royal Development respectfully request that this Honorable Court enter Final Summary Judgment in favor of the aforementioned Defendants, and for such other relief as this Court deems just and proper, including, but not limited to, reimbursement of attorney's fees pursuant to 17 U.S.C. § 505.

RUSSOMANNO & BORRELLO, P.A.

CASE NO. 04-22780-CIV-SEITZ-McALILEY

Respectfully submitted,

RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Suite 2101
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

By: _____

    Herman J. Russomanno (Fla. Bar No.240346)
    Robert J. Borrello (Fla. Bar No. 764485)
Counsel for Defendants Sunny Isles Luxury
Ventures L.C., Dezer Properties LLC, Dezer
Development, LLC, Michael Dezer, Gil Dezer, The
Trump Corporation, Donald J. Trump, Residences
at Ocean Grande, Inc., and Royal Development
Holdings, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail

and by electronic transmission on this 10th day of April, 2006, to:

Barry L. Haley, Esq.
Malin, Haley & DiMaggio P.A.
1936 South Andrews Avenue
Ft. Lauderdale, Florida 33316
*Counsel for Plaintiff*

Reed S. Oslan, P.C.
James N. Nowacki, P.C.
Russell E. Levine,P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
*Of Counsel for Plaintiff*

Susan E. Mortensen, Esq.
Burlington, Weil, Schwiep,
Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
*Counsel for Defendant, The Sieger Suarez
Architectural Partnership, Inc.*

_____
Robert J. Borrello