UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-22780-CIV-SEITZ-McALILEY

PAUL ORAVEC,

    Plaintiff,

v.

SUNNY ISLES LUXURY VENTURES L.C.,
THE SIEGER SUAREZ ARCHITECTURAL
PARTNERSHIP, INC., CHARLES M.
SIEGER, JOSE J. SUAREZ, DEZER
PROPERTIES LLC, DEZER
DEVELOPMENT, LLC, MICHAEL DEZER,
GIL DEZER, THE TRUMP CORPORATION,
DONALD J. TRUMP, RESIDENCES AT
OCEAN GRANDE, INC. and ROYAL
DEVELOPMENT HOLDINGS, LLC,

    Defendants.

_____/



## TRUMP AND DEVELOPER REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I.**    **RESIDENCES AT OCEAN GRANDE, INC. AND ROYAL DEVELOPMENT HOLDINGS, LLC ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS**

    Residences and Royal Development are entitled to summary judgment on all claims for failure to state a claim upon which relief can be granted because Plaintiff failed to include either Defendant in any of the three counts (I, II, or III) in his Second Amended Complaint. In response, Plaintiff claims (p. 9) that because he incorporated various general allegations by reference (i.e., ¶¶ 37-40) that Residences and Royal Development were on fair notice that they were included in each of the three claims for relief. Plaintiff distorts his own complaint, which was amended twice. A review of each of the three counts makes clear that the Plaintiff carefully and specifically chose only those Defendants he believed was guilty of direct, contributory, or vicarious infringement. For example, Count I is for direct infringement. The title of the claim lists only Sunny Isles, Sieger



CASE NO. 04-22780-CIV-SEITZ-McALILEY

Suarez, Sieger, Suarez and Dezer Properties. Paragraph 45 makes clear that only those defendants are the subject of this claim. Likewise, Count II for vicarious infringement specifically mentions Michael Dezer, Gil Dezer, Dezer Development, the Trump Corporation, and Trump. The allegations within this claim reference those defendants only. Paragraphs 53-56 specifically reference only those defendants. Count III follows the same pattern. It lists only the Trump Corporation and Trump and paragraph 63 makes absolutely clear that only those defendants are included in this claim.

Residences and Royal were not on fair notice that they were accused of direct, contributory or vicarious infringement. To the contrary, by alleging that they are a "proper party" [¶¶ 14-15] and including them in the wherefore clause it was apparent that they were named because of the prospect of injunctive relief being asserted. That does not place these Defendants on notice that Plaintiff was seeking millions of dollars in damages from them and certainly did not place them on notice as to the nature of the claims against them.

Moreover, Plaintiff has received abundant evidence of the roles of Residences and Royal Development in discovery. Eight months ago, on September 15, 2005, Gil Dezer testified in deposition that Residences at Ocean Grande and Royale Enterprises are responsible for the development of the Trump Palace and Trump Royale respectively. [SOF ¶¶ 70, 74: G. Dezer Dep. at 8][1]  Plaintiff does not and cannot attempt at this late date to correct this deficiency by amendment.[2]  Summary judgment should be granted to these two Defendants.

---

[1] In addition, Plaintiff was put on notice of the identity of the developers and owners of the Trump Palace and Trump Royale through fact depositions, 30(b)(6) depositions, expert depositions, thousands of documents produced, and expert reports: (1) Defendants' production of approximately forty boxes on or around December 9, 2005 [DZ504735-DZ530739]; (2) Documents produced in Response to Request No. 1 [Documents sufficient to identify each person or entity responsible for the development of the Trump Palace] of Plaintiff's Sixth Request of Production on December 1, 2005 [Ex. 1: DZ001103-DZ001104]; (3) Affidavit of Gil Dezer, produced to Plaintiff on December 9, 2005 [Ex. 22 of Plaint. Opp. MSJ; DZ519833]; (4) Joe Silver's 30(b)(6) deposition on January 5, 2006 [SOF ¶¶ 60-62, 67-69, 71-72]; (5) Several hundred documents produced on January 31, 2006 [DZ532339-DZ533045, DZ533093-DZ533360]; (6) Barry Brant's Expert Report dated February 6, 2006 [SOF ¶ 73]; (7) Bank of America documents produced to Plaintiff on February 21, 2006 [BOA 000001-BOA 005294]; (8) Louis

## II.   SUNNY ISLES AND DEZER PROPERTIES ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I FOR DIRECT INFRINGEMENT[3]

There are no facts in the record that indicate that Sunny Isles and Dezer Properties copied

constituent elements of Plaintiff's work, or that Sunny Isles or Dezer Properties had access to

Plaintiff's work. *See* Feist Publications, Inc. v. Rural Tel. Serv. Co., 449 U.S. 340, 361 (1991);

Calhoun v. Lillenas Publishing, 298 F.3d 1228, 1232 (11th Cir. 2002).

Plaintiff's access argument is factually unsupported. It is undisputed that Sunny Isles and

Dezer Properties had no access to Plaintiff's designs. Oravec himself testified that he has never

caused his designs to be given to Michael Dezer or Gil Dezer. [SOF ¶ 36] Oravec stated that he

knows of "no facts" that would support the idea that the Dezers had access to his designs. [SOF ¶

37]

Plaintiff's theory of access through Trump is factually unsupported. Oravec admitted he

has no proof that Trump received the package of his design. [SOF ¶¶ 13-14] Oravec testified that

he knows of "no facts" that would support the idea that the Developer Defendants had access to his

designs. [SOF ¶¶ 36-37] No one employed by Trump or by his entities that he controls ever saw

these drawings or designs allegedly submitted by, or on behalf of Oravec. [SOF ¶ 30] Trump has

never received or seen any of Oravec's designs before the initiation of this lawsuit. (SOF ¶¶ 27,

---

Dudney's Rebuttal Report dated February 27, 2006 [SOF ¶¶ 68, 71]; (9) Barry Brant's deposition on March 23, 2006 [SOF ¶¶ 60, 68, 71, 73].

[2] Schneider v. Russell Corp., 823 F.2d 422, 429 (11th Cir. 1987) (denial of former employee's motion to amend complaint was not abuse of discretion, where motion to amend was made approximately one week before hearing on summary judgment motion); Local 472 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Georgia Power Co., 684 F.2d 721, 724-25 (11th Cir. 1982) (no abuse of discretion to deny motion to amend complaint where motion was filed two years after action was instituted, after discovery was complete, and after all defendants had filed motions for summary judgment, and attempt to amend appeared to be nothing more than effort to avoid adverse summary judgment); Moyer v. Walt Disney World Co., 146 F.Supp.2d 1249, 1252 (M.D.Fla. 2000) (leave to amend was not warranted after Plaintiff's counsel could not show good cause to obtain relief from deadline due to counsel's lack of diligence, discovery was closed, and Defendant's motion for summary judgment was ripe for resolution). To the extent the Court were to allow Plaintiff to assert claims against Residences and Royale, these Defendant incorporate the arguments made on behalf of the other Developer Defendants and Sieger Suarez.
[3] To avoid duplication of argument, the Trump and Developer Defendants re-assert their incorporation by reference to Sieger Suarez's arguments concerning Plaintiff's claims as to Count I for direct copyright infringement.

RUSSOMANNO & BORRELLO, P.A.

28.)  Plaintiff does not controvert these facts.  Instead, Plaintiff relies on the inadmissible hearsay testimony of Litman who says that Binn told him that he (Binn) gave the designs to Trump.  (*See* Plaint. SOF ¶ 74.)  Binn did not recall if he gave the designs to Trump.  (SOF ¶ 19)  Plaintiff may not rely on hearsay to establish an issue of fact to oppose summary judgment.[4]

Similarly, Plaintiff distorts Binn's testimony of his "habits."  Binn testified that he does not send anything to Trump and has no habit of doing so.  [Ex. 2: Binn Dep. at 69]  This is the opposite of Plaintiff's suggestion.  Binn's testimony does not provide any basis for establishing that Trump had access to the Plaintiff's designs.

Even if the Court were to find that Sunny Isles and Dezer Properties had access to Plaintiff's works, these entities Sunny Isles and Dezer Properties are still entitled to Final Summary Judgment based upon the undisputed fact that they are not one of the two developers and owners of the Trump Palace and the Trump Royale (the buildings at issue).  The owners and developers of the two buildings at issue are Residences at Ocean Grande, Inc., and Royale Florida Enterprises, Inc.  The owner and developer of the third building located at the site [the Trump International Sonesta Resort (the hotel)], is Sunny Isles.  Sunny Isles Luxury Ventures L.C. has nothing to do with the condominium buildings that are now the Trump Palace and the Trump Royale.  (SOF ¶¶ 60-66.)   At no point in time was a company other than Residences and Royale Florida responsible for the development of the two buildings. (SOF ¶¶ 60-62, 67-75.)

## III.    DEZER DEVELOPMENT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR VICARIOUS INFRINGEMENT

---

[4] Inadmissible hearsay may not be used to defeat summary judgment when hearsay will not be available in admissible form at trial.  Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir. 2004); Denny v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001); McMillian v. Johnson, 88 F.3d 1573, 1584-85 (11th Cir. 1996); Pritchard v. Southern Co. Services, 92 F.3d 1130, 1135 (11th Cir. 1996).  The Eleventh Circuit has also held that it is an error for the district court to consider hearsay testimony in ruling on motion for summary judgment.  Macuba v. Deboer, 193 F.3d 1316, 1325 (11th Cir. 1999).

Plaintiff has not put forth any competent evidence to demonstrate that that Dezer Development has directly profited or will directly profit from the alleged infringement.  Instead, Plaintiff relies (p. 20) upon his *speculative assertion* that the Dezers may possibly in the future shift profits of the Trump Palace and the Trump Royale from either Residences or Royale Florida to Dezer Development.  Plaintiff cites to no statements of fact that would indicate that the Dezers are intending to do so.  Therefore, under <u>MGM Studios, Inc. v. Grokster, Ltd.</u>, 125 S.Ct. 2764, 2776 (2005), Dezer Development is entitled to Final Summary Judgment as to Count II for vicarious copyright infringement.

## IV.    THE TRUMP CORPORATION AND TRUMP ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR VICARIOUS INFRINGEMENT

Plaintiff does not dispute that at the time Trump entered the License Agreement it was too late for Trump and the Trump Organization to make any changes to the exterior design of the Trump Palace and the Trump Royale.  (SOF ¶¶38-53.)  Instead, Plaintiff argues that the act of entering into the agreement represented approval of the design.  However, that misses the point. The issue is whether the circumstances at issue allowed the Trump Defendants the right and ability to supervise the infringing activity.  The uncontroverted evidence is that they did not have the right and ability to supervise or change the exterior design.  Plaintiff's reliance on the changes suggested by the Trump Defendants on the ceiling height is irrelevant to whether Trump had any right or ability to make changes to the infringing elements, the vertically stacked convex-concave design, elevator cores, etc.

CASE NO. 04-22780-CIV-SEITZ-McALILEY

## V.   THE TRUMP CORPORATION AND TRUMP ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III FOR CONTRIBUTORY INFRINGEMENT

Plaintiff has failed to establish: (1) a direct infringement by a primary infringer (*See* Sieger Suarez Defendants' Motion for Summary Judgment); (2) the Trump Defendants had knowledge of the [alleged] infringement; and (3) the Trump Defendants materially contributed to the [alleged] infringement.  *See* Contessa Food Prods. v. Lockpur Fish Processing Co., 123 Fed. Appx. 747, 749-750 (9th Cir. 2005) (quoting MGM Studios, Inc. v. Grokster Ltd., 380 F.3d 1154, 1160 (9th Cir. 2004)).  As discussed in section II above, there is no competent evidence that the Trump Defendants received any of Plaintiff's designs.

Plaintiff argues (p. 23) that a genuine issue of material fact exists as to whether the Trump Defendants provided Plaintiff's copyrighted works to either the Developer Defendants or the Sieger Suarez Defendants.  Because there is no competent evidence that Trump had access to the designs (see section II above), there is no competent evidence that Trump provided them to anyone, including Michael Dezer, Gil Dezer, or the Sieger Suarez. (SOF ¶ 32)

Plaintiff also argues (p. 23) that the Trump Defendants materially contributed to the alleged infringement because under the Licensing Agreement the Trump Defendants' had the "ability" to induce, cause, or materially contribute to the [alleged] infringement.  As discussed in section IV above, Trump did not have the power or ability to change the exterior look of the building in the timeframe in which he became involved in the project.  Plaintiff does not dispute the fact.

## VI.   THE TRUMP AND DEVELOPER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ORAVEC'S CLAIM FOR INFRINGER'S PROFITS

Plaintiff first argues (pp. 24, 29) that causation is established because defendants "are marketing and selling the infringing work itself."[5] According to Plaintiff, because a condominium

---

[5] Plaintiff agrees (p. 25) that under 17 U.S.C. § 504(b) he has the burden of showing "at least *some* causal connection between infringement and profits before defendants must prove deductible expenses and the elements of

purchaser is obtaining an undivided interest in the common elements, which includes the exterior of the building, he is "purchasing" the copyrighted work "directly." Plaintiff is wrong. A "direct" sale of the copyrighted work would be a sale of the allegedly infringed building design to condominium unit purchasers. That did not occur.

To be precise, the copyrighted interest is the exterior <u>look</u> of the buildings on one side caused by the stacking of alternating concave-convex segments—not the concrete, steel and walls which make up the structure. Purchasers are acquiring condominium units and an undivided interest in the common elements including recreational facilities. Plaintiff does not dispute that the building would have had a façade anyway– the issue is how it looks from the outside. It is far too attenuated to suggest that ownership in a structure that has an allegedly infringing look is tantamount to purchasing the copyrighted work itself.

Plaintiff next argues that there is sufficient non-speculative evidence that Defendants' profits are attributable to the alleged copyright infringement. First, Plaintiff cites to the "rational developer" theory as "circumstantial" evidence of a causal link. The basis for the theory is the speculative and unsupported testimony of Plaintiff's experts, Sueck and Dudney. For the reasons set forth in our *Daubert* motion to exclude expert testimony of these witnesses and our motion to strike Sueck as an expert witness, such testimony should not be considered. As discussed in those motions, the speculation that a hypothetical "rational developer" would allegedly *"expect"* to generate a return from a more expensive design provides no proof that it happened here. To the contrary, the undisputed testimony of Cannon establishes that there is no premium in the prices of units in the Trump Palace and Trump Royale as compared to those of other competitive and comparable developments in the area having other designs. Moreover, Trump's testimony establishes that a more conventional design (such as a rectangular one) would have yielded

---

profits attributable to factors other than the copyrighted work." Plaintiff also agrees (p. 25) as to the standard on summary judgment cited in our motion.

higher profits for this development because the prices would have remained the same.  [Ex. 3: Trump Dep. at 80-82]  Thus, the only evidence in this record establishes that the more expensive design *reduced* the profits from this project.  The "rational developer" theory has no factual connection to this case and provides no factual basis to demonstrate a causal link between the alleged infringement and profits.

Plaintiff's also attempts to extend his infringement claim from the look of the building to the interior designs (p. 30) or to the views of the building (p. 31).  This effort is unavailing.  Plaintiff's infringement claim is based on the look created by vertically stacking alternating convex and concave segments to the building.  [Ex. 4: Oravec Dep. 404-05]  Plaintiff obviously cannot copyright roundness or an oval shape (e.g., a banana shape).

The Ocean side of the building is uniformly convex (i.e., oval shaped); it does not have alternating convex-concave elements.  Thus, the views of the ocean and the interior designs cannot be the product of any copyrighted interest.  If the Collins Avenue side were likewise all convex (or concave for that matter), there would be no issue of infringement.  Thus, it is not the intrinsic quality of each of the three stacked segments which is copyrightable; it is the *combining* of them together that is allegedly unique.  The interiors and the views exist *independent* of the combining of the concave-convex segments.  Accordingly, the views and interior design (and any profits derived therefrom) are not and cannot be attributable to the allegedly infringing elements.

Finally, Plaintiff (p. 30) attempts to rely on marketing materials, many of which (unsurprisingly) contain pictures or images of the outside of the building as establishing a factual issue.  First, there is no evidence that the vertically stacked convex-concave segments of the building, which are the *sine qua non* of Plaintiff's infringement claim, or any other alleged infringing elements are the centerpiece of the Developer's marketing and advertising.  See

CASE NO. 04-22780-CIV-SEITZ-McALILEY

Mackie v. Rieser, 296 F.3d 909, 916 (9th Cir. 2002) (finding causal nexus between infringing use of image contained in Symphony's promotional brochure and revenues or profits of the Symphony);[6] see also Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 797 (8th Cir. 2003) ("infringement was the centerpiece of a commercial that essentially showed nothing but the TT coupe" and evidence established that Audi "enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market").

Second, Plaintiff misperceives his burden on summary judgment. As demonstrated in our motion, Defendants have provided evidence through the expert testimony of Cannon and testimony of Sieger and Gil Dezer that the profits from the building are not attributable to the look of the building.[7] "Having met their burden, the Defendants successfully shifted the onus onto [the Plaintiff] to come forward and demonstrate that such an issue does, in fact, exist." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003). In responding, Plaintiff simply relies on speculation that somehow, somewhere purchasers were drawn to the Trump Palace or Trump Royale because of the look of the building (on one side) as compared to the Trump name (which is the centerpiece of the marketing), the views or the luxurious amenities. In sum, there is no evidence providing a causal link between the alleged infringement and the developer's profits. Plaintiff's speculations are not sufficient to defeat summary judgment.

## VII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE OF LACHES

---

[6] Mackie and Polar Bear Prods., Inc. v. Times Corp., 384 F.3d 700, 712 (9th Cir. 2004), are factually difficult to reconcile. Mackie found the presence of the infringing image in promotional material to be insufficient while Polar Bear seemingly allowed, as to the Mountain Dew promotion, the "featuring" of the product in the advertisement to be adequate. It seems that proof of the nexus in Polar Bear included the fact that purchasers who bought Mountain Dew obtained a discount if the purchase was based on the promotional material. Id.

[7] In his desperate attempt to create the appearance of a factual issue, Plaintiff tries to quibble with the testimony of Sieger, Cannon and Gil Dezer. Yet, none of their testimony establishes that the specific design features on which Plaintiff claims a copyright—vertically stacked concave-convex segments—have anything to do with the profits of this building. To the contrary, Cannon's testimony demonstrates there is no such relationship.

RUSSOMANNO & BORRELLO, P.A.

Plaintiff does not dispute that he waited 20 months before advising the Defendants of his infringement claims by suing them. Plaintiff seeks to justify this delay by claiming a difficulty in obtaining counsel. Yet, Plaintiff offers no reason why he failed to take any action himself to advise the Defendants of his claims or why any of the attorneys he consulted could not have at least mailed a cease and desist letter. Plaintiff's claims that any such notice would have been futile are unsupported. Plaintiff cites to deposition testimony of Gil Dezer relating to whether any changes were made _after_ Defendants were sued. However, this is irrelevant to whether changes could have been made if notice had been given 20 months earlier and whether alternatives could have been pursued at that time to obviate the infringement claims. (SOF ¶ 58)[8]

## VIII. MICHAEL DEZER AND DEZER DEVELOPMENT ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II FOR VICARIOUS INFRINGEMENT

Plaintiff admits that Michael Dezer directly or indirectly owned the land which was contributed to Residences (the Trump Palace) and Royale Florida (Trump Royale). [See Pltf. Ex. 4, Dudney Aff. ¶¶ 10-12] Plaintiff does not establish any other financial interest on the part of Michael Dezer. Moreover, Plaintiff argues that Dezer Development's financial interest in the buildings would be only to the extent that Michael Dezer receives monies from the project. [Id.] It is undisputed that the only monies that Michael Dezer (and Dezer Development through him) would receive from the project is based on the sale of the land to Residences or Royale Florida. Plaintiff has submitted no evidence to suggest that the amount to be paid for the contributed land is based on _profits_ from the Trump Palace and Trump Royale as opposed to the market value of the land and repayment of loans made to the project. Thus, Plaintiff has submitted no evidence that Michael Dezer or Dezer Development have profited from the development.

---

[8] Plaintiff ignores the obvious distinction between making changes to an exterior design to avoid infringement claims as compared to aesthetic changes by Trump.

CASE NO. 04-22780-CIV-SEITZ-McALILEY

RUSSOMANNO & BORRELLO, P.A.
Museum Tower, Suite 2101
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

By: *Herman J. Russomanno*

Herman J. Russomanno (Fla. Bar No.240346)
Robert J. Borrello (Fla. Bar No. 764485)
Counsel for Defendants Sunny Isles Luxury
Ventures L.C., Dezer Properties LLC, Dezer
Development, LLC, Michael Dezer, Gil Dezer, The
Trump Corporation, Donald J. Trump, Residences
at Ocean Grande, Inc., and Royal Development
Holdings, LLC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by

Federal Express on this 15th day of May, 2006, to:

Barry L. Haley, Esq.
Malin, Haley & DiMaggio P.A.
1936 South Andrews Avenue
Ft. Lauderdale, Florida 33316
*Counsel for Plaintiff*

Reed S. Oslan, P.C.
James N. Nowacki, P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
*Of Counsel for Plaintiff*

Susan E. Mortensen, Esq.
Burlington, Weil, Schwiep,
Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
*Counsel for Defendant, The Sieger Suarez
Architectural Partnership, Inc.*

*Robert J. Borrello*

Robert J. Borrello

# EXHIBIT 1



TRUMP
*Grande*
OCEAN RESORT & RESIDENCES

*A Trump Dezer Development*

September 29, 2003

**PERSONAL & CONFIDENTIAL**

HAND DELIVERED

Mr. Michael Neal,
Executive Vice President
Chief Operating Officer
COSCAN WATERWAYS, INC.
5555 Anglers Avenue
Suite 1A
Ft. Lauderdale, Florida 33312

RE   Trump Palace
Sunny Isles Beach, Florida

Dear Michael:

Reference is made to that certain Owner-Contractor Agreement, dated March 14, 2003, pursuant to which Residences at Ocean Grande, Inc., as Owner ("Residences"), retained Coscan Waterways, Inc. ("Coscan"), as Contractor, in connection with the construction of the above referenced Project.

Since the date of such Agreement, it has come to my attention that you and/or other representatives of Coscan have been issuing and distributing progress and other reports (pertaining to the Project; hereinafter, the "Reports") which, in certain instances, are not entirely accurate and/or do not accurately reflect the matters and/or conditions expressed therein.

As you can well understand, the issuance and distribution of such Reports prior to Residences' reviewing and commenting upon the same, is not productive to the progress of the Project and the work to be performed by Coscan with respect thereto. In addition, such Reports, in certain instances, may lead to misunderstandings between Residences, Coscan, the architect for the Project and/or the various financial institutions providing construction financing for the same.

Tel: 305.932.1000 • Fax: 305.936.9908 • WWW.TRUMPGRANDE.COM
18001 Collins Avenue • Sunny Isles Beach, FL 33160
Trump Corporate Sales in New York City • 103 Central Park South • NY, NY 10019 • 212 245 5084

DZ-001103

Mr. Michael Neal
September 29, 2003
Page Two

In view of the foregoing, notice is hereby given that before Coscan issues any further Reports and/or communications intended to be distributed to such architect and/or any such lender, the same must first be submitted to, and reviewed by, either Gil Dezer or the undersigned.

Your anticipated strict adherence to these procedures is greatly appreciated.

Yours very truly,

RESIDENCES AT OCEAN GRANDE, INC.

By: _____
Joseph Silver, General Counsel

JS:cl

Cc:  Michael Dezer
     Gil Dezer
     Peter Weiner, Esq.

DZ-001104

# EXHIBIT 2

Page 1

```
 1
 2     IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF FLORIDA
 3
       PAUL ORAVEC,                    )
 4                                     )
                    Plaintiff,         )
 5                                     )Case No:
              vs.                      )04-22780-CIV
 6                                     )Seitz/McAliley
       SUNNY ISLES LUXURY VENTURES, )
 7     L.C., THE SIEGER SUAREZ         )
       ARCHITECTURAL PARTNERSHIP       )
 8     INC., DEZER PROPERTIES          )
       LLC, DEZER DEVELOPMENT          )
 9     LLC, MICHAEL DEZER, GIL         )
       DEZER, THE TRUMP CORPORATION,)
10     DONALD J. TRUMP, RESIDENCES     )
       AT OCEAN GRANDE, INC.           )
11     and ROYAL DEVELOPMENT           )
       HOLDINGS, INC.,                 )
12                                     )
                    Defendants.        )
13     ---------------------------)
14
15
16
17        VIDEOTAPED DEPOSITION OF JASON BINN
18              New York, New York
19             Friday, May 6, 2005
20
21
22
23
24
       Reported by:
25     Jennifer A. Ocampo
       JOB NO. 172686
```



Page 66

Binn

1    **Binn**
2    **something. That's all I remember. I**
3    **can't -- I want to go further with you and I**
4    **want to help you, but I just don't -- I**
5    **have -- I don't remember any -- I can't give**
6    **you specifics on that.**
7        Q.  So in connection with the May 6,
8    1997 letter, you don't remember ever calling
9    Mr. Littman and saying, "Mr. Littman, I can't
10   do what you are asking me to do"?  You don't
11   recollect --
12       A.  **That I don't recall doing.**
13       Q.  Now, there's another name in this
14   letter, Mr. Steven Wynn; do you see that?
15       A.  **Yes.**
16       Q.  And who is Steven Wynn?
17       A.  **He has casinos in Las Vegas.**
18       Q.  In 1997, did you know Steven Wynn?
19       A.  **Yes.**
20       Q.  How did you know Mr. Wynn?
21       A.  **We were discussing doing a magazine**
22   **there.**
23       Q.  Had you told Mr. Littman that you
24   were doing a magazine with Steven Wynn?
25       A.  **No.  I don't remember, to be**

Page 67

1    **Binn**
2    **honest, and he could have maybe found out**
3    **through Jerry.  I don't know how Neal knew,**
4    **and I don't know where he came up, to be**
5    **honest.**
6        Q.  Came up with Steve Wynn's name?
7        A.  **I don't know how he put me and**
8    **Steve together, if it was me giving him**
9    **information about what I was discussing, or**
10   **if it was through other people.**
11       Q.  Does Steven Wynn do any
12   development-type work, real estate
13   development?
14       A.  **I don't know Steven Wynn that well**
15   **to even have more than a ten-second**
16   **conversation.  I had a meeting with him.  He**
17   **was interested in doing something out there**
18   **with magazines, and I have no idea where --**
19   **Steven Wynn is -- is definitely someone I**
20   **would not consider to be a dear friend.**
21       Q.  Do you recall one way or the other
22   whether you sent one of the packages to
23   Mr. Wynn after the May 6, 1997 letter?
24       A.  **No.**
25       MR. JACOBS:  Objection to form.

Page 68

1    **Binn**
2    He's already testified, Mr. Nowacki.
3        MR. NOWACKI:  I don't need any --
4        MR. JACOBS:  Object to form.
5        MS. MORTENSEN:  Same objection.
6        MR. JACOBS:  Mr. Binn, I am going
7    to ask you, before you answer questions,
8    give us a chance to assimilate the
9    question, so we have an opportunity to
10   object, not after you've answered, but
11   before.
12       THE WITNESS:  Sorry.
13       MR. JACOBS:  Object to form.
14       If you want to reask the question,
15   you have an opportunity to do so now,
16   Mr. Nowacki, in the proper form.
17       Q.  Do you have any recollection of any
18   conversation with Mr. Littman in 1997 about
19   Mr. Wynn?
20       A.  No.
21       Q.  Have you had any conversation with
22   Mr. Wynn at any time that you can recall
23   about whether he received the packages or
24   package?
25       A.  No.

Page 69

1    **Binn**
2        Q.  Now, you mentioned earlier today
3    about sending things to Mr. Trump.  I take
4    it, you have sent things to Mr. Trump in the
5    past?
6        A.  No.  I really don't.
7        Q.  You really can't remember or --
8        A.  Do not.  No, I don't make it a
9    habit of sending Donald anything, to be
10   honest.
11       There's the word "habit."
12       Q.  Understand, habit.
13       A.  I said earlier, I don't like to
14   leverage my relationships.  I'm in
15   publishing, and I typically just don't do
16   that.
17       Q.  Now, in the last two years, have
18   you had any conversations on any topic with
19   Mr. Littman?
20       A.  Very infrequently.  More of a
21   casual, nothing -- I can't recall.  I might
22   have had a few conversations with him over
23   the last few years.
24       Q.  When is the last conversation you
25   had with Mr. Littman?

18 (Pages 66 to 69)

# EXHIBIT 3

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF FLORIDA
 3

 4    ————————————————————————————
      PAUL ORAVEC,                    )
 5                                    )
                      Plaintiff,      )
 6                                    )
                                      )  INDEX NO:
 7    SUNNY ISLES LUXURY VENTURES,)
      L.C.,  THE SIEGER SUAREZ    )  04-22780-CIV
 8    ARCHITECTURAL PARTNERSHIP,  )  Seitz/McAliley
      INC, DEZER DEVELOPMENT LLC, )
 9    MICHAEL DEZER, GIL DEZER,    )
      THE TRUMP CORPORATION,       )
10    DONALD J. TRUMP, RESIDENCES )
      AT OCEAN GRANDE, INC., and  )
11    ROYAL DEVELOPMENT HOLDINGS, )
      INC.,                        )
12                                 )
                      Defendants.  )
13                                 )
      ————————————————————————————
14
15
16
17       VIDEOTAPED DEPOSITION OF DONALD TRUMP
18              New York, New York
19           Wednesday, January 4, 2006
20
21
22
23
24    Reported by:
      MERCEDES MARNEY, RPR
25    JOB NO. 5870
```

Page 80

1      **A    Yes.**

2      Q    Okay.  And the sales office, there's

3   obviously numerous pictures of the buildings,

4   correct?

5      **A    Yes.**

6      Q    And I assume that you would agree

7   that the look, the exterior look of the

8   building is a factor in attempting to market

9   the building?

10     **A    I think the Sieger Suarez firm is a**

11  **world class firm, and they did a great job.**

12     Q    That's something that you tell

13  potential buyers, correct?

14          MS. MORTENSEN:  Object to the form.

15          MR. RUSSOMANNO:  Object to the form.

16          THE WITNESS:  I don't tell buyers.  I

17      mean, you would have to ask the

18      salespeople what they tell buyers.  But I

19      think the Sieger design is a very good

20      design.

21          As I told you before, if we did a

22      beautiful rectangular building, I believe

23      that the Dezers would have actually made,

24      with the name, Trump, I believe the Dezers

25      would have made more money.  The building

Page 81

```
 1        would have been less expensive to build,

 2        and they would have gotten very similar

 3        prices.

 4        Q    Well, you anticipated one of my

 5   questions, which is, it cost a lot more money

 6   to build a curvy building like the Sieger

 7   Suarez design?

 8        A    Correct.

 9        Q    Do you have any sense of how much

10   more?

11        A    A lot more.

12        Q    Tens of millions more, right?

13        A    20 percent more, perhaps.

14        Q    And it's your view that you're not

15   certain whether that 20 percent translated into

16   20 percent additional profit?

17        A    It's a very expensive building.  As I

18   told you, Reed, if we built a beautiful

19   rectangular building, which is the most

20   efficient building, and did a beautiful curtain

21   wall on the building, just like we have here, I

22   believe the Dezers would have made more money

23   using the name, Trump, calling it Trump Grande,

24   calling it Trump Tower, calling it something,

25   Trump something, I think that they would have
```

1    made more money, because the construction costs

2    would have been less, and they probably would

3    have gotten the same price per square foot.

4         Q    Have you -- you haven't performed any

5    studies on that, I presume?

6              MS. MORTENSEN:  Object to the form.

7              THE WITNESS:  I have a pretty good

8         real estate instinct.

9    BY MR. OSLAN:

10        Q    Right.  Your judgment?

11        A    Yes.

12        Q    Now, in this case, you have, I

13   believe, an indemnity from the developers,

14   correct?

15        A    I think so.

16        Q    And is it fair to say that you made a

17   written demand for indemnification to them?

18        A    I don't know.  Perhaps.  Probably.

19        Q    And I assume that they have been

20   honoring their indemnity to you --

21        A    They are very honorable people.

22        Q    -- and are providing your defense and

23   so forth.

24        And if there's a judgment in the case

25   against you, they will be required to pay it;

# EXHIBIT 4

1                UNITED STATES DISTRICT COURT
2                SOUTHERN DISTRICT OF FLORIDA
3                  No. 04-22780-CIV-SEITZ
4

PAUL ORAVEC,
5
                      Plaintiff,
6      Vs.
7      SUNNY ISLES LUXURY VENTURES,
       L.C., THE SIEGER SUAREZ
8      ARCHITECTURAL PARTNERSHIP INC.,
       DEZER PROPERTIES LLC, DEZER
9      DEVELOPMENT, LLC, MICHAEL DEZER,
       GIL DEZER, THE TRUMP
10     CORPORATION, DONALD J. TRUMP,
       RESIDENCES AT OCEAN GRANDE,
11     INC., and ROYAL DEVELOPMENT
       HOLDINGS, LLC,
12
                      Defendants.
13     _____/
14                      2699 S. Bayshore Drive, PH-1
                        Miami, Florida
15                      May 4th, 2005
16
17           THE VIDEOTAPED DEPOSITION OF
18                    PAUL ORAVEC
19
20                    VOLUME III
21
22     _____
23         Taken on Behalf of the Defendants
24     Pursuant to Notice of Taking Deposition
25            9:21 a.m. - 7:25 p.m.

Page 404

1  of times this idea of a vertically stacked concave
2  convex segments as part of your copyright design,
3  correct?
4      A.  Correct.
5      Q.  Would a building without convex concave
6  vertically stacked sections infringe your
7  copyrights?
8      A.  It would not.
9      Q.  So a building in the shape of a banana
10 would not infringe your copyright.  Is that
11 correct?
12     A.  If it's only in one direction, it would
13 not.
14     Q.  And a building that had a twin towers with
15 a central fountain would not infringe your
16 copyright it if it did not have the vertically
17 stacked concave convex segments, correct?
18     A.  Without the combination of convex concave
19 segments, no.
20     Q.  Okay.  So a banana-shaped building with a
21 central fountain that did not have a concave
22 convex vertically stacked segments would not
23 infringe your copyright, correct?
24     A.  And it wouldn't have other similarities
25 that I mentioned.

Page 405

1      Q.  I understand that, but they would not
2  infringe --
3      A.  They wouldn't.
4      Q.  Okay.  Now, merely having three elevator
5  shafts, a building merely having three elevator
6  shafts would not necessarily infringe your
7  copyright, correct?
8      A.  No.
9      Q.  What about the three elevator shafts in
10 the Trump Palace causes the similarity between
11 your designed elevator shafts and those in the
12 Trump Palace?
13     A.  The shape of the elevator shafts are
14 almost identical to mine.
15     Q.  And they are identical to the shape in the
16 building as shown in the second to last page of
17 the March 2004 copyright registration?
18     A.  Yes.
19     Q.  And would you term -- is it fair to term
20 that shape as an oval shape?
21     A.  It is oval (inaudible) shape with slanted
22 tops.
23         MADAME COURT REPORTER:  Say it again,
24 please.
25         THE WITNESS:  Oval shape with slanted

Page 406

1  tops.
2  BY MR. JACOBS:
3      Q.  Did any of your designs have oval shaped
4  elevator shafts with flat tops?
5      A.  They do.
6      Q.  Does your design as shown in the second to
7  last page of the copyright registration have
8  rooftop pools and gardens?
9      A.  Not in this rendering, but it has in
10 different renderings of the same shape building.
11     Q.  Is it a common feature of residential
12 towers to have rooftop pools and gardens?
13     A.  It's a feature that's used, yes, not in
14 combination with convex concave form.
15     Q.  Is having oval elevator shafts a common
16 feature?
17     A.  It's been done before.
18     Q.  It wasn't -- having oval elevator shafts
19 was not a original idea with you?
20     A.  No, it's not an original idea.  It's only
21 in combination with my building shape.
22     Q.  Again, the vertically stacked concave
23 convex, correct?
24     A.  And combination of elevator shafts is
25 unique to my copyright.

Page 407

1      Q.  Now, in your design as shown in the second
2  to last page of your March 2004 copyright
3  registration the elevator shafts are located one
4  in the center, substantially in the center, and
5  two, the other two are towards each end of the
6  building, correct?
7      A.  Correct.
8      Q.  Is that similar to the way that the Trump
9  Palace has its elevator shafts?
10     A.  Yes, it is.
11     Q.  Do you know why the Trump Palace
12 functionally places the elevator shafts where it
13 does?
14     A.  Same reason as I do, for structural
15 reasons and vertical communication reasons.
16     Q.  For structural reasons and?
17     A.  Vertical communication reasons.
18     Q.  What is vertical communication reasons?
19     A.  It's a transport, staircases and
20 elevators.
21     Q.  And how does placing the elevator shafts
22 where they are both in your design as shown on the
23 second to last page of your March 2004 application
24 and where the Trump Palace puts them help the
25 structure?

43 (Pages 404 to 407)