UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-22780-CIV-SEITZ/MCALILEY

PAUL ORAVEC,

      Plaintiff,

v.

SUNNY ISLES LUXURY VENTURES
L.C., *et al.*,

      Defendants.

_____/



FILED by _____ D.C.

AUG 1 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND IMPOSING COSTS AND FEES

THIS MATTER is before the Court on Plaintiff's Motion for Sanctions [DE-178] against the Developer Defendants[1] pursuant to Fed. R. Civ. P. 37. Plaintiff seeks to preclude Developer Defendants from using certain financial documents at trial, including their General Ledgers, due to Developer Defendants' failure to timely disclose the documents despite two Court orders to do so. In addition, Plaintiff seeks an award of the reasonable attorneys' fees and costs that he spent in enforcing Developer Defendants' compliance with their discovery obligations, and reimbursement for expert fees in creating a report that was rendered largely superfluous by the subsequent untimely production of documents.[2]

_____

[1]      The Developer Defendants include Sunny Isles Luxury Ventures, L.C., Dezer Properties LLC, Dezer Development, LLC, Michael Dezer, Gil Dezer, Residences at Ocean Grande, Inc., Royal Development Holdings, LLC, and Royale Florida Enterprises, Inc. The Developer Defendants are distinguished from the "Architect Defendants," Charles Sieger, Jose Suarez and the Sieger Suarez firm, and the "Trump Defendants," Donald Trump and the Trump Corporation.

[2]      As a threshold matter, the Court declines to preclude use of the disputed documents at trial for two reasons. First, after the date Plaintiff filed this motion, the Court granted Defendants' motion for summary judgment. As such, preclusion would be a hollow victory at this stage. Second, while the disclosures were unjustifiably late, they were still made many months before trial and Plaintiff and his experts have been able to make full use of the documents since their disclosure in January of 2006. As discussed, the greatest prejudice to Plaintiff ultimately has been the unwarranted fees and costs associated with compelling compliance.

This discovery saga began a year and a half ago. Many, if not all, of the financial documents at issue in this dispute have been in existence since the beginning of this litigation, although they may have been updated on a continuing basis because they relate to an ongoing high-rise construction and development project. Plaintiff first requested the documents in January of 2005, as part of his initial request for production. *See* DE-180 (*e.g.*, Ex. A, Resp. to Plf's 1st Req. to Prod., No. 14). When the documents were not forthcoming, Plaintiff twice moved to compel them, resulting in two Court orders to that effect. *See* DE-108 (July, 19, 2006, Order) and DE-142 (December 5, 2006, Order). Despite the clear directive from the Court to produce the documents, Developer Defendants did not.

To frustrate matters further, Developer Defendants' Fed. R. Civ. P. 30(b)(6) witnesses, designated to testify on the topics of project finances and damages, failed to familiarize themselves with the documents in question and also testified that all financial documents had been produced when in fact they had not been. *See* DE-180 (Ex. K, at pp. 36, 49, 67-68; Ex. L, at p. 41). Moreover, throughout the dispute, counsel for Developer Defendants indicated to the Court and the Plaintiff that he believed all of the pertinent documents had been produced and/or would be produced. *See* DE-180 (Ex. I, p.5; Ex. N, p. 7). Despite these assurances, many pertinent documents, including the basic General Ledgers for the project, were never produced to Plaintiff until January 31, 2006, a few days before Developer Defendants' expert used them to support his own expert report. Astonishingly, Developer Defendants' expert also criticized Plaintiff's expert for failing to rely on the undisclosed documents. The upshot of the untimely disclosure was that Plaintiff's counsel spent futile hours in the Rule 30(b)(6) depositions without the financial documents he should have had before going into the depositions, and that Plaintiff's expert had to re-analyze the financial data and submit a new report after receiving the documents he should have had in the first instance. In addition, as mentioned, Plaintiff expended considerable time

and resources in twice moving the Court to compel these documents.

Rule 37 of the Federal Rules of Civil Procedure sets forth a cost shifting scheme for fees and expenses associated with discovery motions. *See* Fed. R. Civ. P. 37(a)(4). For motions to compel, the rule allows the Court to assess reasonable costs and attorneys' fees against the non-prevailing party, unless the party can demonstrate that its conduct was substantially justified or that an award of fees would be unjust. *See* Fed. R. Civ. P. 37(a)(4)(A). In addition, if any party fails to comply with one of the Court's orders, the Court may order that party to pay any reasonable expenses, including attorneys' fees, caused by the party's failure to comply, unless the party can demonstrate that its conduct was substantially justified or that an award of fees would be unjust. Fed. R. Civ. P. 37(b)(2).

Here, Defendants' failure to turn over the financial documents in this case was not justified, let alone substantially justified. Defendants' argue at length in their papers that Plaintiff was not prejudiced by the untimely disclosures. This contention strains credulity, especially when viewed in terms of financial prejudice. As described below, Plaintiff expended hundreds of expert and attorney hours trying to get the documents and struggling to put together their case without them. At the hearing on this motion, and in their subsequently filed response to counsel's declaration in support of Plaintiff's motion, Developer Defendants question the accuracy of the time entries, the number of hours expended and the hourly rates, but never offer any explanation why such basic financial documents, particularly the General Ledges, were never produced in response to the initial production request, after the first or second motions to compel and subsequent Court orders, or upon the further informal requests made by Plaintiff's counsel in December of 2005 and January of 2006.

Defendants' failure in finding the documents or in turning them over was too protracted and generated too many unnecessary fees and expenses for such conduct to go unchecked. Whether the delay resulted from inadvertence, neglect or willfulness, the burden of those fees and costs must in

fairness fall on the party that caused them.  Had Defendants turned over the documents from the beginning, or invested more effort in finding them in the first place, Plaintiff could have avoided most of the costs in issue here.  Under these circumstances the Court finds that Plaintiff is entitled to his attorneys' fees and expenses associated with the two motions to compel and the two Rule 30(b)(6) depositions.  In addition, Plaintiff is entitled to a portion of his expert expenses for what turned out to be wasted time in generating and filing the first expert report.

The Court has carefully reviewed Plaintiff's hours for the first motion to compel and finds that Plaintiff should be entitled to 34 of the roughly 75 hours claimed, since the motion involved other issued besides compelling Defendants to respond to the document requests at issue here.  As for the second motion to compel, the Court finds that 52 hours of time is reasonable, after the Court deletes some of the vague or excessive time entries.  The Court also allows 15 hours for the preparation and taking of the Rule 30(b)(6) depositions of Mr. Silver and Mr. Moss.  Furthermore, the Court finds that 101.5 hours of time is reasonable for the instant motion.  It required extensive briefing and compilation of supporting documents, collection and analysis of fees and costs, and a separate hearing.  Finally, the Court also finds that another 12 hours of attorney time is warranted for counsels' many informal attempts to seek compliance with discovery.  The Court notes that it is not including most of the requested hours for document review as much of that time was likely to have been incurred regardless of the present dispute.  Nor is the Court including various other time entries where it is not clear that counsels' work was associated with the undisclosed financial documents.  As for the applicable hourly rates, the Court has decided in fairness to apply defense counsel's billing rates, which are consistent with local market rates.[3]

---

[3]     As stated at the hearing, those rates vary from $350 to $575 per hour for the senior trial attorneys.  The Court will apply a lesser rate of $225 per hour for the junior attorneys' and $90 per hour for the paralegals involved in the matter. These rates comport with the Court's experience in fee litigation in similar types of matters.

In sum, the applicable hours and rates are as follows:

| Task | Reasonable Hours | Reasonable Rates | Total |
|------|------------------|------------------|-------|
| First Motion to<br><br>Compel | 8 (Meginnes)<br>19 (Nowacki, Oslan)<br>7 (Witmer) | 225<br>550<br>90 | 1,800<br>10,450<br>630 |
| Second Motion to<br>Compel | 30 (Meginnes, Higer)<br>10 (Nowacki, Oslan)<br>12 (Witmer) | 225<br>550<br>90 | 6,750<br>5,500<br>1,080 |
| Informal Hours | 10 (Meginnes, Higer)<br>2 (Oslan) | 225<br>550 | 2,250<br>1,100 |
| Rule 30(b)(6) Dep. | 15 (Oslan) | 550 | 8,250 |
| Motion for Sanctions | 50 (Meginnes, Higer)<br>22.5 (Nowacki, Oslan)<br>26 (Francis)<br>3 (Witmer) | 225<br>550<br>350<br>90 | 11,250<br>12,375<br>9,100<br>270 |
| Total | 214.5 | | 70,805 |

The Court also includes counsels' costs associated with attendance at court proceedings and the two Rule 30(b)(6) depositions, but not those costs involving document production. The costs total $4,183.34,[4] for a total attorneys' fees and costs of $74,988.34.

Finally, Plaintiff requests reimbursement for approximately $125,000 in fees and expenses for the first expert report and deposition of Louis Dudney, CPA. Because Mr. Dudney did not start from scratch on an entirely new second report, but rather used some of the information developed in the first report in creating the second, it is necessary to discount the costs associated with the first report. Upon reviewing the content and conclusions of the two reports, the Court finds that about half of the first report had direct application to the second. However, because Mr. Dudney was required to do additional work to generate the data used in the first report, which he should have had from the General Ledgers,

---

[4]      The Court added to the costs an average airfare of $1000 for Mr. Oslan's attendance at the July 31, 2006, hearing which was not included in the July 27, 2006, Statement of Costs.

it is reasonable to allow Plaintiff to recover three-quarters of his costs for the first report, or $93,750.

Accordingly, upon due consideration of the motion, a thorough review of the Plaintiff's Statement of Fees and Costs and Developer Defendants' response, it is hereby

ORDERED that Plaintiff's Motion for Sanctions [DE-178] is GRANTED, and

IT IS FURTHER ORDERED that Defendants Sunny Isles Luxury Ventures, L.C., Dezer Properties LLC, Dezer Development, LLC, Michael Dezer, Gil Dezer, Residences at Ocean Grande, Inc., Royal Development Holdings, LLC, and Royale Florida Enterprises, Inc. shall pay to Plaintiff **$168,738.34**, totaling $93,750.00 in expert fees and $74,988.34 in attorneys' fees and expenses as set forth in detail above. The Defendants are jointly and severally liable to pay the costs and fees set forth in this Order.

DONE and ORDERED in Miami, Florida, this ⎽⎽1st⎽⎽ day of August, 2006.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
All Counsel of Record