UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-22780-CIV-SEITZ/O'SULLIVAN

PAUL ORAVEC,

      Plaintiff,

v.

SUNNY ISLES LUXURY VENTURES, L.C.,
THE SIEGER SUAREZ ARCHITECTURAL
PARTNERSHIP, INC., CHARLES M. SIEGER,
JOSE J. SUAREZ, DEZER PROPERTIES, LLC,
DEZER DEVELOPMENT, LLC, MICHAEL DEZER,
GIL DEZER, THE TRUMP CORPORATION,
DONALD J. TRUMP, RESIDENCES AT OCEAN
GRANDE, INC., AND ROYAL DEVELOPMENT
HOLDINGS, LLC,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the defendants', The Sieger Suarez

Architectural Partnership, Inc. ("Sieger Suarez"), Charles Sieger, and Jose Suarez

(collectively referred to as the "Sieger Suarez defendants"), Verified Motion for

Attorneys' Fees and Costs (DE# 279, 8/25/08); and the Verified Motion for Attorneys'

Fees and costs and Memorandum of Law in Support Thereof  (DE# 278, 8/24/06) filed

by the defendants, Sunny Isles Luxury Ventures L.C., Dezer Properties, LLC, Dezer

Development, LLC, Michael Dezer, Gil Dezer, The Trump Corporation, Donald J.

Trump, Residences at Ocean Grande, Inc., and Royal Development Holdings, LLC

(collectively referred to as the "Trump and Developer defendants").  This matter was

referred by the Honorable Patricia A. Seitz in accordance with 28 U.S.C. § 636(b) to the

undersigned via the case reassignment of paired magistrate judges pursuant to Administrative Orders 2007-68, 2008-09 (4/9/08).  The motions are fully briefed. (Sieger Suarez defendants' motion:  DE# 279, 284, 286, 287, 288, 293, 294; Trump and Developer defendants' motion: DE# 278, 285, 289, 295, 296)  Having reviewed the applicable filings and law, the undersigned respectfully recommends that the Sieger Suarez defendants' Verified Motion for Attorneys' Fees and Costs (DE# 279, 8/25/08) and the Trump and Developer defendants' Verified Motion for Attorneys' Fees and Costs and Memorandum of Law in Support Thereof  (DE# 278, 8/24/06)  be GRANTED in part as more fully discussed below.

## BACKGROUND[1]

1.    On November 2, 2004, the plaintiff filed a Complaint for Copyright Infringement, Damages and Permanent Injunctive Relief (DE# 1, 11/3/04).  On December 30, 2004, the Sieger Suarez defendants filed a Motion to Dismiss (DE# 23) challenging the two counts asserted against them (i.e. Count I for copyright infringement; and Court IV for professional malpractice).  In his response (DE# 28, 1/20/05), the plaintiff agreed to amend his complaint regarding the copying element of copyright infringement in Count I and by dismissing without prejudice Count IV for professional malpractice.  The District Court granted the plaintiff's Unopposed Motion for Leave to Amend Complaint (DE# 29, 1/20/05) and denied as moot the Sieger

---

[1]The facts in this section are taken from Eleventh Circuit's decision (DE# 319, 6/17/08), which affirmed the District Court's Order granting summary judgment to the defendants in this case (DE# 265, 7/24/06). See, Oravec v. Sunny Isles Luxury Ventures, L.C., et al., 469 F. Supp. 2d 1148, 1152-59 (S.D. Fla. 2006), aff'd, 527 F.3d 1218 (11th Cir. 2008).

Suarez defendants' Motion to Dismiss.  (DE# 31, 1/21/05).  The First Amended

Complaint (DE# 30), which was deemed filed as of January 20, 2005 (DE#31, 1/21/08),

is the operative complaint and contains three counts.  Count I is a claim for direct

infringement asserted against the Sieger Suarez defendants and real estate developers

Sunny Isles Luxury Ventures L.C. ("Sunny Isles") and Dezer Properties LLC ("Dezer

Properties").  Count II is a claim for vicarious copyright infringement against Michael

and Gil Dezer, Dezer Development LLC ("Dezer Development"), Residences at Ocean

Grande Inc. ("Residences"), Royale Florida Enterprises, Inc. ("Royale Florida"), and the

Donald Trump Corporation and Donald J. Trump ("Trump defendants").  Count III is a

claim for contributory copyright infringement against the Trump defendants.  The

plaintiff alleged that the defendants violated the Copyright Act when they designed,

developed and constructed twin high-rise condominiums in Sunny Isles Beach, Florida,

based on his copyrighted architectural designs.  The case involves five separate

copyrighted architectural designs owned by the plaintiff, an architect from

Czechoslovakia.  The copyrights are dated 1996, 1997, 2002, March 2004, and April

2004.

2.     In 1995 and 1996, the plaintiff developed a design for a high-rise building

that featured the use of alternating concave and convex segments and elevator cores

protruding through the building's roofline.  The plaintiff applied to register the design

with the U.S. Copyright Office and was issued a certificate of registration on July 1,

1996 ("1996 Copyright").  After making certain refinements, the plaintiff obtained an

additional copyright registration on May 2, 1997 ("1997 Copyright").  Oravec v. Sunny

Isles Luxury Ventures, L,C., Sieger Suarez Architectural Partnership, Inc., Dezer
Properties LLC, et al., 527 F.3d 1218, 1220 (11th Cir. 2008) (appellate decision)
(footnote omitted).  Although the plaintiff had obtained an additional copyright
registration for another version of his design in 2002, the plaintiff admitted that the
defendants could not have infringed the 2002 Copyright because their buildings were
completed by then.  Id. at 1221 n.1.

       3.     The plaintiff made efforts to market his copyrighted designs to developers
in South Florida and elsewhere.  "Between 1996 and 1999, [the plaintiff] mailed
versions of his design to as many as 120 individuals and companies and made several
in-person presentations to developers."  Id. at 1221.

       4.     "During the same time period, the defendants Michael and Gil Dezer
initiated the process of developing the beachfront resort that would be the sight of the
Trump Buildings.  Michael Dezer purchased a parcel of land in Sunny Isles Beach and
collaborated on its development with a company named Colonial Ridge Development,
LLC ("Colonial Ridge").  In the late 1990s, Colonial Ridge hired [the Sieger Suarez
defendants] to design two buildings for the property.  The original Sieger Suarez
designs consisted of a condominium hotel and a Y-shaped residential condominium.
Subsequently, the Dezers acquired additional land and decided that a larger residential
condominium should be constructed.  [The] Sieger Suarez [defendants] modified [their]
design, and the result was the design for the current Trump Palace.  The district court
found that this design was substantially complete in March of 2000.  Later, after the
purchase of additional property, the project was expanded to include a second

residential condominium. [The] Sieger Suarez [defendants] designed this second

building, which would become the Trump Royale, as essentially a mirror image of the

Trump Palace." Id. (footnote omitted).

5.      On February 15, 2003, the plaintiff saw a photograph of a model of Trump

Palace in a newspaper advertisement.  The next day, the plaintiff viewed models and

brochures of the Trump buildings at the resort's sales office.  Neither building had been

constructed at the time; only the foundation of the Trump Palace had been laid.  Id. at

1222.

6.      The plaintiff consulted with attorneys who advised him to secure copyright

registrations for all of his unregistered designs in order to meet the jurisdictional

requirements for an infringement action.  The plaintiff obtained two additional copyright

registrations, only one of which was relevant to his appeal, that is the March 2004

Copyright.  Id.  The March 2004 Copyright sought protection for pictorial, graphical, or

sculptural work ("PGS copyright") rather than architectural work.

7.      In November 2004, the plaintiff filed this action.

8.      In April 2006, the parties filed cross-motions for summary judgment on the

validity of the plaintiff's copyrights and the defendants' affirmative defenses.  The

defendants also moved for summary judgment on the issues of direct infringement and

the causal connection between the alleged infringement and the damages claimed.  On

July 24, 2006, the district court entered an order granting summary judgment in favor of

all of the defendants on the plaintiff's claims of infringement.  The district court found

that the plaintiff could not establish infringement of his 1996 and 1997 Copyrights

because no reasonable jury could find that the Trump Buildings are substantially similar to the plaintiff's 1996 and 1997 designs.  Additionally, the District Court found that the plaintiff could not prevail on the basis of his March 2004 Copyright because it protected the designs as PGS work, not as architectural designs.  Finally, the District Court determined that there could be no infringement related to the 2002 and March 2004 Copyrights because the Sieger Suarez defendants substantially completed the designs for the Trump Buildings before those works were created.

9.      The plaintiff filed an appeal in the Eleventh Circuit, but did not challenge the District Court's findings regarding the 2002 and April 2004 Copyrights for architectural designs that were created after the Sieger Suarez defendants substantially completed the designs for the Trump Buildings.  In its May 14, 2008 decision, the Eleventh Circuit affirmed the District Court's grant of summary judgment in favor of the defendants as to Oravec's 1996 and 1997 Copyrights finding the differences between the plaintiff's and the defendants' buildings "preclude a finding of substantial similarity." Id. at 1227.  The Eleventh Circuit also affirmed the District Court's grant of summary judgment in favor of the defendants as to the March 2004 Copyright for PGS works. The Eleventh Circuit held that "[the plaintiff's] March 2004 Copyright does not entitle him to claim architectural work protection for his registered PGS works."  Id. at 1231.

10.     The defendants prevailed at the trial level and on appeal.

11.     The prior magistrate judge stayed the defendants' motion for attorneys' fees and costs while the appeal was pending.  After the Eleventh Circuit issued its decision in May 2008, the defendants moved to reinstate or restore their respective

6

motions for attorneys' fees and costs, which the undersigned granted.  (DE# 316,

5/28/08)  The defendants' motions for attorneys' fees and costs are ripe.  To avoid

duplication of argument in their Verified Motion for Attorneys' Fees and Costs (DE#

278; 8/24/06), the Trump and Developer defendants incorporated by reference the

Sieger Suarez' memorandum in support for attorneys' fees and costs.   The

undersigned will address the defendants' entitlement to attorneys' fees and costs under

the Copyright Act collectively.   The reasonable amount of attorneys' fees for each

group of defendants will be determined separately (i.e. the Sieger Suarez defendants

and the Trump and Developer defendants).

### ANALYSIS

**I.      Defendants Should Be Awarded Fees under the Copyright Act**

            **A.      Standard to Award Fees under the Copyright Act**

            The Sieger Suarez defendants seek to recover their reasonable attorneys' fees

and costs as the prevailing parties under the Copyright Act.  17 U.S.C. § 505.  Section

505 of the Copyright Act authorizes an award of fees in the discretion of the court and

provides:

> In any civil action under this title, the court in its discretion may allow the
> recovery of full costs by or against any party other than the United States
> or an officer thereof.  Except as otherwise provided by this title, the court
> may also award a reasonable attorney's fee to the prevailing party as part
> of the costs.

17 U.S.C. § 505.   The Copyright Act gives the court broad discretion to determine

whether a party is the prevailing party and whether the amount of the fees are

reasonable.  See, Lieb v. Topstone Indus., Inc., 788 F.2d 151, 155-56 (3d Cir. 1986)

7

(remanding a denial of an award of fees to the defendant as a prevailing party because the appellate court could not discern what factors the district court weighed in its denial).   In Fogerty v. Fantasy, Inc., 510 U.S. 517, 526 (1986), the Supreme Court approved the boundaries of the court's discretion established by the Third Circuit in Lieb. "The legislative history of § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." Id. at 523.

In Fogerty, the Supreme Court approved the following boundaries for the exercise of discretion in awarding fees under the Copyright Act set by the Third Circuit in Lieb: 1) a finding of bad faith is not required for an award; 2) an award is not mandated in every case; and 3) the exercise of discretion should be applied even-handedly.  Fogerty, 510 U.S. at 526 (citing with approval Lieb, 788 F.2d at 155).  The Third Circuit also determined that certain factors should be considered in the decision to award attorneys' fees, including, but not limited to: "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Lieb, 788 F.2d at 156; see Fogerty, 510 U.S. at 535 n.9 (adopting Lieb factors).  "'There is no precise rule or formula for making these determinations,'" but instead equitable discretion should be exercised "'in light of the considerations we have identified.'" Id. at 534 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983)).  The Supreme Court cautioned that these factors should guide a court's discretion "as long as such factors are faithful to the purposes of the Copyright Act."

8

Fogerty, 510 U.S. at 535 n.19.

The Eleventh Circuit emphasized that the "'only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.'" Mitek Holdings, Inc. v. Arce Engineering Co., 198 F. 3d 840, 842 (11th Cir. 1999) (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982) (affirming award of attorneys' fees to prevailing plaintiff on copyright and trade dress infringement claims). In Mitek Holdings, the Eleventh Circuit found that the copyright holder's "good faith in bringing its suit was not determinative of the issue of attorney's fees." Id. (citing Sherry Mfg. Co. v. Towel King of Florida, Inc., 822 F. 1031, 1034 (11th Cir. 1987) and Original Appalachian Artworks, 684 F.2d at 832). "In copyright cases, 'although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.'" Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) (quoting Jobete Music Co. v. Hampton, 864 F. Supp. 7, 10 (S.D. Miss. 1994)(other citations omitted)).

The Sieger Suarez defendants prevailed on all of the issues raised at the trial and appellate levels. The undersigned finds that the Sieger Suarez defendants are the prevailing parties.

**B.    The Defendants Are Entitled to Attorneys' Fees under the Copyright Act.**

The defendants rely on Section 505 of the Copyright Act that expressly authorizes the Court to justify an award of full costs, including attorney's fees, to them as the prevailing party. Sieger Suarez Motion p. 2 (citing 17 U.S.C. § 505; Fogerty v.

Fantasy, Inc., 510 U.S. 517, 524 (1994)).  Additionally, the defendants argue that an award of fees is the rule rather than the exception.  Id. (citing Arista Records, Inc., 298 F. Supp. 2d at 1316).   Finally, the defendants emphasize that the Supreme Court has held that prevailing plaintiffs and prevailing defendants are to be treated alike when the Court exercises its discretion to determine whether to award fees under the Copyright Act. Id. (citing  Fogerty, 510 U.S. at 534).

The plaintiff contends that his infringement claims were not frivolous because "architectural works have only recently been afforded copyright protection, and the boundaries of the protection are not yet well defined." Opposition to Sieger Suarez Defendants' Verified Motion for Fees and Costs p. 4 (DE# 284, 9/12/06).  The plaintiff also maintains that the legal arguments included novel issues regarding effective registration.  Id.  The plaintiff relies on Donald Frederick Evans and Associates, Inc. V. Continental Homes, Inc., 785 F.2d 897, 916 (11th Cir. 1986).

In Continental Homes, the Eleventh Circuit affirmed the district court's denial of an award of attorney's fees to the defendant without any express discussion of the Lieb factors.  Instead, the Eleventh Circuit found no abuse of discretion in the denial of fees because "the plaintiff asserted colorable copyright claims of the type which 'section 505 is intended in part to encourage.'" Id. at 916-17 (quoting Diamond v. Am-Law Publishing Corp., 745 F.2d 142, 148 (2d Cir. 1984)).  In Continental Homes, the Eleventh Circuit acknowledged that it does not require prevailing defendants who seek attorneys' fees to show that the plaintiff pursued the case in bad faith or that the claims were frivolous.  Id. at 916 (citing Original Appalachian Artworks, 684 F. 2d at 832 (other citations omitted)).

10

The Eleventh Circuit also acknowledged that "a losing party's good faith and the complexity of the legal issues 'likely would justify a *denial* of fees' to a prevailing party." Id.

The Continental Homes decision is factually and legally distinguishable.  In that case, the district court found direct evidence of copying by the defendant builder and that the competing designs were substantially similar.  The defendant prevailed, however, because the district court found that the plaintiff abandoned his copyright by publishing his designs without the copyright notice affixed.  In the present case, no direct evidence of copying existed in the record and the District Court found that a genuine issue of material fact existed as to whether the defendants had access to the copyrighted materials.

Unlike Continental Homes, the District Court in this action found as a matter of law that no properly instructed jury could find the competing designs substantially similar.  In the present case, the Eleventh Circuit affirmed the District Court's grant of summary judgment in favor of the defendants on all of the plaintiff's claims of infringement.

The plaintiff also asserts that the defendants should not be awarded fees for their strategic decision to assert their legal challenges to the March 2004 copyright in a motion for summary judgment rather than a motion to dismiss.  Opposition to Sieger Suarez Defendants' Verified Motion for Fees and Costs p. 2 (DE# 284, 9/12/06) "[I]t was defendants – not Paul Oravec – who waited tactically to take advantage of the passage of time to make their defense.  The real truth is Defendants laid in wait for

11

nearly two years to sandbag Oravec by not raising the issue that one box on the form for his March 2004 registration had not been checked and the other images were not similar.") Id. The plaintiff cannot be heard to complain about the manner in which the defendants chose to defend the action that he instituted and maintained against them. See, Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation, 347 F. Supp. 2d 1310, 1325 (N.D. Ga. 2004) (citing City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986); and Copeland v. Marshall, 641 F. 2d 880 (Cir. D.C. 1980) ("The government's contentious litigation strategy forced the plaintiff to respond in kind.  The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.")).   The standard of review for a motion to dismiss is completely different than the standard of review for a motion for summary judgment.  The defendants were not required to file a motion to dismiss to challenge the insufficiencies of the plaintiff's claims.

The undersigned will consider the factors established by the Third Circuit in Lieb, which were approved by the Supreme Court in Fogerty.

> 1.   Frivolousness

To establish a valid copyright infringement claim, the plaintiff must establish the following two elements: "1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Amadasun v. Dreamworks, LLC, 359 F. Supp. 2d 1367, 1373 (N.D. Ga. 2005) (quoting Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999) (citing Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991)).  "If the plaintiff does not have direct proof of

copying, the plaintiff may show copying [by] establishing that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" Id. (quoting Benson v. Coca-Cola Co., 795 F.2d 973, 974 (11th Cir. 1986), reh'g denied, 801 F.2d 404 (11th Cir. 1986) (en banc)).

The undersigned finds that the plaintiff's claims against the Sieger Suarez defendants based on five copyrights were not frivolous at the commencement of the action.   In *dicta*, the Eleventh Circuit explained that "[a] prevailing party is not required, as a precondition to the award of fees, to show that the losing party has acted in bad faith or that the losing party has attempted to maintain a frivolous legal claim."  Sherry Mfg. Co. v. Towel King of Florida, Inc., 822 F.2d 1031, 1034 (11th Cir. 1987).  The Eleventh Circuit reiterated in *dicta* that "a finding that Sherry was in good faith would not mandate a denial of fees to Towel King, since it is not a precondition to an award to show that the losing party acted in bad faith or brought a frivolous claim."  Id. at 1035. The undersigned agrees that the lack of frivolousness does not preclude an award of attorneys' fees in favor of the Sieger Suarez defendants and will consider the other Fogerty factors and whether an award will achieve the goals of the Copyright Act.

### 2.   Motivation

The Sieger Suarez defendants assert that the plaintiff's infringement action was motivated by greed.  In support of their position, the Sieger Suarez defendants rely on the almost two-year delay between the date of discovery of the alleged infringement (February 2003) and the date of commencement of the lawsuit (November 2004).   The Sieger Suarez defendants also rely on the plaintiff's concession that his designs

constituted a small fraction of the design work that the Sieger Suarez defendants were required to perform as the architects of the Trump Buildings.

In his opposition, the plaintiff asserts that he "commenced and prosecuted this copyright case in good faith and because of that, the Court should deny Defendants' request [for fees]." Opposition p. 8. The plaintiff maintains that he sought profits from the Developer Defendants' infringement because the statute afforded him that recovery. Id. (citing 17 U.S.C. § 504(b)). In his opposition, the plaintiff does not provide any explanation for the almost two-year delay between the date of his discovery of the alleged infringement by the defendants and the date of commencement of his lawsuit.[2]

In his complaint, the plaintiff alleges that the copying occurred between 1996 and 1999. The design for the Trump Buildings was substantially complete in March of 2000. In February 2003, the plaintiff discovered the alleged infringement by viewing an article in the newspaper featuring a photograph of a model of the Trump Palace. At that time, only the foundation of the first building was laid. The plaintiff consulted with and retained counsel by May of 2003. The plaintiff and his counsel waited almost two years after he learned of the alleged infringement and while the construction of the Trump Buildings commenced and progressed before he filed his suit in November 2004. In addition to compensation, the complaint also sought injunctive relief. The delay seems strategic and creates doubt as to the plaintiff's motivation.

---

[2]The plaintiff discovered the alleged infringement in February 2003; engaged legal counsel in May 2003; applied for the March 2004 and April 2004 Copyrights in those respective months; and filed suit in November 2004. His initial complaint sought injunctive relief almost two years after he discovered the alleged infringement. None of the delays regarding these events are explained in the plaintiff's opposition.

The plaintiff did not file suit immediately upon learning of the alleged infringement when the construction of the buildings had just begun and the claimed damages would have been substantially less.  Instead, the plaintiff waited to file suit until such time as the potential damages increased due to the construction of the buildings and increased his chances of recovering substantial profits from the developers.   The plaintiff's admissions on the scope of his design in the overall design of the buildings as well as the unexplained delay in filing suit support  the Sieger Suarez defendants' position that the plaintiff was motivated by commercial gain.  See Sherry Mfg. Co. v. Towel King of Florida, Inc., 822 F.2d 1031, 1035 (11th Cir. 1987) (The magistrate judge found that the plaintiff had "initiated a predatory lawsuit for commercial gain.").  Based on these facts, the undersigned finds that the plaintiff was motivated, in part, by commercial gain.  This factor weighs in favor of an award of fees to the Sieger Suarez defendants.

### 3.   Objective Unreasonableness

The Sieger Suarez defendants rely heavily on the District Court's grant of summary judgment, which was affirmed on appeal by the Eleventh Circuit, to support their position that the plaintiff's infringement claims were frivolous -- or at least objectively unreasonable.  Defs.' Verified Mot. p. 4.  The Sieger Suarez defendants argue that the District Court found that the plaintiff's five copyright registrations each lacked either an objective factual basis or an objective legal basis.  Despite knowing the facts on which the District Court relied and being charged with knowing the law through both law firms that represented him, the Sieger Suarez defendants complain that the

15

plaintiff filed and maintained this action for nearly two years.  Additionally, the plaintiff

"refus[ed] to either dismiss [ ] or narrow the issues involved and instead adapting his

claims and versions on the fly in an effort to keep his meritless claims alive."  Id.

The Sieger Suarez defendants highlight the unreasonableness of each copyright

registration.

The plaintiff asserts that "[t]he judicial background here, comprised of the

competing motions for summary judgment, limitations on evidence, exclusion of

experts, and sanctions for discovery abuses, reveals a hard fought case in which Paul

Oravec's claims were shown to be a good faith assertion of his right to protect the

copyrighted images he created."  Pl.'s Oppos. p. 1.  The plaintiff contends that "[t]he

Court's decision against Oravec came down to just two elements – the failure to

convince the Court that to check one box instead of another on a form submitted for the

March 2004 copyright registration should not bar those claims, and the failure to

convince the Court of the sufficient similarity of Oravec's unique convex/concave design

in his 1996 and 1997 registrations to the Trump ... [Buildings] ...."  Id.  The plaintiff

argues that its case had many strengths and that the experts found that the case

presented complex and novel legal issues.  Id.[3]  Additionally, the plaintiff argues that he

should not be required to pay for two years of litigation because it was the defendants

who strategically delayed filing their motions for summary judgment.  Finally, the plaintiff

asserts that he is a man of modest means who "should not be shackled with the burden

---

[3]The plaintiff's opposition was filed before the Eleventh Circuit affirmed the
District Court's grant of summary judgment in favor of the defendants.

of over a million dollars in fee claims because of the Defendants' tactical maneuvering." Id. p. 2.

The plaintiff based his copyright infringement action on five copyrights dated: 1996, 1997, 2002, March 2004, and April 2004.  The defendants were completely successful on all of the plaintiff's infringement claims.  The undersigned will consider the objective unreasonableness of each of the five copyright registrations.

<div align="center">a.   <u>1996 and 1997 Copyrights</u></div>

During the hearing on the cross-motions for summary judgment, the plaintiff's counsel admitted that the Sieger Suarez defendants "changed" the plaintiff's designs "in a whole lot of respects" and "in a fairly dramatic way." (DE# , 7/24/06) (citing July 19, 2006 Hrg. Tr. at 42, 44).  The infringement claims based on the 1996 and 1997 copyrights were objectively unreasonable because an objective factual basis for a finding of infringement did not exist and the plaintiff's counsel conceded that the plaintiff and his attorney knew this.  The District Court determined that a genuine issue of material fact existed as to whether the defendants had access to the 1996 and 1997 copyrighted materials, which is an element of a claim of infringement when direct evidence of copying is lacking.  The District Court ruled as a matter of law that a jury properly instructed could not find substantially similarity between the plaintiff's designs and the Trump Buildings.  Even if the plaintiff could show that the Sieger Suarez defendants had access to his designs, he could not establish infringement because the competing designs were not substantially similar.

Because there could be no direct infringement by the architects based on the

plaintiff's copyrights, the District Court likewise found that there could be no derivative liability for infringement by the Trump and Developer defendants and granted summary judgment in favor of all of the defendants. The Eleventh Circuit affirmed the District Court's ruling. The undersigned finds that the alleged infringement of the 1996 and 1997 copyrights was not objectively unreasonable.

b.  Oravec's 2002 and April 2004 Copyrights

The District Court found that none of the defendants could have copied the 2002 and April 2004 designs because the only alleged copying occurred between 1996 and 1998, and in no event could the copying have taken place after the buildings' designs were substantially completed in 2000. Additionally, the plaintiff admitted that the 2002 and April 2004 materials were created after the designs for the Trump Buildings were completed. In his deposition, the plaintiff conceded that the defendants could not have copied either of these two sets of designs. (DE# , 7/24/06) Finally, the District Court found that the plaintiff abandoned any copyright protection in the 2002 design when he submitted it to the World Trade Center competition. On appeal, the plaintiff did not challenge the District Court's findings regarding the 2002 and April 2004 copyrights. These facts support a finding that the infringement claims based on the 2002 and April 2004 copyrights became objectively unreasonable to maintain when discovery revealed that the works they protected were created after the designs for the Trump Buildings were substantially completed. See Bridgeport Music, Inc. v. WB Music Corp., __ F.3d __ , 2008 WL 762451 * 4 (6th Cir. 2008) (finding that "pressing a futile claim" justified an award of fees to the prevailing defendant despite the objective reasonableness of the

plaintiff's royalty-receipt theory).  The plaintiff maintained both a factually and legally unreasonable claim when discovery revealed that the defendants' architectural designs were substantially completed <u>before</u> the plaintiff created the materials that were copyrighted in 2002 and April 2004.  <u>See</u> <u>Bridgeport Music, Inc. v. WB Music Corp.</u>, __ F.3d __, 2008 WL 762451 * 4 (6th Cir. 2008).

In <u>Bridgeport</u>, the Sixth Circuit explained that "[t]he district court's interest in motivating Bridgeport to sort through its claims applies with equal force to claims that become futile during the course of litigation as it does to claims that are objectively unreasonable at the outset."  <u>Id</u>. (citation omitted); <u>see</u> <u>Bridgeport Music, Inc. v. Diamond Time, Ltd.</u>, 371 F.3d 883 (6th Cir. 2004).  In <u>Bridgeport Music, Inc. v. Dimension Films</u>, 410 F.3d 792, 809 (6th Cir. 2005), which was a companion case, the court found that "Bridgeport failed to weed out those claims and theories for which it 'had little hope of recovering' from the claims and theories that arguably have merit."

As in the various <u>Bridgeport</u> cases, the facts support a finding that it was legally and factually objectively unreasonable for the plaintiff to maintain claims of infringement based on the 2002 and April 2004 copyrights after it became clear through discovery that no copying could have occurred.

<div align="center">c.   <u>March 2004 Copyright</u></div>

The District Court held that the claim based on the March 2004 Copyright failed as a matter of law because the copyright protections did not apply to the construction of the Trump Buildings.  The District Court found that the March 2004 Copyright failed as a matter of law because it did not protect the plaintiff's materials as architectural works,

<div align="center">19</div>

but only as pictorial, graphic, or sculptural work ("PGS work").  The plaintiff argues that he had a reasonably arguable legal basis to assert that his PGS registration effectively registered his architectural works.  Pl.'s Oppos. p. 7.The District Court ruled as a matter of law that the March 2004 Copyright did not protect against the construction of the Trump Buildings, even if they were copied from the plaintiff's designs.  The PGS copyright only protects the plaintiff's materials as graphic designs and prevents others from copying his work to create similar pictures or models without his consent.  There was nothing in the record to show that the defendants' models or photographs in their advertisements were based on the plaintiff's March 2004 copyrighted designs.

The plaintiff maintains that novel issues of effective registration justify a denial of an award of fees.  The plaintiff also relies on the District Court's oral pronouncements of its preliminary inclinations during the course of the three-day hearing on the motions for summary judgment.  Plaintiff's Opposition pp. 4-6.  The District Court, however, rejected the effective registration doctrine and found as a matter of law that there could be no infringement for architectural work based on the March 2004 copyright that applied only to GPS works.  No prior case law existed on this issue. The undersigned finds that the infringement claim based on the March 2004 copyright was not objectively unreasonable.

> 4.   An Award of Fees Will Advance
>       Considerations of Compensation and Deterrence
>       <u>to Further the Purpose of the Copyright Act</u>.

_____The Supreme Court explained the purpose of the Copyright Act as follows:

> "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end,

> copyright assures authors the right to their original expression, but
> encourages others to build freely upon the ideas and information
> conveyed by a work."

Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1986)(quoting Feist Publications, Inc.

v. Rural Telephone Serv. Co., 499 U.S. 340, 349-50 (1991)(Citations omitted)).  In

Fogerty, the Supreme Court further explained that

> [b]ecause copyright law ultimately serves the purpose of enriching the
> public through access to creative works, it is peculiarly important that the
> boundaries of copyright law be demarcated as clearly as possible.  To that
> end, defendants who seek to advance a variety of meritorious defenses
> should be encouraged to litigate them to the same extent that plaintiffs are
> encouraged to litigate meritorious claims of infringement... Thus a
> successful defense of a copyright infringement action may further the
> policies of the Copyright Act every bit as much as a successful
> prosecution of an infringement claim by the holder of a copyright.

Fogerty, 510 U.S. at 527.

The defendants contend that the plaintiff's injection of his financial limitations as

"a man of very modest means" to justify a denial of an award of fees is improper.

Opposition to Sieger Suarez Defendants' Verified Motion for Fees and Costs p. 2 (DE#

284, 9/12/06).   "[C]onsideration of whether a plaintiff can afford to pay the fees is

improper, the more proper consideration is whether imposing the fees will further the

goals of the Copyright Act."  Amadasun v. Dreamworks, LLC, 359 F. Supp. 2d 1367,

1376 (N.D. Ga. 2005 (citing Mitek Holdings, Inc., 198 F.3d at 842-43)). In Mitek

Holdings, Inc., the Eleventh Circuit emphasized:

> It is unsurprising that no case law supports the proposition that a
> difference in financial wealth, in and of itself, is sufficient to justify
> imposition of attorney's fees under § 505.  The touchstone of attorney's
> fees under § 505 is whether imposition of attorney's fees will further the
> interests of the Copyright Act, i.e., by encouraging the raising of
> objectively reasonable claims and defenses, which may serve not only to

21

deter infringement but also to ensure that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works.  Thus, in determining whether to award attorney's fees under § 505, the district court should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act.

Id.

The plaintiff contends that "imposition of fees on Oravec will not further, and in fact, may undermine the policies underlying the Copyright Act."  Opposition, p.3.  The plaintiff asserts that the case presented novel and complex issues addressing the boundaries of protection for architectural works.  Id. at 4.  The plaintiff also emphasizes that reasonableness is determined at the time the action commenced.  Id. (citing Brewer-Giorgio v. Bergman, 985 F. Supp 1478 (N.D. Ga. 1997)).  Cf. Bridgeport Music, Inc. v. WB Music Corp., __ F.3d __, 2008 WL 762451 * 4 (6th Cir. 2008)(finding that a party has the same responsibility to narrow claims that become futile during the course of litigation as it does to exclude claims that are objectively unreasonable at the outset);  Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004); and Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792, 809 (6th Cir. 2005).

Bergman is factually distinguishable.  Unlike the present action, in Bergman, the alleged infringers had a contractual arrangement with the plaintiff.  After the parties had a dispute, the alleged infringers continued the work and broadcast the television show without the plaintiff's consent.  Id. at 1483.  Unlike here, the Bergman court found that the defendant had access to the plaintiff's copyrighted works in developing the show.  Unlike Bergman, access was a genuine issue of material fact in this action.  The Bergman court ultimately determined that the facts revealed that the shows were not

22

"substantially similar" and entered summary judgment.  The <u>Bergman</u> court found that

the plaintiff's claim was not objectively unreasonable at the time it was filed.  The

<u>Bergman</u> court also found that the circumstances balanced the need for deterrence with

the need for compensation.  In its final balancing, the <u>Bergman</u> court was influenced by

facts that strongly suggested that the defendants did not have entirely clean hands in

preparing and broadcasting the subject television show.  The <u>Bergman</u> court revealed

its rationale in denying an award of fees to the prevailing defendant:

> Where a party clearly profits from an artist's ideas in a manner suggesting
> bad faith, the court believes that the artist should not be deterred from
> pursuing good faith, reasonable, non-frivolous claims to protect their
> ownership interest in an original work.

<u>Id</u>. at 1484.  Unlike <u>Bergman</u>, there is no evidence of any bad faith on the part of the

defendants.  The <u>Bergman</u> decision is factually distinguishable and does not support a

denial of an award of fees to the defendants in the present case.

      The Sieger Suarez defendants argue that "[e]ven Plaintiff acknowledges that

Defendants' successful defense of Oravec's claim furthered the understanding of the

boundaries of the Copyright Act and maximizes the public exposure to valuable works.

This is the primary goal of the Copyright Act and one that the award of attorneys' fees is

designed to promote."  Sieger Suarez Motion, p. 2 (citing <u>Mitek Holdings, Inc.</u>, 198 F.3d

at 842-43).  The defendants maintain that an award of fees in this action will encourage

plaintiffs to raise and resolve any legitimate dispute before engaging in litigation and to

alert the supposed infringers in a timely fashion.  <u>Id</u>. p. 4.  The defendants contend that

such an award will encourage defendants to pursue defenses that help define the

boundaries of the Copyright Act and further the public's exposure to their architectural

or other works and will compensate the defendants for at least some of their losses.  Id.

In a recent decision, the Seventh Circuit reversed the denial of an award of fees to the prevailing defendants on a motion for judgment as a matter of law.  Eagle Services Corp. v. H2O Industrial Services, Inc., 532 F.3d 620 (7th Cir. 2008).   "The district court refused to award attorney's fees, on the ground that the suit was not frivolous and had not been filed in bad faith and that the standards for what the parties call an 'indirect profits' suit are vague."  Id. at 623.  In Eagle Services, the Seventh Circuit found that the district court "was wrong on all three counts, but even if it were right it would not have been justified in refusing to award fees."  Id.  The Seventh Circuit explained that "[u]nder the standard for such shifting [of attorney's fees] in a copyright case, the defendants' entitlement is even stronger."  Id. at 624.

Relying upon Fogerty, the Seventh Circuit explained that "unlike the rule in an employment discrimination case, where the plaintiff is presumptively entitled to his attorney's fees if he wins but the defendant only if the suit was frivolous, in copyright suits 'prevailing plaintiffs and prevailing defendants are to be treated alike.'"  Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  The Seventh Circuit further explained its position that "'when the prevailing party is the defendant, who by definition receives not a small award, but no award, the presumption in favor of awarding fees is very strong.'"  Id. (quoting Assessment Technologies of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 437 (7rh Cir. 2004)).

In Eagle Services, the Seventh Circuit discussed the symmetry of interests in copyright cases as follows:

In a typical copyright case a victory for the defendant enlarges the public domain by denying the plaintiff's right to prevent the defendant – or anyone else – from using the intellectual property alleged to infringe the plaintiff's copyright.  The public domain is "an important resource for creators of expressive works and therefore there should be no thumb on the scales" in deciding whether to award attorneys' fees.  Gonzales v. Transfer Technologies, Inc., 301 F.3d 608, 609 (7th Cir. 2002) (other citations omitted).  If there is an asymmetry in copyright, it is one that actually favors defendants.  The successful assertion of a copyright confirms the plaintiff's possession of an exclusive, and sometimes very valuable, right, and thus gives it an incentive to spend heavily on litigation.  In contrast, a successful defense *against* a copyright claim, when it throws copyrighted work into the public domain, benefits all users of the public domain, not just the defendant; he obtains no exclusive right and so his incentive to spend on defense is reduced and he may be forced into an unfavorable settlement.

Id. at 625 (emphasis in original).

The undersigned finds that an award of fees to the defendants serves the Copyright Act's goals of compensation and deterrence.  The defendants should be compensated for their defense.  Their defense furthered the Copyright Act by further defining the scope of protection afforded architectural works.  An award will also deter plaintiffs from delaying actions that seek to protect copyrighted works and from failing to narrow their claims when discovery reveals that they are no longer viable.  The undersigned finds that the goals of the Copyright Act are furthered by an award of attorneys' fees in favor of the defendants.  See Fogerty, 510 U.S. at 534 ("Prevailing plaintiffs and prevailing defendants are to be treated alike.").

## II.   An Award of Attorney's Fees Must Be Reasonable

Having determined that the defendants are the prevailing parties;  that the plaintiff's motivation is a factor that weighs in favor of an award under 15 U.S.C. § 505; and that the Copyright Act goals of compensation and deterrence are furthered by an

award of fees, the Court must next determine an amount of fees and costs that is reasonable.

In calculating a reasonable attorneys' fee award, the Court must consider the number of hours reasonably expended on this litigation, together with the customary fee charged in this community for similar legal services.  See Hensley v. Eckerhart, 461 U.S. 424 (1983); Loranger v. Stierheim, 10 F.3d 776 (11th Cir. 1994).  These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar." Under certain circumstances, the lodestar may be adjusted in order to reach a more appropriate attorneys' fee.  See Blum v. Stenson, 465 U.S. 886, 888 (1984).

A.    Reasonable Hourly Rate

The Court must first evaluate the defendants' requested fees in terms of the appropriate hourly rate.  In order to determine a reasonable and proper fee award, the Court must consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services.  See Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886 (1984).  In determining the prevailing market rates the Court should consider several factors including "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorneys' relationship to the client, and awards in similar cases."  Mallory v. Harkness,

26

923 F. Supp. 1546, 1555 (S.D. Fla. 1996)(citing, <u>Dillard v. City of Elba</u>, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993)).

      1.    <u>The Hourly Rates of Counsel for the Sieger Suarez Defendants</u>

The Sieger Suarez defendants request an award of $597,351.30 for attorneys' fees for 1,917.4 hours incurred by counsel for the Sieger Suarez defendants, through July 18, 2006.

The following is a chart of the various attorneys at Burlington, Schwiep, Kaplan & Blonsky, P.A. (hereinafter referred to as "Burlington Schwiep"), who incurred fees on behalf of the Sieger Suarez defendants:

| Attorney | Timekeeper No. | Hourly rate | Hours worked |
|---|---|---|---|
| Robert K. Burlington | 4A | $325 - $450 | 387.2 |
| Susan E. Mortensen | 22A | $300 - $350 | 1201.5 |
| Keith Alexander | 35A | $250 | 15 |
| Elizabeth Beck | 8A | $200 - $250 | 95 |
| Carlos Migoya | 29A | $200 - $225 | 135.6 |
| Gabriel Grolsman lawclerk | 28A | $200 | 13.4 |
| Susan Franks paralegal | 20A | $90 | 56.6 |
| LindaRoberman paralegal | 33A | $80 | 3.8 |

The Sieger Suarez defendant's expert, Marcos Daniel Jimenez, Esq., opines that

the hourly rates charged for Robert Burlington and Susan Mortensen, lead counsel for the Sieger Suarez Defendants, are actually lower than the customary hourly rates typically charged in this legal community and particularly by national firms for time of comparable lawyers for similar services.  Indeed, they are much lower than the rates charged by the lawyers of Kirkland and Ellis, counsel for Plaintiff, as demonstrated in the Declaration of Reed S. Orlan in Support of Plaintiff's Statement of Attorneys' Fees and Costs Related to Developer Defendants' Discovery

27

>Violations filed on July 27, 2006.  The hourly rate charged by the other
>lawyers and paralegal of Burlington Schwiep in this matter are likewise
>exceptionally reasonable.

Jimenez Declaration (DE# 279, 8/25/06).  A review of the Orlan Declaration submitted

in support of the plaintiff's motion for sanctions against the Developer defendants

reveals that the Kirkland and Ellis firm charged hourly rates between $160 and $645 for

attorneys and paralegals.[4]  (DE# 270, 8/1/06)

The Sieger Suarez defendants request hourly rates of $300 to $450 for senior

attorneys and between $200 and $250 for junior attorneys.  The hourly rates sought for

paralegals are between $80 and $90.  Generally, acceptable proof of the market rate

may be comprised of testimony and direct evidence from other legal practitioners in the

relevant legal community who are familiar with the type of legal service provided and

the prevailing market rate for such work.  Norman, 836 F.2d at 1299. Furthermore, the

Court may make a fee award based on its own experience where documentation and

testimony is inadequate or the fees claimed seem expanded.  Norman, 836 F.2d at

1303 (citing Davis v. Board of School Commissioners of Mobile County, 526 F.2d 865,

868 (5th Cir. 1976)).  Having considered and weighed the evidence, counsels'

reputation and experience in the areas of the applicable law and the Court's familiarity

---

[4]In ruling in favor of the plaintiff on a motion for sanctions based on discovery
violations against the Developer defendants, this Court previously "decided in fairness
to apply [the Developer Defendants'] defense counsel's billing rates, which are
consistent with local market rates."  (DE# 274, 8/2/08) "[Those rates vary from $350 to
$575 per hour for senior trial attorneys.  The Court ... applied] a lesser rate of $225 for
the junior attorneys and $90 per hour for the paralegals involved in the matter.  These
rates comport with the Court's experience in fee litigation in similar types of matters."
Id. p. 4.  The Court applied the rate of $550 for senior attorneys.  Id. p. 5.

with attorneys' fees in general, and considering this Court's prior award of attorneys' fees against the Developer Defendants, the undersigned finds that the hourly rates of $350 - $425 for senior attorneys and $225 for junior attorneys at Burlington Schwiep are reasonable and appropriate.   The undersigned finds that $90 is a reasonable rate to apply to time incurred by paralegals.

> 2.   The Hourly Rates of Counsel for the Trump and Developer Defendants

The Trump and Developer defendants contractually agreed to pay the reduced hourly rates of $300 for all attorneys and $100 for paralegals at the Russomanno and Borrello, P.A. firm.  The Trump and Developer Defendants' fee expert, Kenneth R. Hartmann, adjusted the hourly rates to $300 for most attorneys, $200 for one junior attorney, Lora Damiani, and $90 for the law clerk and paralegals.  The Trump and Developer defendants incurred $626,294 for attorneys fees through August 15, 2006. The amount reflects the total amount incurred by Baker & McKenzie, LLP ($212,500) and Russomanno & Borrello, P.A. ($413,794).

The following chart reflects the hourly rates of attorneys and paralegals at Russomano & Borrello, P.A. (hereinafter referred to as "Russomanno & Borrello"):

| Timekeeper | Type | Hourly Rate | Reduced by Trump Expert |
|---|---|---|---|
| Herman J. Russomano | Attorney | $300 | $300 |
| Robert J. Borrello | Attorney | $300 | $300 |
| Lora Damiani | Attorney | $300 | $200 |
| Herman J. Russomano | Law Clerk | $100 | $90 |
| Gema Palazzotto | Paralegal | $100 | $90 |
| Mark T. Marshall | Paralegal | $100 | $90 |

Mr. Hartmann opined that the discounted hourly rates of $300 for Messrs. Russomano and Borrello "are far below the hourly rates typically charged by comparable lawyers for similar services" ... and "are lower than what these lawyers typically charge."  Hartmann Decl. p.4 (DE# 278, 8/24/06).  Mr. Hartmann found that the $300 hourly rate "is more than reasonable and in fact results in a discount to the Plaintiff." Id.  Mr. Hartmann applied the rates established by the Court in its order awarding discovery sanctions against the Developer defendants to services incurred by junior attorneys ($200/hour) and paralegals and law clerks ($90/hour).  The undersigned agrees with the rates applied by Mr. Hartmann and will apply those rates for purposes of calculating the amount of reasonable fees.  In Mr. Hartmann's opinion, the base amount for the reasonable amount of fees incurred by Russomano and Borrello is **$413,794.00**.  Id.

Mr. Hartmann also provided his analysis and opinion regarding the fees incurred by Baker & McKenzie, LLP on behalf of the Trump and Developer defendants.  He explained that Baker & McKenzie staffed the matter with at least 23 lawyers and paralegals from its offices in New York and Miami, and expended a total of 1,377.6 hours on this case.  Id.  The firm's hourly rates ranged from $675/hour to $110/hour. Mr. Hartmann excluded any time for lawyers and paralegals who expended less than 15 hours on the case, explaining that "it is difficult to determine what value was added to the case by such a minimal involvement.  This reduced the number of timekeepers by half, and resulted in lawyers with the top 3 hourly rates being excluded."  Id. p. 5.

The primary Baker & McKenzie lawyers for the Trump and Developer defendants

were James D. Jacobs, Mark R. Winston, and Michael Stoker (New York), and Donald J. Hayden (Miami).  Their rates are $550/hour (Mr. Jacobs), $500/hour (Mr. Winston), $460/hour (Mr. Hayden), and $355/hour (Mr. Stoker).  Mr. Hartmann opined that all of these rates are reasonable for this type of case.  Mr. Hartmann buttressed his opinion of reasonableness with the Court's prior determination in its Sanctions Order dated August 1, 2006, that rates up to $575/hour for senior trial attorneys are consistent with local market rates.  Mr. Hartmann applied an additional 10% discount to the primary New York attorneys' time to adjust it and "bring their fees even more in line with our local market...."  Id.  Mr. Hartmann also adjusted the Baker & McKenzie junior associates with hourly rates in excess of $200/hour to $200/hour.  Paralegals were also adjusted to $90/hour.

After making these adjustments, Mr. Hartmann applied an additional 10% reduction to the New York attorneys' time for travel time to Miami, staffing depositions with more than one lawyer, and reviewing and editing briefs by multiple attorneys.  In his opinion, the reasonable fee for fees incurred by Baker & McKenzie should amount to $418,554.  However, Mr. Hartmann took into consideration that at the time of its withdrawal from the case, Baker & McKenzie accepted payment of $212,500 in full satisfaction of fees and possibly some advanced costs.  This sum is the amount actually incurred by the Trump and Developer defendants.  According to Mr. Hartmann, "the amount of $212,500 equates to a blended rate of $150/hour, and is incredibly reasonable for the services provided by the firm in this case, in our market (or any market)."  Id. p. 6.

The following is a chart reflecting the attorneys and paralegals at Baker & McKenzie, LLP applying the rates suggested by Mr. Hartmann and eliminating timekeepers with less than 15 hours:

| Timekeeper | Type | Hourly Rate |
|---|---|---|
| James Jacobs | Attorney | $495 |
| Mark Winston | Attorney | $450 |
| Donald Hayden | Attorney | $460 |
| Michael Stoker | Attorney | $325 |
| Jose M. Ferrer | Attorney | $200 |
| Yafit Tako | Attorney | $200 |
| Neil Reddy | Attorney | $200 |
| Michaela F. Carpio | Paralegal | $90 |
| Alana Goldberg | Paralegal | $90 |
| Mary Ferrari | Paralegal | $90 |
| Miami Paralegals | Paralegal | $90 |

In his opposition, the plaintiff concedes the reasonableness of the adjusted fees proposed by Mr. Hartmann, with the exception of Messrs. Hayden and Stoker. The plaintiff argues that Mr. Hartmann provides no support for their rates. The plaintiff argues that to be consistent with the Court's sanction order at most Mr. Hayden is comparable in experience with Ms. Francis (court-allowed $350/hour) and that Mr. Stoker is comparable in experience with Ms. Meginnis and Mr. Higer (court-allowed $225). (DE# 285, 9/12/06) In their reply, the Trump and Developer defendants explain that Mr. Hayden is an AV Peer Review Rated Attorney and partner, who has practiced

law in the area of complex litigation for more than 26 years.  Mr. Stoker is a six-year associate in Baker & McKenzie's New York Office, who has practiced complex litigation.  The Trump and Developer defendants argue that Mr. Stoker does not fall within the category of a junior associate.  The rates proposed by Mr. Hartmann ($460 for Mr. Hayden and $355 for Mr. Stoker) are consistent with the Court's determination of reasonable rates in its Sanctions Order (DE# 274, 8/2/06).  The undersigned agrees and finds that the hourly rates reflected in the chart above will be applied for purposes of calculating the amount of reasonable fees.

      B.    <u>Hours Reasonably Expended</u>

The Court must next evaluate the defendants' requested fee for reasonableness in terms of the total hours expended by the defendants' respective counsel.  The following chart summarizes the defendants' respective attorneys' fee requests:

| Firm | Hours | Fees |
|------|-------|------|
| Burlington, Schwiep, et al. | 1,917.4 | $597,351.30 |
| Baker & McKenzie | 1,333.3 | $212,500 (50% discount) |
| Russomanno & Borrello | 1,682 | $413,794.00 |

The defendants support their respective fee requests by submitting itemized bills and various declarations.  The plaintiff seeks to substantially reduce the amount of requested attorneys' fees and costs.

Upon independent review of the defendants' billing records submitted to this Court, the undersigned finds that most of the fees incurred by the defendants are reasonable.  Because the time entries include block billing and multiple attorneys, the undersigned finds that some reduction is warranted.    Because the fees requested are

voluminous, this Court is not required to engage in an hour-by-hour analysis.  Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994);  Trujillo v. Banco Central del Ecuador, 229 F. Supp. 1369, 1375 (S.D. Fla. 2002); cf. Norman, 836 F.2d at 1301.  "[I]t is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction."  Loranger, 10 F.3d at 783.  The rule in Loranger differs from the rule articulated in Norman.  Trujillo, 229 F. Supp. at 1375.  "The earlier decision in Norman requires the district court to specifically identify any disallowed, non-compensable hours, and to further explain why the hours are being disallowed."  Id. (citing Norman, 836 F. 2d at 1304).  In Trujillo, the district court explained

> [t]o perform this calculation a judge must necessarily examine and consider each of the attorney's fee entries, each objection to those entries, the responses and replies thereto, and then make a determination regarding the legitimacy of each entry explaining the Court's modification, if any.  However, in a complex, multi-million dollar litigation involving thousands of objections comprising hundreds of pages, undertaking such a task could only be described as a gargantuan waste of judicial resources.

Id.

### 1.   Sieger Suarez Defendants' Fees

The Sieger Suarez defendants request an award of $597,351.30 for attorneys' fees incurred by the Sieger Suarez defendants through July 18, 2006.   The requested amount includes 1,917.4 hours of attorney time.  The Sieger Suarez defendants explain that the plaintiff's primary (and nearly sole) objection regarding the reasonableness of Sieger Suarez defendant's attorneys' time entries is that, in plaintiff's opinion, certain entries are related to "unsuccessful activities."  "Plaintiff does not criticize the amount of time or amount spent on each task.  Instead, he merely asserts that the vast bulk of this

case did not relate to the claim on which the Sieger Suarez defendants prevailed."
(Sieger Suarez Reply p. 6) (DE# 293, 9/22/06).  The undersigned agrees with the
Sieger Suarez defendants that such a conclusion is implausible given that the plaintiff
asserted a single cause of action against the Sieger Suarez defendants.

Although courts routinely exclude time related to unsuccessful and unrelated
causes of action, they do not dissect the prosecution or defense of a single successful
claim into one of issues as the plaintiff suggests.  See, e.g., Hensley, 461 U.S. at 435;
Norman, 836 F.2d at 1302.  In a decision from the Middle District of Florida, the court
explained:

> The defendants have also asserted under this category blanket objections
> to compensation for time spent on unsuccessful motions, including the
> plaintiffs' first motion for summary judgment and their Rule 59 motion.
> However, time is not excluded simply because a motion is denied.  The
> defendants short commentary fails to demonstrate that the failed motions
> reach the level of frivolousness.  Consequently, objections solely on this
> basis should be rejected.

American Charities for Reasonable Fundraising Regulations, Inc. v. Pinellas County,
278 F. Supp. 2d 1301, 1320 (M.D. Fla. 2003).  The Sieger Suarez defendants argue
that the plaintiff has failed to carry its obligation to be specific and precise in its
objection to their fee application.  See, e.g., American Civil Liberties Union of Georgia v.
Barnes, 168 F.3d 423, 428 (11th Cir. 1999).  In his opposition, the plaintiff did not
explain why, in particular, he objects to nearly every entry of the Sieger Suarez
defendants' attorneys' time entries.  The plaintiff challenged fees incurred by the Sieger
Suarez defendants for numerous categories of legal work:1.) Unsuccessful activities
(e.g. summary judgment and *Daubert* motions); 2.) Sanctions related activity; 3.)

Michael Canon related activity; 4.) Javier Lugo related activity; 5.) Barry Brant related activity; 6.) Unnecessary or unsuccessful strategy choice activity; 7.) Improper billing judgment (e.g. travel, unrelated case legal work); 8.) Settlement discussions; 9.) Duplicate effort/inefficient usage of hours; 10.) Rony Mateau related activity; 11.)Robin Bosco related activity; 12.) Michael Elkins related activity; and 13.) Michael Steffens related activity.  Plaintiff challenges the defendants' legal work with wholesale objections that lack specificity.  "Objections and proof from fee opponents concerning hours that should be excluded must be specific and 'reasonably precise.'" <u>Barnes</u>, 168 F.3d 423, 428 (quoting <u>Norman</u>, 836 F.2d at 1301).  "[G]eneralized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight."  <u>Pinellas County</u>, 278 F. Supp. 2d at 1314 (citing <u>Norman</u>, 836 F.2d at 1301). "Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is viewed as fatal. <u>Id</u>. (citing <u>Gray v. Lockheed Aeronautical Systems Co.</u>, 125 F.3d 1387, 1389 (11th Cir. 1987) (finding no abuse of discretion in the district court's analysis regarding fees where the fee opponent "lodged only conclusory objections to the hours submitted").

In his opposition to the fees sought by the Sieger Suarez defendants, the plaintiff argues that "[i]f the Sieger Suarez defendants are entitled to any fees, it is only for their time associated with these two successful points: (1) disallowance of suit on the March 2004 copyright registrations and (2) disallowance of suit on the 1996 and 1997 copyright registrations as not sufficiently similar."  (Pl.'s Oppos. p. 12)(DE# 284; 9/12/06).

The plaintiff's reliance on Norman to support a reduction of the defendants' fees is misplaced.  In Norman, the Eleventh Circuit explained that "the district court must deduct time spent on discrete and unsuccessful claims."  Norman, 836 F.2d at 1302 (citing Hensley, 461 U.S. at 435).  The plaintiff asserted a single claim against the Sieger Suarez defendants in this copyright infringement action.  Neither the Supreme Court nor the Eleventh Circuit require this Court to exclude the hours that the Sieger Suarez defendants incurred on unsuccessful issues in their defense as the plaintiff contends.  The Sieger Suarez defendants were completely successful on the copyright infringement claim against them.  They are entitled to all of their reasonable attorneys' fees incurred for the defense of the claim, not just those fees incurred on two discrete issues.

Additionally, the plaintiff asserts that the Sieger Suarez defendants are not entitled to reimbursement for hours that are duplicative.  In his conclusory objection, the plaintiff argues that "[g]iven the intertwined and joint nature of the defense, the Sieger [Suarez] Defendants and the Developer Defendants undoubtedly duplicated many of their efforts in this case.  Yet, Defendants have made no effort to eliminate the hours billed for duplicated efforts and there is no evidence by which Oravec or the Court can determine the quantity of duplication."  (Pl.'s Oppos. p.14)(DE# 284, 9/12/06).   In Exhibit B, the plaintiff challenges 1,730.6 hours ($518,494.80) of the 1,917.4 hours ($597,351.30) billed, which amounts to ninety percent (90%) of the total hours billed.  The plaintiff does not challenge time entries totaling 186.8 hours, which amounts to $78,856.50.  The plaintiff also seeks to eliminate any fees for timekeepers who worked

less than fifteen hours based on the opinion of the Developer defendants' fee expert that it is difficult to assess the value added to the case by such little time.

The undersigned finds that some reduction is necessary because the time entries reflect duplicative work by multiple attorneys and block billing. Some tasks were improperly clumped together. In such instances the undersigned is unable to discern exactly how much time was spent on each task, and likewise, is unable to determine whether the time spent was reasonable. The undersigned agrees with the plaintiff that the fees of attorneys and paralegals who incurred less than fifteen (15) hours of legal work should be deducted completely as opined by Mr. Hartmann, the Trump and Developer defendants' fee expert regarding Baker & McKenzie legal fees. Hartmann Decl. p. 5 ¶ 15 (DE# 278; 8/24/06) ("... I excluded any time for lawyers and paralegals who expended less than 15 hours on the case, because it is difficult to determine what value was added to the case by such a minimal involvement....) Consequently, the undersigned will deduct $2,984.00 for the work performed by paralegal Linda Roberman's time (3.8 hours at $80/hour = $304) and law clerk Gabriel Grolsman (13.4 hours at $200/hour = $2,680). A twenty-five percent (25%) reduction will apply to the reduced base amount of fees for the Sieger Suarez, that is $594,367.30 ($597,351.30 - $2,984.00 = $594,367.30). The following excerpts from the defendants' billing records are provided in order to illustrate the lack of specificity and inclusion of multiple tasks in the same entry as well as duplicative work by multiple attorneys.

      a.    Examples of Duplicative Entries by Counsel for the Sieger Suarez Defendants.

The plaintiff objects that many of the defendants' time entries are duplicative.

38

The Burlington Schwiep attorneys identified by timekeeper numbers on this chart and subsequent charts are: Robert K. Burlington (4A); Susan Mortensen (22A); Carlos Migoya (29A); and Elizabeth Beck (8A).   Examples of duplicative work by multiple attorneys include the following time entries from the billing records of counsel for the Sieger Suarez defendants:

| Date | Time-keeper | Hours | Fees | Hourly Rate | Description |
|------|------|-------|------|-------------|-------------|
| 5/3/05 | 4 A | 6.00 | $2,250.00 | $375 | Prepare for deposition of Paul Oravec; conduct deposition of Paul Oravec |
| 5/3/05 | 22 A | 12.5 | $3,750.00 | $300 | Prepare for, attend & take deposition of Paul Oravec; prepare for conclusion |
| 5/4/05 | 22 A | 12.3 | $3,690.00 | $300 | Prepare for, attend & take deposition of Paul Oravec; follow-up w/ counsel re: same |
| 5/4/05 | 4 A | 8.4 | $3,150.00 | $375 | Attend deposition of Paul Oravec; Meet and prepare Charles Sieger for deposition |
| 5/5/05 | 22 A | 8.0 | $2,400.00 | $300 | Prepare for and defend 30(b)(6) deposition; follow- up re document production; review research regarding adding individuals |
| 5/5/05 | 4 A | 3.6 | $1,350.00 | $375 | Prepare for and attend deposition of Charles Sieger |
| 1/15/06 | 22 A | 6.9 | $2,070.00 | $300 | Prepare for Oravec deposition; Conference w/ C. Migoya & R. Borrello re same; Conference w/ M. Elkin and E. Ganno re damages & documents & analysis; Conference w/ Javier re: same. |

| 1/16/06 | 29 A | 4.0 | $800.00 | $200 | Prepared for deposition of Paul Oravec; Conference w/ Susan Mortensen, Bob Borrello, Howard Russomanno.  Collected supplies for deposition. |
| 1/17/06 | 4 A | 1.0 | $375.00 | $375 | Meeting with Susan Mortensen to prepare for Oravec's deposition. |
| 1/17/06 | 22 A | 11.7 | $3,510.00 | $300 | Prepare for & attend Oravec deposition; Follow-up conference w/ counsel re: same. |
| 1/17/06 | 29 A | 13.7 | $2,740.00 | $200 | Prepared for deposition, then was present for deposition of Paul Orvec [sic] |

The time entries billed to prepare for and take the deposition of Paul Oravec exemplify duplicative work.  The Sieger Suarez defendants do not explain why it was necessary to have two attorneys prepare for and attend the deposition.  Additionally, some block-billing makes it impossible to discern what portion of the time billed was attributed to a specific task.  Approximately thirty-seven (37) of the hours billed for work related to the deposition of Paul Oravec appear duplicative and warrant a reduction. Two attorneys also attended the deposition of Mr. Von Hanau on August 2, 2005 and incurred a total of 7.10 hours.  Another example of duplicative work is that two attorneys prepared for and attended the mediation on September 26, 2008, and billed 8.7 hours each at hourly rates of $300 and $375, respectively.

Considerable duplicative efforts are also evident in the fees incurred for legal work related to experts as shown in the chart below:

| Date | Time-keeper | Hours | Fees | Hourly Rate | Description |
|------|-------------|-------|------|-------------|-------------|
| 1/30/06 | 22 A | 1.3 | $390.00 | $300 | Document preparation for expert meeting; Conference w/ C. Migoya re: computer expert |
| 1/30/06 | 29 A | 3.5 | $700.00 | $200 | Prepared for and met w/ co-defendant counsel and computer expert to discuss direction of report |
| 1/31/06 | 22 A | 5.5 | $1,650.00 | $300 | Prepare for & attend meeting with experts |
| 1/31/06 | 4 A | 5.0 | $1,875.00 | $375 | Meeting w/ Michael Steffens - expert witness; Meeting with Ron Mateu - expert witness |
| 2/2/06 | 4 A | 1.7 | $722.50 | $425 | Call to expert witness and review of his preliminary report |
| 2/2/06 | 4 A | 1.0 | $425.00 | $425 | Meeting w/ Susan Mortensen and Mike Elkin, damages expert to review final draft of report |
| 2/2/06 | 4 A | 1.0 | $425.00 | $425 | Meeting w/ Robin Bosco to supply additional information for his consideration |
| 2/2/06 | 22 A | 3.3 | $1,155.00 | $350 | Review drafts from experts; E-mails re: emergency motion; Locate & deliver documents to R. Boscoe; conference w/ C. Migoya re: computer expert |
| 2/3/06 | 22 A | .3 | $105.00 | $350 | Review reports of experts |
| 2/4/06 | 29 A | 4.0 | $800.00 | $200 | Spoke w/ Borrello and Expert, reviewed draft of report made suggestions, met w/ expert to exchange the data & spoke briefly re: direction of report |
| 2/6/06 | 4 A | 7.0 | $2,975.00 | $425 | Meeting w/ expert witness to finalize reports |

| 2/6/06 | 22 A | 7.8 | $2,730.00 | $350 | Travel to and from conference w/ various experts; finalize report |
|---|---|---|---|---|---|
| 2/7/06 | 22 A | 1.5 | $ 350.00 | $350 | Conference w/ J. Suarez and C. Sieger re experts; Review expert reports; Follow-up w/ R. Boscoe re: status |
| 2/9/08 | 4 A | .4 | $170 | $425 | Meeting with Robin Boscoe |
| 2/10/06 | 4 A | .8 | $340 | $425 | Review Robin Bosco draft report |
| 2/14/06 | 4 A | 1.6 | $680 | $425 | Conference w/ expert witnesses; Review accounting experts reports |
| 2/15/06 | 22 A | 2.2 | $770 | $350 | Review & assist w/ expert reports; Conference w/ R. Burlington re: same |
| 2/23/08 | 22 A | 3.7 | $1,295.00 | $350 | Conference w/ Burlington re: scheduling experts |
| 3/2/06 | 4 A | 1.0 | $425.00 | $425 | Meeting, planning & scheduling w/ Susan Mortensen of all expert witness discovery |
| 3/2/06 | 22 A | 1.2 | $420.00 | $350 | Conference w/ R. Burlington re: expert depositions; review expert subpoenas; conference w/ H. Russomanno re: expert preparation |
| 3/3/06 | 22 A | 1.9 | $665.00 | $350 | Review expert rebuttal reports |
| 3/6/06 | 8 A | 1.3 | $325.00 | $250 | Office conference w/ Ms. Mortensen re out-of-state depositions of Plaintiff's experts; legal research |
| 3/6/06 | 4 A | .8 | $340.00 | $425 | Meeting & planning with Susan Mortensen; preparation for expert witness deposition |

| 3/7/08 | 22 A | 1.5 | $525.00 | $350 | Conference w/ R. Burlington re: expert depositions; E-mails regarding acceptance of service; conference w/ H. Russomanno re: expert deposition preparation |
| 3/8/06 | 4 A | 3.7 | $1,572.50 | $425 | Prepare for upcoming depositions |
| 3/8/06 | 4 A | .3 | $127.50 | $425 | Review corrections to report of Michael Cannon |
| 3/9/08 | 22 A | .3 | $175.00 | $425 | Conference w/ R. Burlington re: expert depositions |
| 3/10/08 | 22 A | 5.1 | $1,785.00 | $350 | Review Steffen's documents; E-mails re: expert deposition; Conference w/ H. Russomanno re: same; research re: motions for summary judgment |
| 3/11/06 | 4 A | .3 | $127.50 | $425 | Review e-mails from opposing counsel w/ documents for upcoming expert depositions |
| 3/13/06 | 4 A | 4.8 | $2,040.00 | $425 | Preparation for upcoming depositions |
| 3/14/08 | 22 A | 9.6 | $3,360.00 | $350 | Conference w/ H. Russomanno re: expert depositions; conference w/ E. Beck re: motion for summary judgment; travel to and prepare Mr. Steffens for depositions; research for motions for summary judgment |
| - | 4 A | 8.0 | $3,400.00 | $350 | Preparation for and conduct deposition of plaintiff's expert Drisin |
| 3/15/06 | 22 A | 12.10 | $4,235.00 | $350 | Conference w/ R. Burlington and attend deposition of A. Drisin; research for motion for summary judgment |

When two attorneys, such as Mr. Burlington and Susan Mortensen, Timekeepers

43

4 A and 22 A, respectively, prepare for and attend the same deposition or mediation,
the only time properly awardable is for the attorney who actively took or defended the
deposition on behalf of the client or actively participated in the mediation.  When
multiple attorneys are required to perform work, their discreet roles as to the scope of
work needs to be ascertained readily from the description for the time billed.  The
second attorney's preparation and attendance is duplicative when no explanation is
given for more than one attorney's involvement.  In such a case, a reduction is
warranted.

The following excerpts from the defendants' billing records exemplify duplicative
billing regarding research and preparation of the Sieger Suarez defendants' motion for
summary judgment and statement of facts.

| Date | Time-keeper | Hours | Fees | Hourly Rate | Description |
|------|-------------|-------|------|-------------|-------------|
| 3/12/06 | 22 A | 2.1 | 735.00 | $350.00 | Research re: motions for summary judgment |
| 3/13/06 | 8 A | 7.2 | 1,800.00 | $250.00 | Legal research for summary judgment motion re: section 102(a)(5) and 102(a)(8); Goldstein on Copyright (at U Miami Law Library); draft memorandum on research for Ms. Mortensen |
| 3/13/06 | 22 A | 8.4 | 2,940.00 | $350.00 | Research for motion for summary judgment; Conference w/ H. Russomanno re: expert depositions; Conference w/ R. Burlington re: same; Review R. Boscoe documents w/ Burlington |

| 3/14/06 | 8 A | 9.1 | 2,275.00 | $250.00 | Legal research for summary judgment motion; office conference w/ Ms. Mortensen on legal research |
|---|---|---|---|---|---|
| 3/15/06 | 8 A | 8.6 | 2,150.00 | $250.00 | Legal research for summary judgment motion on s. 102(a)(5). Office conference w/ Ms. Mortensen re: research & summary judgment motion. Prepare motion for summary judgment |
| 3/16/06 8 | 8 A | 11.6 | 2,900.00 | $250.00 | Legal research on 17 U.S.C.A. 02 (a)(5) [sic] & caselaw on architectural copyrights registered as pictorial, graphic, and sculptural works; review and revise motion for summary judgment.  Office conference w. Ms. Mortensen on Motion |
| 3/17/06 | 22 A | 6.3 | 2,205.00 | $350.00 | Conference w/ R. Boscoe; R. Burlington and H. Russomanno re: deposition preparation; Research re: motion for summary judgment; Conference w/ E. Beck re: status of research |
| 3/17/06 | 8 A | 8.5 | 2,125.00 | $250.00 | Legal research on 17 U.S.C.A. 02 (a)(5) [sic], caselaw on architectural copyrights registered as pictorial, graphic, and sculptural works and the AWCPA; review and revise motion for summary judgment.  Office conferences w. Ms. Mortensen on Motion; e-mail correspondence w/ Ms. Mortensen |
| 3/18/08 | 22 A | 2.1 | 735.00 | $350.00 | Review cases; E-mail regarding potential for developer damages motion for summary judgment |

| 3/20/06 | 22 A | 4.3 | 1,505.00 | $350.00 | Research for motion for summary judgment; Conference w/ R. Burlington re: deposition of G. Brown |
|---------|------|-----|----------|---------|-------------|
| 3/21/06 | 8 A | .8 | 200.00 | $250.00 | Legal research on motion for summary judgment PGS works and copyright infringement |
| 3/21/06 | 22 A | 9.4 | 3,290.00 | $350.00 | E-mails to R. Burlington re: G. Brown and K. Dudney depositions; Conference w/ M. Elkin re: same; Conference w/ H. Russomanno re: same; Review E. Beck memorandum re: motion for summary judgment; Review P. Oravec depositions for motion for summary judgment statement of facts; Draft outline for motion for summary judgment; Research for same; Defend R. Dudney deposition. |
| 3/22/06 | 8 A | 9.7 | 2,425.00 | $250.00 | Legal research on motion for summary judgment; waiver of rights/abandonment of copyright protection; Prepare memorandum on same; Review & revise memorandum; Office conference w/ Ms. Mortensen on legal research |
| 3/22/06 | 22 A | 4.8 | 1,680.00 | $350.00 | Research and draft motion for summary judgment |
| 3/23/06 | 22 A | 8.0 | 2,800.00 | $350.00 | Research for and draft motion for summary judgment |
| 3/29/06 | 22 A | 3.2 | 1,120.00 | $350.00 | Conference w/ R. Borrello re: motion for summary judgment; Review depositions; Review & revise motion for summary judgment No. 7; Conference w/ C. Sieger re: status |

| 3/30/06 | 22 A | 4.2 | 1,470.00 | $350.00 | Review depositions for motion for summary judgment |
|---|---|---|---|---|---|
| 3/30/06 | 4 A | .8 | 340.00 | $425.00 | Review memo from Trump's counsel re: access issue |
| 3/31/06 | 22 A | 5.1 | 1,785.00 | $350.00 | Review depositions asset disposition - dictate summaries for motion for summary judgment |
| 4/1/06 | 22 A | 8.0 | 2,800.00 | $350.00 | Review depositions and dictate summaries for motion for summary judgment; Begin drafting statement of facts; E-mails w/ H. Russomanno re: same |
| 4/2/06 | 22 A | 5.6 | 1,960.00 | $350.00 | Draft statement of facts |
| 4/3/06 | 22 A | 8.2 | 2,870.00 | $350.00 | Draft, review and revise statement of facts; Research for and draft motion for summary judgment |
| 4/3/06 | 8 A | 3.9 | 975.00 | $250.00 | Legal research on Summary Judgment Motion; Perpetrating fraud on the copyright court; Memorandum on same; Review and revise memorandum |
| 4/3/06 | 8 A | 2.1 | 525.00 | $250.00 | Legal research on Summary Judgment Motion; Public policy argument on benefitting from criminal activity; Memorandum on the same; Review and revise memorandum |
| 4/4/06 | 22 A | 10.50 | 3,675.00 | $350.00 | Research for and draft, review and revise motion to dismiss [sic] |
| 4/4/06 | 8 A | 3.1 | 775.00 | $250.00 | Office conferences w/ Ms. Mortensen re: Summary Judgment Motions; Legal research re: shareholder liability; Prepare memorandum on same |
| 4/5/06 | 22 A | 9.2 | 3,220.00 | $350.00 | Research for, draft, review and revise Motion for Summary Judgment |

| 4/5/06 | 8 A | 5.1 | 1,275.00 | $250.00 | Office conference w/ S. Mortensen re: Summary Judgment Motions; Legal research re: shareholder liability; Review and revise memorandum |
|--------|-----|-----|----------|---------|---|
| 4/5/06 | 4 A | 3.3 | 1,402.00 | $425.00 | Revise [sic] and revise motion for summary judgment and to strike expert witnesses |
| 4/5/06 | 4 A | .8 | 340.00 | $425.00 | Review and revise draft motions. |
| 4/6/06 | 22 A | 7.8 | 2,730.00 | $350.00 | Research for, draft review and revise Motion for Summary Judgment and draft, review, and revise Statement of Facts re same |
| 4/6/06 | 4 A | 2.2 | 935.00 | $425.00 | Meeting w/ Susan Mortensen to revise summary judgment motion |
| 4/7/06 | 22 A | 10.9 | 3,815.00 | $350.00 | Research for, draft review and revise Motion for Summary Judgment and draft, review, and revise Statement of Facts re same; Conferences w/ Mr. Burlington re: same; Conferences w/ C. Sieger, J. Suarez and Mr. Burlington re: same. |
| 4/8/06 | 20 A | 4.0 | 360.00 | $90.00 | Preparation of appendix to the Motion for Summary Judgment |
| 4/8/06 | 22 A | 9.2 | 3,220.00 | $350.00 | Research for, draft review and revise Motion for Summary Judgment and draft, review, and revise Statement of Facts re same; Review and revise Motion to Exclude Expert Testimony; Conference w/ S. Franks re: appendix |
| 4/9/06 | 20 A | 4.2 | 378.00 | $90.00 | Preparation of the appendix to the Motion for Summary Judgment |

| 4/9/06 | 22 A | 4.2 | 1,470.00 | $350.00 | Research for, draft review and revise Motion for Summary Judgment and draft, review and revise statement of facts re: same; Conferences w/ Ms. Franks re: appendix |
|--------|------|-----|----------|---------|---|
| 4/10/06 | 20 A | 6.9 | 621.00 | $90.00 | Preparation of appendix to Motion for Summary Judgment (54 exhibits/ 7 sets) |
| 4/10/06 | 22 A | 7.8 | 2,730.00 | $350.00 | Research for, draft review and revise Motion for Summary Judgment and draft, review and revise statement of facts re: same; Conferences w/ Ms. Franks re: appendix. Finalize same. |

Additionally, counsel for the Sieger Suarez defendants incurred over one hundred hours in preparation for and attendance at the hearings on the parties' motions for summary judgment.  Ms. Mortensen billed approximately 80 hours for the oral argument and supplemental memorandum on the motion for summary judgment.  Both Ms. Mortensen and Mr. Burlington attended the hearings on the motion for summary judgment.  It is unclear from the time entries what discreet contributions each of them made to the hearings.  Based on the duplicative work of multiple attorneys performed by multiple attorneys for depositions, drafting the motion for summary judgment and attending mediation and hearings, the undersigned finds that a twenty-five percent reduction (25%) is warranted for the fees incurred by Burlington Schwiep on behalf of the Sieger Suarez defendants.

The base amount of fees requested by the Sieger Suarez defendants is $591,383.30, which reflects the $2,984.00 reduction due to minimal legal work

performed by a law clerk and paralegal (i.e. less than 15 hours, respectively).  The

twenty-five percent (25%) reduction results in a fee award in the amount of $443,537.48

for 1325 hours ($591,383.30 x 0.25 = $147,845.82; $591,383.30 - $147,845.82 =

$443,537.48) for the Sieger Suarez defendants.

        2.    Trump and Developer Defendants' Fees

In their motion, the Trump and Developer defendants request $626,294.00 in

attorneys' fees.  That amount includes $413,794.00 for 1,682 hours incurred by the

Russomanno & Borrello, P.A. firm.  The plaintiff asserts that this Court should

drastically reduce the Trump and Developers' attorneys' fees because of the

defendants' litigation strategy.  Essentially, the plaintiff complains that he should not be

required to pay for the defendants' choice in bringing a motion for summary judgment to

challenge the March 2004 Copyright or the substantial similarity of the 1996 and 1997

Copyrights rather than a motion to dismiss or motion for judgment on the pleadings.

The plaintiff's reliance on Beverage Marketing USA, Inc. v. South Beach

Beverage Corp., 2002 WL 31844911, at *1-2 (S.D.N.Y. Dec. 19, 2002), is misplaced.

As the plaintiff admits, South Beach Beverage is factually distinguishable.  The

copyright infringement claim was one of several distinct claims in that case.  In South

Beach Beverage, the court expressly determined that the copyright infringement claim

could have been decided early on a motion to dismiss without any necessity for

elaborate briefing on the design of the bottles.  Unlike South Beach Beverage, the

copyright infringement claim is the basis of the entire action in the present case.

Discovery, extensive briefing and hearings were necessary for the Court to resolve the

claim on summary judgment.  The undersigned rejects the plaintiff's contention that the Trump and Developer defendants' fees should be drastically reduced due to the alleged strategic delay in resolving the matter on summary judgment rather than a motion to dismiss.

Additionally, the plaintiff seeks a reduction because the Trump and Developer defendants simply adopted the Sieger Suarez motion on the copyright defenses.  It is common practice and efficient to have one of multiple aligned parties take the lead in briefing certain issues in litigation rather than having all aligned parties incur fees to essentially research and brief the same arguments.  The plaintiff argues that the Trump and Developer defendants should be limited to a total attorneys' fee of $40,000.  The plaintiff estimates that $40,000 would have been expended to conclude the matter on a motion to dismiss.

As the undersigned has previously discussed, a claim's survival on a motion to dismiss is much greater than on a motion for summary judgment simply because the standards of review are so different.  On a motion to dismiss, the Court's review is limited to the four corners of the complaint and the plaintiff's allegations are taken as true.  Based on the allegations and exhibits in the complaint as well as the benefit of hindsight, it is highly unlikely that this action could have been resolved on a motion to dismiss.

### a.    Baker & McKenzie

Baker and McKenzie incurred 1,333.3 hours and accepted the substantially discounted amount of $212,500 in full satisfaction of its attorneys' fees when it withdrew

as defense counsel after approximately nine months of work.   Below is a summary of

Baker & McKenzie's hours and fees.

| Baker & McKenzie Timekeeper | Type | Hourly Rate (Reduced by Expert) | Hours | Attorney's Fees |
|---|---|---|---|---|
| James Jacobs | Attorney | $495 | 262.1 | $129,739.50 |
| Mark Winston | Attorney | $450 | 249.5 | $112,275.00 |
| Donald Hayden | Attorney | $460 | 95.1 | $43,700.00 |
| Michael Stoker | Attorney | $325 | 432.5 | $140,562.50 |
| Jose M. Ferrer | Attorney | $200 | 28.6 | $5,720.00 |
| Yafit Tako | Attorney | $200 | 30.5 | $6,100.00 |
| Neil Reddy | Attorney | $200 | 55.5 | $11,000.00 |
| Michaela F. Carpio | Paralegal | $90 | 26.1 | $2,349.00 |
| Alana Goldberg | Paralegal | $90 | 20.5 | $1,845.00 |
| Mary Ferrari | Paralegal | $90 | 90.2 | $8,118.00 |
| Miami Paralegals | Paralegal | $90 | 42.7 | $3,843.00 |
| Total | | | 1,333.3 | $465,252.00 |

The plaintiff contends that the fees incurred by Baker & McKenzie should be

drastically reduced based on his assertion that the firm did not contribute to the

successful defense of the case.  The plaintiff argues that the over fifty percent (50%)

wholesale reduction of fees by Baker & McKenzie to $212,500 supports his position

that the fees charged by Baker & McKenzie were unreasonable. At most, the plaintiff

submits that $27,747.00 is reasonable for the work performed by Baker & McKenzie.

The plaintiff characterizes its objections as follows:

| Categories of Baker & McKenzie's Legal Work Challenged by Plaintiff [5] | Hours Disputed | Reduction Sought |
|---|---|---|
| Unsuccessful activities | 538 | $143,967.50 |
| Unnecessary activity or unsuccessful strategy choice | 283.3 | $79,741.00 |
| Improper billing judgment/discretion | 227 | $71,895.00 |
| Duplicate effort or inefficient usage of hours | 109.9 | $37,132.00 |
|  | 1158.2 | $332,735.50 |

The plaintiff maintains that "the vast majority of hours billed by Baker & McKenzie were

for unsuccessful activities (including a motion to bifurcate and an unfiled motion for

summary judgment), sanctions related conduct, or for unnecessary and inefficient

efforts."  Pl.'s Oppos.  p. 7 (Trump and Developers' Fees) (DE# 285, 9/12/06).  The net

difference between the total amount of fees incurred ($465,252.00) by Baker &

McKenzie and the amount that plaintiff challenges ($332,735.50) is $132,516.50.

The Trump and Developer defendants maintain that the action was litigated

intensely for approximately twenty months and that Baker & McKenzie successfully

defended the case for approximately nine of those months and worked over 1,377

hours.  Baker & McKenzie conducted a substantial portion of the fact discovery and

---

[5]This chart reflects the summary of hours challenged by the plaintiff on page 7 of his opposition.  (DE# 285, 9/12/06) The plaintiff acknowledges that there may be some overlap of time based on time entries that have multiple objections.

participated in many key depositions which led to final summary judgment in favor of all defendants. According to the defendants, the reduced amount of $212,500 that Baker & McKenzie accepted in full satisfaction of its 1,377 hours incurred represents a blended hourly rate of $155. Due to the nature of this action and the claims asserted, the undersigned finds that the reduced fee taken by Baker & McKenzie is reasonable and accounts for any excess hours or hourly rates that may have been charged. No further reduction is warranted. The Trump and Developer defendants should be awarded $212,500 as reasonable attorneys' fees for the legal work performed by Baker & McKenzie.

b.    Russomanno & Borrello

The plaintiff also challenges the fees incurred by Russomanno & Borrello for 1,682 hours. The plaintiff contends that the Trump and Developer defendants' victory was not through their own counsel's efforts (i.e. the Trump and Developer defendants incorporated the Sieger Suarez defendants' arguments in their motion for summary judgment). The plaintiff argues that it was the Sieger Suarez defendants who raised the issues in their motion for summary judgment and that their counsel argued the issues at the hearing. The plaintiff attempts to narrow the scope of the defendants' success to two categories: 1) disallowance of suit on the March 2004 Copyright and 2) disallowance of suit on the 1996 and 1997 Copyrights as not sufficiently similar. (Pl.'s Oppos. p. 8) (DE# 285; 9/12/06). The plaintiff argues that, at most, Russomanno & Borrello is entitled to $4,500 for 15 hours.

The plaintiff argues that the Trump and Developer defendants minimally

54

contributed to the success of the issues because they merely adopted their co-defendants' successful arguments on the motion for summary judgment.  Instead of appreciating the reduction in fees that occurs when a firm adopts, rather than asserts its own arguments, the plaintiff seeks to penalize the Trump and Developer defendants by imposing further reductions on the amounts of attorneys' fees and expenses claimed. The plaintiff ignores the choice he made when he sued the various defendants.  Each defendant had the right (and for the corporations, the duty) to retain counsel.  It is not uncommon for co-parties to adopt another party's briefs for issues that apply to them. The plaintiff further argues that the Trump and Developer defendants' fees should be drastically reduced because the Court did not rule in favor of and/or address each and every argument asserted in their motion for summary judgment.

The copyright claims against the Sieger Suarez defendants and the Developer defendants were based on direct liability.  The liability, if any, of the Trump and Developer defendants collectively was derivative (Counts II and III).  The Trump and Developer defendants maintain that they participated fully with the Sieger Suarez defendants in all discovery related to liability issues and also engaged in substantial discovery on damage-related issues pertaining solely to the Trump and Developer defendants.  The Trump and Developer defendants acknowledge that all defendants allocated issues between themselves on briefing the summary judgment motions.

The plaintiff argues that the Trump and Developer defendants' fees should be limited to the time it took to draft the incorporation sentence and the time spent conferring with the Sieger Suarez' counsel regarding the issue.  (Pl.'s Oppos. p. 9) (DE#

295; 9/12/06).  The undersigned rejects the plaintiff's proposal and finds that it was

reasonable and practical for the Trump and Developer defendants to permit the Sieger

Suarez defendants to take the lead on the various issues of direct copyright

infringement.  This efficiency should be commended – not penalized as the plaintiff

contends.  It ultimately inures to the benefit of the non-prevailing party because the fees

are necessarily less than they otherwise would be if both firms incurred fees for similar

work.

The plaintiff wants to dissect each and every billing entry as to its independent

success in the overall action.  This is not what the law provides.  The prevailing party is

entitled to all reasonable attorneys' fees for the prosecution or defense of each

successful cause of action -- not each legal issue.  The Court held that all defendants,

including the Trump and Developer defendants, were entitled to summary judgment.

As the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983) explained,

> Where a [party] has obtained excellent results, his attorney should recover
> a fully compensatory fee.  Normally this will encompass all hours
> reasonable expended on the litigation, and indeed in some case of
> exceptional success an enhanced award may be justified.  In these
> circumstances, the fee award should not be reduced simply because the
> [party] failed to prevail on every contention raised in the lawsuit.  Litigants
> in good faith may raise alternative legal grounds for a desired outcome,
> and the court's rejection of or failure to reach certain grounds is not a
> sufficient reason for reducing a fee.  The result is what matters.

461 U.S. at 435 (internal citation and footnote omitted).  Section 505 of Title 17 of the

United States Code expressly authorizes an award of reasonable attorneys' fees and

full costs to the prevailing party in a copyright infringement action.  See, Fogerty v.

Fantasy, Inc., 510 U.S. 517, 529 (1994) ("[T]he person who forces another to engage

56

counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent...." ) (quoting the Strauss Study 31 which explained the concept of the discretionary award of fees).

The Trump and Developer defendants prevailed on all of the claims that the plaintiff asserted against them.  The plaintiff prevailed on none of its claims.  The plaintiff concedes that "[t]he only argument that [Trump and] Developer defendants made and prevailed on, even in a limited fashion, was contributory liability for the Trump defendants and vicarious liability for the Trump defendants as to the Trump Palace." (Pl.'s Oppos. p. 9) (DE# 295; 9/12/06).  Plaintiff's attempt to minimize the significance of the outcome in favor of the defendants is unpersuasive.  As the Court found, when there is no direct liability for copyright infringement, there can be neither contributory nor vicarious liability for copyright infringement.  The Trump and Developer defendants prevailed on the claims asserted against them and they are entitled to their reasonable fees for successfully litigating their defenses.

The chart below summarizes (as adjusted) the hourly rates, hours incurred, and fees incurred by the timekeepers at Russomanno & Borrello, P.A.

| Timekeeper | Type | Hourly Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Herman J. Russomano | Attorney | $300 | 843.8 | $253,125.00 |
| Robert J. Borrello | Attorney | $300 | 403.2 | $120,960.00 |
| Herman J. Russomano | Law Clerk | $90 | 349.7 | $31,473.00 |
| Mark T. Marshall | Paralegal | $90 | 79.6 | $7,164.00 |
| Total | | | 1,682.1 | $412,722.00 |

The chart reflects the reduction of fees and hours by $1,072.00 and 5.8 hours, respectively, for less than 15 hours of billable work performed by junior associate, Lora Damiani (5.0 hours at $200/hour), and paralegal, Gema Palazzotto (0.8 hours at $90/hour).  The reduced base amount of fees sought by the Trump and Developer defendants is $412,722.00.  The plaintiff seeks a drastic reduction of the fees incurred and asserts blanket objections to most of the time entries on the billing statements of Russomanno and Borrello.  The plaintiff challenges 1,737.95 ($433,083.00) of 1752.95 ($437,583.00) hours incurred.  Fifteen hours ($4,500) are not disputed.   The plaintiff challenged fees incurred by the Trump and Developer defendants for many categories of legal work.[6]  A review of the plaintiff's objections on Exhibit F (DE# 285, 9/12/06) reveals that most time entries are challenged on the basis that they are either related to unsuccessful activities or involve duplicate/inefficient usage of hours.

The undersigned finds that the defendants' requests for fees requires reductions based on the plaintiff's objection that certain hours for which the defendants seek recovery are duplicative.

_____

---

[6]	The plaintiff objects to the following categories of legal work: 1.) Unsuccessful activities (e.g. summary judgment, *Daubert* motions); 2.)  Sanctions related activity; 3.) Michael Canon related activity; 4.) Javier Lugo related activity; 5.) Barry Brant related activity; 6.) Unnecessary or unsuccessful strategy choice activity; 7.) Improper billing judgment (e.g. travel, unrelated case legal work); 8.) Settlement discussions; 9.) Duplicate effort/inefficient usage of hours; 10.) Rony Mateau related activity; 11.)  Robin Bosco related activity; 12.) Michael Elkins related activity and 13.) Michael Steffens related activity.

1.      Examples of Duplicative Entries by Russomanno & Borrello

The firm of Russomanno & Borrello replaced Baker & McKenzie as counsel for the Trump and Developer defendants in mid-August 2005.  An independent review of the invoices reveal that some of the legal work initially performed by Russomanno & Borrello constituted duplicative work for the review of the case and discovery to prepare for the defense of the Trump and Developer defendants.  The duplicative fees incurred for review by the Russomanno & Borrello firm as a result of the defendants' choice to substitute counsel during the litigation are not properly chargeable against the plaintiff. A reduction is necessary for the overlap of legal work (i.e. transitioning and reviewing the file to assume the defense) that resulted from the substitution of counsel for the Trump and Developer defendants.  A reduction is also warranted for hours incurred by the Russomanno & Borrello firm to defend against the plaintiff's motion for sanctions for discovery violations.

Additionally, three attorneys at Russomanno & Borrello incurred approximately 183 hours in research and preparation of the motion for summary judgment on behalf of the Trump and Developer defendants.   The following attorneys are reflected in the chart below: Herman J. Russomanno (HJR), Herman Russomanno (HR), and Robert J. Borrello (RJB).  Some examples of the duplicative legal work regarding the motion for summary judgment are shown in the table below.

| Date | Time-keeper | Hours | Amount | Hourly Rate | Description |
|------|-------------|-------|--------|-------------|-------------|
| 2/28/06 | HJR | 1.5 | 450.00 | 300.00 | Preparation for Motion for Summary Judgment for Sunny Isles.... |

| 2/28/06 | HJR | 1.0 | 300.00 | 300.00 | Preparation for Motion for Summary Judgment for Dezer Properties (Sunny Isles).... |
|---------|-----|-----|--------|--------|-----------------------------------------------------------------------------------|
| 3/3/06 | HR | 1.0 | 100.00 | 100.00 | Preparation of initial arguments for Motion for Summary Judgment, review pleadings, documents, materials and depositions |
| 3/10/06 | HJR | 1.5 | 450.00 | 300.00 | Draft Motion for Summary Judgment .... |
| 3/20/06 | RJB | 1.5 | 450.00 | 300.00 | Legal research re motion for summary judgment on damages causation |
| 3/21/06 | HR | .3 | 30.00 | 100.00 | Legal research of damages issue for Motion for Summary Judgment |
| 3/22/06 | HR | 4.0 | 400.00 | 100.00 | Drafting Motion for Summary Judgment for Defendants .... |
| 3/23/06 | HR | 4.0 | 400.00 | 100.00 | Drafting Motion for Summary Judgment for Defendants .... |
| 3/23/06 | HR | 3.5 | 350.00 | 100.00 | Drafting Motion for Summary Judgment for Defendants .... |
| 3/29/06 | RJB | 5.9 | 1,770.00 | 300.00 | Preparation of motion for summary judgment on damages; legal research re same; phone conference w/ attorney Robert Cook in 4th Circuit appeal matter (Bonner); review of depositions; phone conference w/ attorney Mortensen re: strategy on summary judgments |
| 3/30/06 | HR | 1.5 | 150.00 | 100.00 | Draft Motion for Summary Judgment re Trump and the Trump corporation |
| 3/30/06 | HR | 3.0 | 300.00 | 100.00 | Draft Motion for Summary Judgment re Trump and the Trump corporation |

60

| 3/30/06 | RJB | 4.9 | 1,470.00 | 300.00 | Preparation of motion for summary judgment on damages; legal research; review of deposition transcripts |
|---------|-----|-----|----------|--------|---|
| 4/9/06 | HJR | 2.5 | 750.00 | 300.00 | Re-draft and edit Motion for Summary Judgment |
| 4/9/06 | RJB | .8 | 240.00 | 300.00 | Review of subsequent draft of motion for summary judgment |
| 4/10/06 | HJR | 4.0 | 1,200.00 | 300.00 | Revision and review Motion for Summary Judgment and exhibits |
| 4/10/06 | HR | 3.0 | 300.00 | 100.00 | Preparation of Motion for Summary Judgment .... |
| 4/10/06 | HJR | 6.9 | 2,070.00 | 300.00 | Preparation of motion for summary judgment; review and revision of statement of undisputed facts; phone conference w/ attorney Joe Silver; phone call w/ Scott Bouchner and Tim Burrow; filing of pleadings |
| 4/10/06 | RJB | 1.5 | 450.00 | 300.00 | Review of motion in limine, motion to exclude and motion for summary judgment |

The undersigned finds these entries to be evidence of  excessive and duplicative billing.

The undersigned finds that a thirty-five percent (35%) reduction is warranted for the work performed by Russomanno and Borrello to account for duplicative work performed as successor counsel to Baker & McKenzie, duplicative work performed by multiple attorneys at Russomanno and Borrello; and time incurred to defend against the plaintiff's motion for sanctions for discovery violations.  The billing records reflect that Russomanno and Borrello reviewed the work of Baker & McKenzie after Baker & McKenzie withdrew as counsel for the Trump and Developer defendants.  Certain work

61

performed by Baker & McKenzie was re-done by Russomanno and Borrello (e.g. drafting the motion for summary judgment). Additionally, the time entries reflect some duplicative work performed by multiple attorneys at Russomanno and Borrello. The base amount of fees requested by the Trump and Developer defendants for work performed by Russomanno and Borrello is $412,722.00, which reflects the $1,072 reduction due to minimal legal work performed by a junior attorney and a paralegal (i.e. less than 15 hours, respectively). A thirty-five percent (35%) reduction results in an award of fees in the amount of $268.269.30 for 1,676 hours ($412,722.00 x 0.35 = $144,452.70; $412,722.00 - $144,452.70 = $268,269.30) for the work performed by Russomanno and Borrello on behalf of the Trump and Developer defendants).

The Trump and Developer defendants should be awarded their attorneys' fees in the total amount of $480,769.30, which reflects the sum of fees incurred by Russomanno and Borrello and Baker & McKenzie on behalf of the Trump and Developer defendants ($268,269.30 + $212,500 = $480,769.30).

### III. Costs

#### A.    Costs under Section 505 Not Allowed under 28 U.S.C. § 1920

The defendants seek reimbursement of costs under the Section 505 of the Copyright Act as well as 28 U.S.C. §1920. The Copyright Act authorizes an award of attorneys' fees to include "out-of-pocket expenses incurred by the attorney which are typically charged to a client in the course of providing legal services, such as photocopying, paralegal expenses, travel costs and telephone costs." Lil' Joe Wein Music, Inc. v. Jackson, 2008 WL 2688117 *14 (S.D. Fla. 2008); see Data General Corp.

v. Grumman Systems Support Corp., 825 F. Supp. 361, 366-67 (D. Mass. 1993)

(prevailing party in a copyright infringement case may be awarded, as part of the

attorney's fees award, the costs of courier service, computer research, local travel,

meals, telephone postage and parking); see also Pinkham v. Camex, Inc., 84 F.3d 292,

294-95 (8th Cir. 1996) (attorney's fees awarded to prevailing plaintiff in a copyright

infringement action included out-of-pocket expenses normally charged by attorneys to

clients, such as costs for long distance and fax and for messengers and express mail).

The undersigned finds that the defendants should be awarded their litigation costs

which include reasonable out-of-pocket expenses incurred by the attorney and which

are normally charged to fee-paying clients provided the costs are incidental and

necessary to the litigation.

The undersigned finds that the out-of-pocket expenses sought by the defendants

fall within the categories contemplated by Section 505 of the Copyright Act, except the

Sieger Suarez defendants' claim for mediation expenses.  The Sieger Suarez

defendants should be awarded their out-of-pocket expenses for postage, express mail,

travel expenses, computer research, and photocopying in the total amount of

$11,428.09, which excludes the mediation costs of $1,312.50. See Williams v.

Consolidated City of Jacksonville, 2006 WL 4794173 *12 (M.D. Fla. 2006) (disallowing

costs of mediation in Title VII action) (citing Mota v. University of Texas Houston Health

Science, 261 F.3d 512, 530 (5th Cir. 2001) (finding the court erred in awarding

mediation costs to a prevailing party under Title VII)). Likewise, the Trump and

Developer defendants should be awarded their out-of-pocket expenses for travel,

couriers, postage and long distance telephone charges in the total amount of $11,200.19.

All defendants have sought reimbursement for expert witness fees to preserve the issue for appeal.[7]  The defendants acknowledge that this Court is bound by the precedent of the Eleventh Circuit, which limits recovery for expert witnesses to the daily rate of $40 for witnesses under 28 U.S.C. § 1920.  Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co., 275 F.3d 1038, 1040 (11th Cir. 2001).  Any award regarding the defendants' experts should be limited to $40/day.  Because the undersigned cannot ascertain from the defendants' filings how many expert witnesses were deposed and/or testified at court hearings, the undersigned cannot calculate an appropriate amount to award for experts.

**B.**  **Costs under 28 U.S.C. § 1920**

Section 505 of the Copyright Act authorizes an award of costs to encompass litigation expenses (i.e. out-of-pocket legal expenses) as well as categories of taxable costs pursuant to 28 U.S.C. § 1920.  The award of Section 1920 taxable costs is made pursuant to 28 U.S.C. § 1920 as well as Section 505 of the Copyright Act.

1.     Sieger Suarez Defendants' Costs under 28 U.S.C. § 1920

The Sieger Suarez defendants also submitted a Bill of Costs in the total amount of $105,227.07 for costs pursuant to 28 U.S.C. § 1920.  (DE# 329, 1/7/09).[8]  Based on

---

[7]The Sieger Suarez defendants seek expert fees in the amount of $37,737 (DE# 279, 8/25/06; Ex. B).  The Trump and Developer defendants seek expert fees in the amount of $19,069.51 (DE# 278, 8/24/06; Ex. 1).

[8]The Bill of Costs that was filed on August 23, 2006, did not appear on the Court Docket.  On January 5, 2009, the undersigned requested that the defendants re-file

concessions made in their reply and preserving certain issues for appeal, the Sieger Suarez defendants seek reimbursement in the net reduced amount of $66,152.73[9] as reflected in the table below.

| Category | Total Amount | Net Reduced Amount |
|---|---|---|
| Witness Fees (excluding expert witnesses) | $400.00 | (uncontested) $400.00 |
| Service Fees | $826.00 | $536.00 |
| Court Reporters | $30,194.11 | $26,694.61 |
| Copies | $36,929.32 | $35,568.27 |
| Other costs/exemplified | (Audio-visual)$37,167.64 | $1,953.85 |
| Total | $105,517.07 | $65,152.73 |

The plaintiff requests that this Court exercise its discretion under the Copyright Act and deny the Sieger Suarez defendants an award of costs. Alternatively, the plaintiff requests that an award of costs to the Sieger Suarez defendants be limited to $23,914.29 for court reporter and transcription fees and $400.00 for witness fees, for a total amount of $24,314.29. Except for the witness fees, the plaintiff challenges the amounts sought by the Sieger Suarez defendants on the following grounds: the items are not recoverable, the defendants failed to substantiate the request, or both.

their respective Bill of Costs. The Sieger Suarez defendants filed their Notice of Re-Filing Developer Defendants' Bill of Costs on January 7, 2009. (DE# 329, 1/7/09).

[9]The net reduced amount sought by the Sieger Suarez defendants in their reply is $1,000 more than what the net reduced amount totals in the table. The discrepancy appears to be due to copying costs.

In their reply, the Sieger Suarez defendants voluntarily reduce the amount of costs sought to address the objections raised by the plaintiff.  The voluntary reductions include reductions for expedited service, videotaped depositions and extra copies of deposition transcripts, costs of tabs in an appendix, and audio-visual expenses.[10]  The net reduced amount of costs fall within the categories authorized by 28 U.S.C. § 1920. See Equal Employment Opportunity Commission v. W&O, Inc., 213 F.3d 600 (11th Cir. 2000); see also Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc., 249 F.3d 1293 (11th Cir. 2001).

The plaintiff also challenges the costs incurred for reductions, special copies and Tech 1.  The Sieger Suarez defendants explain that they alone produced more than 10,000 pages of documents, including a plethora of oversized (approximately 3 feet by 5 feet) architectural plans.  The Sieger Suarez defendants assert that the plaintiff specifically demanded the documents, but now challenges the "special" costs of producing them in their original size (as was often requested by the plaintiff) and as reduced to a more manageable 11 x 17 inches (which was also requested by the plaintiff) as unreasonable.  The Sieger Suarez defendants contend that the charges incurred in copying the oversized and color documents are reasonable as they are the amounts charged by the copy services.  Invoices were supplied for each.  The

_____

[10]The Sieger Suarez defendants have requested the cost regarding audio-visual equipment notwithstanding the authority of Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc., 249 F.3d 1293 (11th Cir. 2001), to preserve the issue for appeal. However, in their reply, the Sieger Suarez defendants request that $1,953.85 of the audio-visual charges be reimbursed because they represent standard paper charts and blow-ups, which are taxable.  Id. at 1296.

undersigned agrees with the Sieger Suarez defendants that the plaintiff cannot be heard to complain that the cost of copying such voluminous, oddly-sized and color documents was unreasonable. See Arcadian Fertilizer, 249 F.3d at 1296 ("We read 'copies of paper' [under Section 1920] to mean reproductions involving paper in its various forms, and conclude that because oversize documents and color photographs are capable of this characterization, taxation of these costs was not error.")

Additionally, the plaintiff challenges the copy costs incurred by the Sieger Suarez defendants for trial exhibits, which the parties had agreed to exchange on July 10, 2006.  After the close of business on July 7, 2006, the Court decided that the parties were not to file the ordered pretrial stipulation until further order of the Court.  The undersigned finds that the costs incurred by the Sieger Suarez defendants for trial exhibits in the amount of $5,944.21 are reasonable under the circumstances as copy costs were incurred before the Court suspended the deadline.  With the concessions made in their reply, the Sieger Suarez defendants should  recover copying costs in the amount of $35,568.27.

The undersigned finds that the Sieger Suarez defendants should be awarded their reasonable Section 1920 costs in the amount of $65,152.73.[11]

2.    Trump and Developer Defendants' Costs

The Trump and Developer defendants filed a Bill of Costs[12] seeking

_____

[11]The amount is $1,003 less than the total amount reflected on page 11 of the Sieger Suarez defendants' reply.  (DE# 294, 9/22/08)  The discrepancy appears to be due to $1,000.00 related to copying costs.

[12]The Bill of Costs that was filed on August 23, 2006, did not appear on the Court Docket.  On January 5, 2009, the undersigned requested that the defendants re-file

reimbursement for $55,638.51 for court reporter fees and transcripts as well as exemplification and copy fees. (DE# 328-2, 1/5/09).

A summary of the amounts of costs claimed and the net reduced amounts of costs for the Trump and Developer defendants are reflected below:

| Category | Total Amount | Net Reduced Amount |
|---|---|---|
| Court Reporters | $29,716.33 | $20,051.55 |
| Copies/exemplification | $25,922.18 | $22,935.18 |
| Total | $55,638.51 | $42,986.73 |

The plaintiff requests that the Court exercise its discretion and not award costs under the Copyright Act. Alternatively, the plaintiff argues that the defendants have sought costs that are not allowable under 28 U.S.C. §1920, and any award should not exceed $20,051.55 for transcription and court reporting expenses, and no recovery for copying expenses.

The plaintiff challenged $8,664.78 of the costs associated with court reporter services and transcripts. To eliminate the issue, in their reply, the Trump and Developer defendants voluntarily agreed to reduce their costs by an amount of $8,664.78 as requested by the plaintiff to $20,051.55 for stenographic transcripts/court reporter services.

The plaintiff contends that the Trump and Developer defendants should not obtain any recovery for copying costs because the Trump and Developer defendants have failed to support their claim for copying expenses. The plaintiff argues that

_____

their respective Bill of Costs. The Trump and Developer defendants filed their Notice of Re-Filing Developer Defendants' Bill of Costs on January 5, 2009. (DE# 328, 1/5/09).

"[c]opies obtained only for convenience of counsel are not recoverable." (Pl.'s Oppos. p. 7 (citing Desisto College, Inc. v. Town of Howey-in-the-Hills, 718 F. Supp. 906, 913 (M.D. Fla. 1989), aff'd, 914 F.2d 267 (11th Cir. 1990)). The Trump and Developer defendants, however, claim that they are entitled to fees for exemplification and copies of papers necessarily obtained for use in this case. 28 U.S.C. §1920(4). The Trump and Developer defendants' Bill of Costs seeks reimbursement in the amount of $25,922.18 for copying and exemplification. "[I]n evaluating copying costs, the Court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." United States v. EEOC, 213 F.3d 600, 623 (11th Cir. 2000) (citing Desisto College, Inc., 718 F. Supp. at 913).

In their reply the Trump and Developer defendants provided an explanation for the copies as either attributable to: A) discovery or B) pleadings, correspondence, documents tendered to an opposing party, exhibits and documents prepared for the Court's consideration. Reply pp. 3-4 (DE# 296; 9/22/06). The law firm of Russomanno and Borrello made a total of 14,935 copies and charged 35 cents per page. In their reply, the defendants are willing to accept a reduction to 15 cents per page, which amounts to a reduction of $2,987 for copies made within the firm. The Trump and Developer defendants submitted invoices from vendors for their remaining copying costs. Id. at 4; see also Trump and Developer defendants' Bill of Costs (DE# 328; 1/5/09). The undersigned finds that the reduced amount of $22,935.18 is reasonable for the Trump and Developer defendants' copying and exemplification costs.

The undersigned finds that the Trump and Developer defendants should recover

their reasonable Section 1920 costs in the total amount of <u>$42,986.73</u>.

**IV.    The Plaintiff's Purported Inability to Pay Does Not Warrant a Further Reduction for an Award of Attorneys' Fees or Costs**

Finally, the plaintiff asks this Court to reduce the lodestar amount based on the plaintiff's inability to pay.  In support, the plaintiff submitted copies of his recent tax returns and a bank statement that reflects the balance of a joint account he shares with his wife.  The plaintiff relies on <u>Durrett v. Jenkins Brickyard, Inc.</u>, 678 F.2d 911, 915 (11th Cir. 1982), and <u>MiTek</u>, 198 F.3d at 842-43.  In <u>Durrett</u>, the Eleventh Circuit held that a "district court awarding attorney's fees to a prevailing Title VII defendant should consider not only the applicable Johnson guidelines, but also, as a limiting factor, the plaintiff's financial resources."  <u>Id</u>.  Unlike an award of fees under the Copyright Act where the prevailing parties are to be treated alike, in employment discrimination cases the prevailing defendant has a higher burden to obtain an award of fees.

The Sieger Suarez defendants maintain that there is no justification for reducing a fee award based solely on the plaintiff's inability to satisfy a judgment.  <u>See</u> <u>Amadasun</u>, 359 F. Supp. 2d at 1376 ([C]onsideration of whether a plaintiff can afford to pay the fees is improper; the more proper consideration is whether imposing the fees will further the goals of the Copyright Act.") The Sieger Suarez defendants assert that such a reduction "would turn a blind eye to Oravec's professed intent to pursue future litigation against these same Defendants and claim that he will recover millions." (Sieger Suarez Reply p. 9) (DE# 293; 9/22/06).

There is an insufficient showing of evidence for the undersigned to conclude that the plaintiff cannot pay an award.  The undersigned finds that the plaintiff has failed to

identify all of his assets.  Additionally, the undersigned notes that the plaintiff was awarded approximately $169,000 for attorneys' fees and expert fees as sanctions against the Developer defendants for discovery violations. (DE# 274, 8/2/08)

## **RECOMMENDATION**

For all of the foregoing reasons, the undersigned recommends that the defendants', The Sieger Suarez Architectural Partnership, Inc. ("Sieger Suarez"), Charles Sieger, and Jose Suarez (collectively referred to as the "Sieger Suarez defendants"), Verified Motion for Attorneys' Fees and Costs (DE# 279, 8/25/08); and the defendants Verified Motion for Attorneys' Fees and costs and Memorandum of Law in Support Thereof  (DE# 278, 8/24/06) filed by the defendants, Sunny Isles Luxury Ventures L.C., Dezer Properties, LLC, Dezer Development, LLC, Michael Dezer, Gil Dezer, The Trump Corporation, Donald J. Trump, Residences at Ocean Grande, Inc., and Royal Development Holdings, LLC (collectively referred to as the "Trump and Developer defendants") be GRANTED in part in favor of the defendants.  The Sieger Suarez defendants should be awarded fees in the amount of $443,537.48.  The Trump and Developer defendants should be awarded fees in total amount of $480,769.30.

The undersigned further recommends an award of costs pursuant to 28 U.S.C. § 1920 to the defendants in the respective amounts of $65,152.73 to the Sieger Suarez defendants and $42,986.73 to the Trump and Developer defendants. Finally, the Sieger Suarez defendants should recover certain out-of-pocket expenses under Section 505 of

71

the Copyright Act in the amount of $11,428.09.  Likewise, the Trump and Developer

defendants should recover their out-of-pocket expenses in the amount of  $11,200.19.

The parties have ten (10) days from the date of receipt of this Report and

Recommendation within which to serve and file written objections, if any, with the

Honorable Patricia Seitz, United States District Court Judge.   Failure to file objections

timely shall bar the parties from attacking on appeal the factual findings contained

herein.  See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S.

958, 109 S. Ct. 397 (1988); See also, RTC v. Hallmark Builders, Inc., 996 F. 2d 1144,

1149 (11th Cir. 1993).

DONE AND ORDERED in Chambers at Miami, Florida, this   **12th** day of

January, 2009.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All counsel of record