UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-22780-CIV-SEITZ/O'SULLIVAN

PAUL ORAVEC,

       Plaintiff,

v.

SUNNY ISLES LUXURY VENTURES
L.C., *et al.*,

       Defendants.
_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION IN-PART, REJECTING REPORT AND RECOMMENDATION IN-PART, AND AWARDING ATTORNEYS' FEES AND COSTS TO DEFENDANTS

THIS CAUSE is before the Court on the Report and Recommendation of Magistrate Judge John O'Sullivan [DE-330]. This case arose from the alleged infringement of five copyrights owned by Plaintiff Paul Oravec. Because Defendants prevailed at both the trial level and on appeal, they now seek trial level attorneys' fees and costs pursuant to 17 U.S.C. § 505 of the Copyright Act. Magistrate Judge O'Sullivan recommends granting in-part the two verified motions for attorneys' fees and costs filed by the "Architect Defendants" Sieger Suarez Architectural Partnership, Charles Sieger, and Jose Suarez [DE-279], and the "Developer Defendants" Sunny Isles Luxury Ventures L.C., Dezer Properties, LLC, Dezer Development LLC, Michael Dezer, Gil Dezer, the Trump Corporation, Donald J. Trump, Residences at Ocean Grande, Inc., and Royal Development Holdings, LLC [DE-278]. Plaintiff filed timely objections to the Report and Recommendation [DE-332].

After carefully reviewing, *de novo*, the through and carefully reasoned Report and

1

Recommendation and objections thereto, as well as the entire record and pertinent legal authorities, the Court shall affirm and adopt the Magistrate Judge's conclusion that Defendants are entitled to attorneys' fees and costs under § 505 of the Copyright Act. However, the Court shall award only those attorneys' fees expended in defense of Plaintiff's claims on the 2002 Copyright and April 2004 Copyright, from May 4, 2005, the date of Mr. Oravec's deposition, through the entry of final judgment on August 1, 2006, in the amount of $98,267.40 to the Architect Defendants and $87,798.62 to the Developer Defendants. In addition, the Court shall award Defendants their reasonable out-of-pocket expenses and taxable costs from the filing of the original Complaint, on November 3, 2004, through the entry of final judgment on August 1, 2006, in the amount of $76,580.82 to the Architect Defendants and $54,186.92 to the Developer Defendants.

## I.   **BACKGROUND**[1]

This litigation involved five copyrighted architectural designs owned by Plaintiff Paul Oravec.[2] On February 15, 2003, Mr. Oravec read a newspaper article featuring a photograph of a high-rise building model, which he believed resembled his copyrighted work. The model depicted the architectural designs for two nearly identical condominium structures, the Trump Palace and Trump Royale (together, the "Trump Buildings"), located in Sunny Isles Beach,

---

[1] The following facts are drawn primarily from the Court's July 24, 2006 Order Granting Defendants' Motions for Summary Judgment, as well as the Eleventh Circuit's May 14, 2008 opinion affirming that Order [DE-265, 319]. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 469 F. Supp. 2d 1148 (S.D. Fla. 2006); *Oravec v. Sunny Isles Luxury Ventures*, 527 F.3d 1218, 1221-1222 (11th Cir. 2008).

[2] Plaintiff registered his copyrights on: (1) July 1, 1996 (the "1996 Copyright"); (2) May 2, 1997 (the "1997 Copyright"); (3) November 21, 2002 (the "2002 Copyright"); (4) March 4, 2004 (the "March 2004 Copyright"); and (5) April 16, 2004 (the "April 2004 Copyright"). (*See* Second Amended Compl., Exhibits A-B [DE-75].) The 1996, 1997, 2002 and April 2004 Copyrights are registered as "architectural" works under 17 U.S.C. § 102(a)(8). The March 2004 Copyright is registered as a "pictorial, graphic and sculptural work" (a "PGS" work) under 17 U.S.C. § 102(a)(5). *Id.*

2

Florida.[3]  Within weeks, Oravec contacted several attorneys to pursue his claims for potential

copyright infringement, but made no effort to contact any of the architects or developers

associated with the Trump Buildings.  (Oravec Deposition, pp. 101-102 [DE-169].)  In March

2003, a month after he saw the article, Plaintiff retained his current Florida counsel.  (Oravec

Deposition, pp. 439-440.)

On November 2, 2004, or approximately 20-months after initially viewing the

Defendants' high-rise model, Plaintiff filed this action against a number of individuals and

corporate entities involved in the construction of the Trump Buildings, including the Architect

and Developer Defendants [DE-1].[4]  Discovery concluded on March 20, 2006 [See DE-134], and

shortly thereafter, the Parties filed comprehensive Cross-Motions for Summary Judgment [DE-

164, 167, 170].  In July 2006, the Court held three hearings on the Cross-Motions, at which the

Parties presented oral argument, expert reports, computer animation, electronic evidence and

numerous visual displays in support of their respective positions [See DE-255, 258, 262].  On

July 24, 2006, the Court granted Defendants' Motions for Summary Judgment, holding (1) even

though issues of material fact existed as to Defendants' access to Oravec's copyrighted work, no

reasonable jury could find "substantial similarity" between the 1996 and 1997 Copyrights and the

Trump Buildings;[5] (2) Plaintiff could not establish infringement of the 2002 or April 2004

---

[3]  The designs for the Trump Buildings were substantially completed in March 2000.  At the time Plaintiff discovered the alleged infringement, only the foundation of the Trump Palace had been constructed.

[4]  Plaintiff filed a First Amended Complaint [DE-30] on January 19, 2005 and the Second Amended Complaint [DE-75] on May 16, 2005.  The Second Amended Complaint, which is the operative pleading, sought damages, permanent injunctive relief, as well as attorneys' fees and costs, arising from Defendants' alleged copyright infringement [DE-75].

[5]  See Oravec v. Sunny Isles Luxury Ventures L.C., et al., 469 F. Supp. 2d at 1168-1169 (S.D. Fla. 2006).

Copyrights, given his deposition testimony that the designs for the Trump Buildings were completed *prior* to the actual creation date of the work embodied in those protected works;[6] and (3) Plaintiff could not establish infringement of the March 2004 PGS Copyright, as PGS works cannot be infringed by the construction of a building as a matter of law [DE-265].[7]

On August 7, 2006, Plaintiff filed a Notice of Appeal to the Eleventh Circuit [DE-277], and on August 23, 2006, the Architect and Developer Defendants filed their Verified Motions for Attorneys' Fees and Costs [DE-278, 279].  On November 21, 2006, Magistrate Judge Chris McAliley stayed the Verified Motions pending the Eleventh Circuit's ruling [DE-310]. Approximately eighteen months later, on May 14, 2008, the Eleventh Circuit affirmed the Court's July 24, 2006 Order, holding that: (1) no "substantial similarity" existed between the 1996 and 1997 Copyrights and the Trump Buildings' design; (2) Plaintiff could not establish infringement of the March 2004 PGS Copyright, given the inapplicability of the "effective registration" doctrine; and (3) the Court did not abuse its direction by denying Plaintiff leave to file a Third Amended Complaint  [DE-319].[8]  *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d at 1228-1233.  On August 14, 2008, the Eleventh Circuit, without discussion, denied

---

[6] In addition, the Court found that Plaintiff had previously abandoned all copyright protection in his 2002 Copyright [DE-265].

[7] The Court also rejected Plaintiff's interpretation of the "effective registration" doctrine as applied to the March 2004 PGS Copyright. *See Oravec v. Sunny Isles Ventures, L.C., et al.*, 469 F. Supp. 2d. at 1162-1163 ("[O]n the facts of this case, the March 2004 derivative work might, at best, extend its PGS protection backwards to also afford PGS protection for the earlier 1996, 1997, and 2002 works upon which the March 2004 designs were based. The reverse is not true".).  The Eleventh Circuit affirmed. *See Oravec v. Sunny Isles Ventures, L.C., et al.*, 527 F.3d at 1229-1231 ("Oravec's reliance on the effective registration doctrine is misplaced").

[8] Plaintiff did not raise an appellate challenge to the Court's rulings on the 2002 Copyright and April 2004 Copyrights.

4

the Architect and Developer Defendants' application for appellate fees and costs [DE-324-9].[9]

Given the Eleventh Circuit's Mandate, on May 28, 2008, Magistrate Judge John O'Sullivan restored Defendants' Verified Motions for Fees and Costs [DE-316], and held a Hearing on those Motions on June 4, 2008 [DE-318].  On January 12, 2009, Magistrate Judge O'Sullivan issued his seventy-two page recommendation that awarding fees and costs to Defendants would serve the goals of the Copyright Act by deterring litigants, such as Mr. Oravec, from pursuing factually unreasonable claims or initiating costly litigation in the absence of pre-suit settlement discussions, while also compensating Defendants for their successful defense of the Trump Buildings' designs [DE-330].  Based on such reasoning, Magistrate Judge O'Sullivan ultimately recommended that: (1) the Court award the Architect Defendants $443,537.48 in attorneys' fees and $11,428.09 in out-of-pocket expenses pursuant to 17 U.S.C. § 505, as well as $65,152.73 in taxable costs pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1920; and (2) the Court award the Developer Defendants $480,769.30 in attorneys' fees and $11,200.19 in out-of-pocket expenses pursuant to 17 U.S.C. § 505, as well as $42,986.73 in taxable costs pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1920 [DE-330].

On January 30, 2009, Plaintiff filed four primary objections to the Report and Recommendation: (1) Oravec initiated this lawsuit with the sole motivation of protecting his copyrighted works; (2) Oravec's claims on the 1996, 1997, 2002 and April 2004 were objectively reasonable to pursue through summary judgment; (3) Oravec should, in addition to Defendants,

---

[9]     Plaintiff argues that the Eleventh Circuit's denial of Defendants' applications for appellate fees and costs precludes an award of fees and costs incurred at the trial level.  This argument, however, directly contradicts prior Eleventh Circuit precedent. *See Sherry Manufacturing Company, Inc. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 1033 (11th Cir. 1987) (in copyright infringement case, holding that rejection of appellate attorneys' fees and costs "in no way can be taken as an expression of our opinion on the merits of [the prevailing party's] claim for fees at the trial level").

share equal credit and compensation for furthering the evolving body of copyright jurisprudence; and (4) the fee and cost award, if any, should be drastically reduced given Oravec's limited financial means, as well as Defendants' decision to delay filing dispositive motions until after the conclusion of discovery [DE-332]. Defendants responded to Plaintiff's objections on February 17, 2009 [DE-332, 333, 334]. On February 27, 2009, Plaintiff filed his Reply brief [DE-335].

## II.   APPLICABLE LAW UNDER THE COPYRIGHT ACT

While it is the general rule in American jurisprudence that litigants must bear their own attorney's fees, Congress has provided an exception for prevailing parties of copyright litigation. Here, there is no dispute that the Court has the discretion to award the Architect and Developer Defendants, as prevailing parties, attorneys' fees and costs under the Copyright Act. Specifically, Title 17 U.S.C. § 505 states that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party...the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Although the imposition of fees and costs under § 505 is left to the broad discretion of the trial court, prevailing plaintiffs and prevailing defendants are equally entitled to recovery thereunder. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Moreover, a trial court "should not consider whether the losing party can afford to pay the fees, but whether imposition of fees will further the goals of the Copyright Act." *Mitek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27). To the latter end, the imposition of fees and costs should encourage "the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to

6

ensure that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works." *Id.* (quotations and citations omitted).

The Eleventh Circuit has emphasized that the "only preconditions to an award of fees is that the party receiving the fee be the prevailing party and that the fee be reasonable." *MiTek Holdings*, 198 F.3d at 842 (quotations and citations omitted).  To guide district courts in the exercise of their discretion, the Supreme Court has enumerated four non-exclusive factors under § 505 analysis: (1) frivolousness; (2) motivation (3) objective unreasonableness (both in factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *See Fogerty*, 510 U.S. at 534.  As noted above, the application of these factors must always be "faithful to the purposes of the Copyright Act and...applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534, n. 19.  "In copyright cases, 'although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) (quotation omitted).

III.   **ANALYSIS**

Magistrate Judge O'Sullivan's Report and Recommendation resolved two broad issues: (1) whether Defendants, as prevailing parties, are *entitled* to recover fees and costs under § 505; and, if so (2) whether the requested fee and cost award is *reasonable* under the facts presented in this matter.  Both issues are discussed below.

A.   **DEFENDANTS' ENTITLEMENT TO FEES AND COSTS UNDER 17 U.S.C. § 505**

As noted above, the imposition of attorneys' fees and costs under § 505 turns on the application of the four factors enunciated by the Supreme Court in *Fogerty*.  No single

7

consideration under *Fogerty* is determinative, *see Thompkins*, 2008 WL 896898, * at 7, so the Court will address each factor in turn.

### 1.    Plaintiff's Subjective Motivation

The Magistrate Judge found that Plaintiff was motivated, in-part, by commercial gain, and accordingly, that such factor weighs in favor of a fee and cost award to the Defendants. The Magistrate based his conclusion on the following facts: (1) Mr. Oravec, though seeking the total amount of profits derived from the Trump Buildings (approximately $120 million in favor of the Developer Defendants), acknowledged that his architectural designs, even if infringed, constituted merely 5% of the overall services the Architect Defendants rendered (or approximately $11,000.00 in profits); and (2) upon initially viewing the model of the Trump Buildings on February 15, 2003, Oravec did not alert Defendants of his potential infringement claim until filing suit on November 3, 2004. (*See* Oravec Deposition, pp. 101-102.)

Defendants assert that Plaintiff sued the Architect Defendants to try to reach the "deep pockets" of the Developer Defendants. While the Developer Defendants certainly consist of business entities larger than the Architect Defendants' entities, there is no evidence to demonstrate that Plaintiff sued the Architect Defendants merely to impose contributory and/or vicarious liability on the Developer Defendants. In fact, each version of the Complaint alleges *direct* copyright infringement on the part of Developer Defendant Sunny Isles Luxury Ventures, L.C. and Developer Defendant Dezer Properties LLC – indicating that Plaintiff believed, albeit incorrectly, that these Developer Defendants not only exerted ownership or control over the

Trump Buildings, but also *directly* infringed Plaintiff's copyrights.[10] Thus, the record does not adequately support the Defendants' assertion on this point.[11]

Having said that, however, Plaintiff has failed to squarely address Defendants' argument that Plaintiff improperly delayed bringing his claim by not offering an explanation as to why Plaintiff waited to take formal action until November 2004 *without first contacting the Architect or Developer Defendants.* Plaintiff's decision to forgo pre-suit discussions suggests improper motivation for two reasons.

First, the decision to avoid pre-suit discussions runs contrary to Plaintiff's subsequent request for permanent injunctive relief.[12] Significantly, the record demonstrates that the earliest point at which Plaintiff was willing to alert Defendants of their alleged infringement was on November 3, 2004 (the filing date of the original Complaint), or in other words, only *after* the Trump project was substantially underway. To that end, it is difficult to reconcile Plaintiff's silence and 20-month acquiescence to the Trump Buildings' construction, on one hand, with his November 2004 request for permanent injunctive relief, to *prevent* construction, on the other. In

---

[10] The true owners of the Trump Buildings, Developer Defendants Residences at Ocean Grand, Inc. and Royale Florida Enterprises, Inc., were ultimately identified during discovery.

[11] In addition, it is well-settled that copyright owners, such as Mr. Oravec, need only present evidence of the infringer's *gross revenue* to recover infringement profits. *See* 17 U.S.C. § 504(b). The burden then shifts to the infringer to establish "expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Here, Plaintiff offered evidence that the Developer Defendants earned approximately $622.2 million in gross revenue, while the Architect Defendants earned approximately $2.5 million in gross revenue, all derived from the development and sales associated with the Trump project. (*See* Dudney Report [DE-212].) Therefore, by offering evidence of the total gross revenue the Defendants earned, Plaintiff acted in conformity with his evidentiary burden under the Copyright Act. Because this case was resolved on liability issues, there was no resolution of the proper measure of damages in single-building architectural infringement cases.

[12] Plaintiff requested, *inter alia,* that Defendants be enjoined from: (1) "creating any derivative work from any original drawings or design by Oravec in any form whatsoever"; and (2) "taking any other action likely to cause confusion, mistake or deception as to the source or origin of Defendants' drawings, designs, or structures or of Oravec's drawings and design." (*See* Original Complaint, p.17-18 [DE-1].)

9

other words, had Plaintiff truly wished to prevent the unauthorized use of his copyrights, his demand would obviously have enjoyed greater feasibility at the inception of the Trump project, rather than at its conclusion in November 2004. Thus, Plaintiff's behavior suggests that his motive included the depiction of his copyrighted works in a high-rise, commercial structure, rather than the diligent preservation of those works.

Second, and relatedly, Plaintiff's non-communication suggests that Mr. Oravec did not wish to alert Defendants of his claims at a time when fees, costs, and most importantly, infringement damages, could most easily have been avoided. In fact, rather than minimizing the financial impact of this dispute, Plaintiff acquiesced to construction for approximately 20-months, *prior* to seeking the gross profits associated with the substantially completed Trump project. Accordingly, Plaintiff's behavior also indicates a motivation to enlarge the Trump Buildings' profits to increase his potential recovery for copyright infringement. *See* 17 U.S.C. § 504(b) ("copyright owner is entitled to recover the... profits of the infringer that are attributable to the infringement"). Therefore, this factor weighs in favor of the imposition of attorneys' fees and costs under § 505.[13]

### 2.    Frivolousness of Plaintiff's Arguments

Magistrate Judge O'Sullivan found, and Defendants do not dispute, that Plaintiff's claims

---

[13] Plaintiff's counter-arguments on this point are not persuasive. For example, Plaintiff contends that the 20-month delay arose from the need to "secure adequate counsel, engage in a reasonable investigation, and obtain any necessary copyrights." However, the need to secure counsel and obtain registered copyrights does not adequately explain Plaintiff's decision to entirely forgo pre-suit discussions with the Defendants.

Moreover, Plaintiff appears to argue that the Court's denial of Defendants' laches defense on summary judgment precludes a finding of improper motivation on the part of Mr. Oravec. However, the Court, as it was required to do on summary judgment, was looking at the record in the light most favorable to the non-moving party (i.e., Mr. Oravec). *See Oravec v. Sunny Isles Ventures, L.C., et al.,* 469 F. Supp. 2d. at 1176-1177. More importantly, the Court has never addressed Plaintiff's subjective *motivation* in filing this action, let alone Oravec's decision to refrain from pre-suit discussions.

were not frivolous at the commencement of the litigation.  (*See* Response to Plaintiff's

Objections, p. 4 [DE-333].)  For example, while ultimately holding that the 1996 and 1997

Copyrights were not "substantially similar" to the Trump Buildings, the Court's determination

was based on three fully-briefed, dispositive motions, three hearings, and a wide-array of expert

reports, diagrams, and visual displays, all offered at the conclusion of discovery.  Moreover,

Plaintiff's unsuccessful attempt to sue on the March 2004 PGS Copyright by invoking the

"effective registration" doctrine was not a frivolous interpretation of the relevant case law even

though it was incorrect.  Finally, Defendants' success on the 2002 and April 2004 Copyrights

ultimately turned on the actual creation date of the Trump Buildings' designs, which was elicited

and proved through factual discovery.[14]  (*See* Oravec Deposition, pp. 487-488.)  As such, this

factor weighs in favor of denying attorneys' fees and costs under § 505.

### 3. Objective Unreasonableness of Plaintiff's Claims

Under the third *Fogerty* factor, the Court must assess the objective reasonableness of

Plaintiff's claims throughout the course of the litigation.[15]  Magistrate Judge O'Sullivan found

---

[14]  The determination as to Plaintiff's claims on the 2002 and April 2004 Copyright is the closest question. For example, the Court previously ruled that Oravec voluntarily abandoned all copyright interest in the 2002 Copyright in or around October 2002, or approximately 2-years prior to filing suit.  *See Oravec v. Sunny Isles Ventures, L.C., et al.,* 469 F. Supp. 2d. at 1177-1178. In addition, Plaintiff eventually conceded, in his May 4, 2005 deposition testimony, that he created the designs embodied in the April 2004 Copyright in early 2004, yet discovered Defendants' alleged infringement approximately one-year earlier, in February 2003.

However, in giving Plaintiff the substantial benefit of the doubt, Mr. Oravec initiated this action in the absence of a formal determination that he abandoned his copyright interest in the 2002 Copyright.  Moreover, Plaintiff's initial decision to sue on the April 2004 Copyright, rather than risk a statute of limitations or laches affirmative defense, was not a frivolous tactic in the absence of discovery with regard to the actual creation date of the Trump Buildings' designs.

[15]  Plaintiff erroneously argues that the Court must assess the objective reasonableness of his claims only "at the time Oravec commenced suit."  In other words, according to Plaintiff, a finding that Oravec's claims were non-frivolous or objectively reasonable at the commencement of the action, should *categorically* preclude a finding that Plaintiff's claims became unreasonable at a subsequent point in the litigation.  This argument, however, must be rejected for two reasons.  First, under Plaintiff's interpretation of § 505, the "objective unreasonableness" and

11

that Plaintiff's claim on the March 2004 PGS Copyright was objectively reasonable, but concluded that Plaintiff's claims on the 1996, 1997, 2002, and April 2004 Copyrights were, or became, objectively unreasonable to prosecute.  Plaintiff objects to the Magistrate Judge's findings on the 1996, 1997, 2002 and April 2004 Copyrights.  The objective reasonableness of each Copyright claim is addressed below.

**a.**    **March 2004 PGS Copyright**

The Magistrate Judge found, and Defendants do not dispute, that Plaintiff's claim on the March 2004 Copyright was objectively reasonable.  The Court shall adopt the Magistrate's undisputed conclusion on this point for two reasons.

First, as noted above, Plaintiff attempted, albeit unsuccessfully, to seek "architectural

---

"frivolousness" determinations would effectively conflate into a single test, as both determinations would focus solely on Plaintiff's claims at the commencement of the litigation.  Significantly, Plaintiff has failed to cite, nor has the Court independently located, any authoritative case law adopting this narrow interpretation of the *Fogerty* factors.

Second, some of the case law Plaintiff cites undercuts his position.  For example, in *Luken v. International Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1239-1240 (S.D. Fla. 2008), the court stated that:

[T]he Court must assess the reasonableness of the losing party's position by evaluating it as of *the time that the party took the stance at issue*, not with the benefit of hindsight that conclusion of the litigation brings. ...

[A] court must consider not how many times in the litigation at issue the presiding court rejected a non-prevailing party's legal position, but rather, the clarity of the law with respect to the losing party's position at *the time that the losing party pressed its argument*.

*Luken*, 518 F. Supp. 2d at 1240 (S.D. Fla. 2008) (citations omitted) (emphasis added).

Accordingly, and contrary to Oravec's argument, the Court must assess the reasonableness of Plaintiff's claims at the time he "took the stance at issue" or at the time he "pressed" his arguments.  *See id.* at 1239-1240.  Here, for example, Plaintiff raised his claims on the five copyrighted works on numerous occasions, including the original Complaint, the First Amended Complaint, the Second Amended Complaint, and on summary judgment [*See* DE-1, 30, 75, 16, 170].  Therefore, in evaluating the objective reasonableness of Plaintiff's claims, the Court must consider the clarity of the law, as well as the record evidence, measured from the time, or times, at which Plaintiff raised or pressed the claim at issue.  *See, e.g., Jenkins v. Jury*, 2009 U.S. Dist. LEXIS 10297, at **6-9 (M.D. Fla. Feb. 2, 2009) (awarding defendant who filed motion for summary judgment attorneys' fees under § 505 as the plaintiff was on notice at the defendant's deposition that he had no claim against defendant and should have voluntarily dismissed defendant from the case).

work" protection on his March 2004 PGS Copyright through a novel application of the "effective registration" doctrine. *See Oravec v. Sunny Isles Luxury Ventures L.C., et al.*, 469 F. Supp. 2d at 1162-1163 ("there is no legal support for [Oravec's] view that prior copyrights would extend their architectural work protection forward to encompass future derivative designs [such as the March 2004 PGS Copyright]"). While unsuccessful, this litigation tactic carried two important consequences: (1) the Eleventh Circuit, as a matter of its first impression, adopted the "effective registration" doctrine as a viable legal theory; and (2) the Eleventh Circuit demarcated the limits of the "effective registration" doctrine by rejecting Plaintiff's expansive interpretation. *See Oravec v. Sunny Isles Luxury Ventures L.C., et al.*, 527 F.3d at 1228-1231 ("Oravec's reliance on the effective registration doctrine is misplaced. As indicated, the cases applying that principle involved derivative or collective works that incorporated material from unregistered preexisting works."). As such, Plaintiff's claim on the March 2004 PGS Copyright aided the progression of copyright jurisprudence within this Circuit.

Second, Plaintiff's claim on the March 2004 Copyright, including his proposed interpretation of the "effective registration" doctrine, required a substantial amount of briefing, and an equally substantial amount of judicial resources, to consider fully and ultimately reject, both at the trial level and on appeal [*See* DE-164, 167, 187, 226, 265, 319]. In other words, Plaintiff's efforts, though unsuccessful, carried enough merit and enough creativity to warrant significant opposition from Defendants on summary judgment, as well as due consideration from this Court in rendering final judgment. Accordingly, the Court finds that Plaintiff's claim on the

13

March 2004 PGS Copyright was not objectively unreasonable.[16]

### b.     1996 Copyright and 1997 Copyright

The Magistrate Judge found that Plaintiff's claims on the 1996 and 1997 Copyrights were objectively unreasonable.  In support of this recommendation, Defendants cite to the Court's prior ruling that no *reasonable* jury could find "substantial similarity" between the 1996 and 1997 Copyrights and the Trump Buildings.  *See Oravec v. Sunny Isles Luxury Ventures L.C., et al.*, 469 F. Supp. 2d at 1169-1172.  Specifically, the Court held that:

> No reasonable jury, properly instructed, could find substantial similarity between the [1996 and 1997 Copyrights and the Trump Buildings] without implicitly, and impermissibly, finding that Oravec owns a copyright in an idea.  Accordingly, Defendants are entitled to summary judgment in their favor as to the 1996 and 1997 designs for lack of substantial similarity.

> *Id.* at 1172.

Accordingly, given the Court's prior ruling, Defendants now contend that "this Court and the Eleventh Circuit have already implicitly found that there could exist no objective basis for suing on the 1996 and 1997 copyright registrations."

While recognizing its logic, the Court must reject Defendants' argument for two reasons.  First, under Defendants' reasoning, any similar ruling on summary judgment (i.e., that no "reasonable" juror could find "substantial similarity" between competing works) would

---

[16] At least one consideration does, however, diminish the reasonableness of Plaintiff's claim on the March 2004 PGS Copyright.  As noted above, at the July 12, 2006 Hearing, Plaintiff attempted, for the first time in the litigation, to sue on the March 2004 Copyright under a PGS infringement theory, rather than as an "architectural work."  This late request, voiced months after the conclusion of discovery and the filing of dispositive motions, was an objectively unreasonable tactic, as there was no record evidence to support a *prima facie* claim for PGS infringement.  *See Oravec v. Sunny Isles Ventures, L.C., et al.,* 469 F. Supp. 2d. at 1176-1177 ("While such a theory works in principle, because this never was [Plaintiff's] theory there is simply no evidence in the record").  Having said that, as Plaintiff's claim on the March 2004 Copyright was both novel and creative, and moreover, furthered the body of copyright jurisprudence in this Circuit, the Court shall not disturb the Magistrate Judge's undisputed recommendation.

*categorically* turn the underlying infringement claim into an objectively unreasonable one. However easy to administer, this *per se* rule wholly ignores the multitude of relevant factors which bear directly on the reasonableness of a copyright infringement claim.

First, the clarity of the law with regard to "architectural" work protection, especially as pertaining to high-rise structures like the Trump Buildings, was far from developed.  In fact, the ability to predicate liability on the *construction* of a building is a relatively recent development in copyright law, *see* Architectural Works Copyright Protection Act, Pub.L. No. 101-650 (1990), with a sparse body of interpretive precedent.  This is amply supported by the summary judgment papers, in which no Party could locate a directly on-point decision arising from this Circuit. Moreover, in affirming the Court's ruling, the Eleventh Circuit relied heavily on case law from sister Circuits, with no cited decision dealing with "architectural" work protection as applied to high-rise buildings, similar to those at issue in this case.

Quite simply, this void in copyright jurisprudence suggests that the Court's ruling on the 1996 and 1997 Copyrights, whether in favor of Plaintiff or Defendants, would necessarily *create* precedent, rather than simply follow it.  As such, it was exceedingly difficult for either side to reasonably predict the outcome of summary judgment as to those protected works.  Thus, the Court's final disposition does not by itself adequately reflect the lack of guiding precedent, nor the intellectual difficulty and challenge of resolving Plaintiff's claims on the 1996 and 1997 Copyrights.

Second, these were fiercely litigated claims that required three fully-briefed, dispositive motions, three hearings, and a wide-array of affidavits, expert reports, exhibits, visual presentations, and computer animation.  To now hold that Plaintiff acted unreasonably in

15

pursuing these claims would run contrary to the diligent advocacy, on the part of all Parties, upon which the Court heavily relied to clarify the disputed issues and render final judgment.  In short, the Court's ruling on the 1996 and 1997 Copyrights was far from simple or one-sided, and was based on extensive factual discovery and legal argument, all in the absence of meaningful precedent.  As such, the Court finds that Plaintiff's claims on the 1996 and 1997 Copyrights, though unsuccessful, were not unreasonably pursued.[17]

### c.      2002 Copyright and April 2004 Copyright

The Magistrate Judge also found that Plaintiff's claims on the 2002 and April 2004 Copyrights became objectively unreasonable to pursue.  This conclusion is supported by Oravec's May 4, 2005 deposition testimony that Defendants could not have copied either of these protected works.  (Oravec Dep., pp. 487-488, "Q: So they couldn't have copied from your [2002 Copyright]?  A: No.;  Q: And the same is true with the [April 2004 Copyright]?  A: ...they didn't copy it from my [April 2004 Copyright].)  Accordingly, Plaintiff's claims on the 2002 and April 2004 Copyrights became objectively unreasonable to pursue no later than May 4, 2005, the date

---

[17]      In support of their position, Defendants also cite to Plaintiff's Counsel's concession, made at the July 19, 2006 Hearing, that Defendants changed Mr. Oravec's designs "in a whole lot of respects" and "in a fairly dramatic way."  According to Defendants, these statements "constitute an admission that [Plaintiff] knew no infringement existed from the outset of the litigation."  Contrary to such argument, however, Counsel merely admitted that Defendants modified Plaintiff's copyrighted work.  Counsel did not, by any stretch of the imagination, concede that Plaintiff's infringement claims were objectively unreasonable.

of Oravec's deposition testimony.[18]

### 4.  Considerations of Compensation and Deterrence

As noted above, in determining whether to award fees and costs under § 505, the Eleventh Circuit has held that "the district court should consider not whether the losing party can afford to pay the fees but whether the imposition of fees will further the goals of the Copyright Act." *MiTek Holdings, Inc.*, 198 F.3d at 842.  With that broad principle in mind, it is clear that considerations of compensation and deterrence under the Copyright Act are inextricably intertwined with the reasonableness or frivolousness of the Parties' positions, as well as their motivation in litigating the dispute.  *See Luken*, 581 F. Supp. 2d at 1246 (rulings on frivolousness and objective unreasonableness govern the court's determination with regard to compensation and deterrence).  Thus, a party that successfully prevails over unreasonable or bad faith arguments should be awarded its fees and costs to promote enforcement and demarcation of the Copyright Act, and conversely, a party that asserts unreasonable or bad faith arguments should be

---

[18]     Plaintiff raises two primary objections to this finding.  First, Plaintiff argues that the Magistrate improperly "based his consideration of reasonableness on a *post hoc* rationalization of what was later learned during prosecution of the case."  As noted above, however, the Court must consider the reasonableness of Plaintiff's claims at the time he "took the stance at issue" or at the time he "pressed" his arguments, rather than at the mere commencement of the litigation.  *See Luken*, 518 F. Supp. 2d at 1240 (S.D. Fla. 2008).  To that end, Plaintiff acted unreasonably, given his May 4, 2005 testimony, by continuing to press his claims on the 2002 and April 2004 Copyrights both in the Second Amended Complaint (filed on May 16, 2005) and on summary judgment (filed on April 10, 2006) [DE-75, 90, 170].

        In addition, Plaintiff argues that "it...appears unlikely Oravec could properly have amended his complaint when first learning of the Trump building dates...given the early May 6, 2005 cutoff date for amendments."  Contrary to this argument, however, Plaintiff and his Counsel had a *duty*, pursuant to Fed. R. Civ. P. 11, to remove all unreasonable claims from the pleadings, whether by formal motion or joint stipulation, regardless of the amendment deadline.  *See* Fed. R. Civ. P. 11 ("[b]y presenting to the court a pleading...an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...the factual contentions have evidentiary support...").  Furthermore, the record demonstrates that Oravec conceded non-infringement of the 2002 and April 2004 Copyrights on May 4, 2005, or in other words, two days *prior* to the May 6, 2005 amendment deadline.  Had Plaintiff accepted the factual reality of his situation, he could have saved the Parties and Court the time and resources necessary to consider these claims.

17

deterred from doing so by paying the fees and costs the prevailing party incurred. On the other hand, a party that advances reasonable, good-faith positions should not be deterred from doing so, even if ultimately unsuccessful, as such claims or defenses help define the scope and limits of copyright protection. *See Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 916 (11th Cir. 1986) ( under § 505, "a losing party's good faith and the complexity of the legal issues likely would justify a denial of fees to a prevailing party") (internal quotations and citations omitted).

Here, Defendants argue that their successful defense against Plaintiff's claims furthered the goals of the Copyright Act by refining the scope of protection afforded to architectural works. While this is undoubtedly the case, it is also apparent that Plaintiff's claims on the 1996, 1997, and March 2004 Copyrights played an equally important role in furthering the goals of the Copyright Act. For example, by rejecting Plaintiff's novel interpretation of the rights associated with the March 2004 Copyright, the Eleventh Circuit clearly demarcated the limits of "effective registration" for future litigants in this Circuit. Moreover, in ruling on the 1996 and 1997 Copyrights, this Court, as well as the Eleventh Circuit, was required to make dispositive rulings on the boundaries of "architectural work" protection, specifically within the context of high-rise buildings. As noted above, this analysis, at least within this Circuit, was composed on a virtually blank slate. Because Plaintiff's claims on the 1996, 1997, and March 2004 Copyrights were reasonably prosecuted and diligently defended, all Parties should share credit and compensation for furthering the evolving body of copyright law in connection therewith.

Having said that, Plaintiff did not initiate this action with entirely altruistic motives, which is demonstrated by his twenty-month silent acquiescence to the Trump Buildings'

18

construction and failure to engage in timely pre-suit discussions.  In addition, Plaintiff's claims

on the 2002 and April 2004 Copyrights became objectively unreasonable, at the very latest, on

May 4, 2005.  Taken together, the Court finds that future copyright holders should be deterred

from initiating costly litigation, without first attempting non-judicial resolution.  Moreover,

future plaintiffs should also be deterred from pursuing causes of action, such as Oravec's claims

on the 2002 and April 2004 Copyrights, after discovery has proved them unreasonable.

### 5.   Balancing of the *Fogerty* Factors

To summarize, Oravec's claims were non-frivolous at the commencement of the

litigation, although some evidence supports a conclusion that he was at least in part motivated by

commercial gain.  Plaintiff's claims on the 1996, 1997, and March 2004 Copyrights were

objectively reasonable, and further defined the scope of "architectural work" protection as

applied to high-rise buildings, including the adoption of the "effective registration" doctrine

within the Eleventh Circuit.  However, Plaintiff's claims on the 2002 and April 2004 Copyrights

became objectively unreasonable to pursue no later than May 4, 2005.

Accordingly, after balancing the *Fogerty* factors, the Court finds that Oravec's failure to

remove the unreasonable claims from the pleadings, coupled with his pecuniary motivation,

warrants the imposition of fees and costs as a deterrent measure to future litigants.[19]  Therefore,

in an effort to deter the prosecution of unreasonable claims, the Court shall award Defendants all

reasonable attorneys' fees incurred to defend against the 2002 and April 2004 Copyright claims,

from May 4, 2005 (the latest date on which these claims became objectively unreasonable)

through August 1, 2006 (the entry of final judgment).  Furthermore, to deter the future filing of

bad faith lawsuits and encourage participation in pre-suit discussions, the Court shall also award

Defendants their reasonable "out-of-pocket expenses," including photocopying, postage, travel

expenses, telephone charges, paralegal expenses and computer research, as well as their taxable

costs enumerated in 28 U.S.C. § 1920, from November 3, 2004 (the filing date of the original

Complaint) through August 1, 2006 (the entry of final judgment).  *See Lil' Joe Wein Music Inc.*,

2008 WL 2688117, * at 14 (S.D. Fla. 2008) (pursuant to § 505, awarding attorney's fees,

reasonable out-of-pocket expenses, and taxable costs enumerated in § 1920).

---

[19]  Plaintiff's argument that Defendants should not be awarded attorneys fees because they chose to raise a number of dispositive arguments on summary judgment instead of a motion to dismiss fails not only because Plaintiff cannot complain about the manner in which Defendants chose to defendant an action *that Plaintiff initiated, see Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation*, 347 F. Supp. 2d 1310, 1325 (N.D. Ga. 2004); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (a party cannot complaint about mounting fees when it initiates and tenaciously litigates an action), but also because the Defendants filed a motion to dismiss that helped narrow the scope of the litigation.  On December 30, 2004, Architect Defendants filed a Motion To Dismiss Plaintiff's initial Complaint on the grounds that it failed to state a claim for direct infringement or professional malpractice [DE-23].  Plaintiff responded by filing a First Amended Complaint that removed the claim for professional malpractice [DE-30].

Moreover, Plaintiff's argument that the Defendants should have raised many of their arguments on a motion to dismiss contradicts his acknowledgment that "[s]ummary judgment entailed complicated legal issues" and that "Defendants' experts acknowledged the complexity and novelty of the issues presented."  Plaintiff relies on the complexity of the issues to argue against the awarding of fees and does not point to the various iterations of his Complaints to demonstrate how these "complicated legal issues" could have been resolved on the pleadings alone.

**B.**     **REASONABLE FEE AND COST AWARD**

**1.**     **ATTORNEY'S FEES UNDER 15 U.S.C. § 505**

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonably hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). This "lodestar" may be then adjusted based on the results obtained and, in doing so, the court can attempt to identify specific hours spent on unsuccessful claims or can simply reduce the award by a proportional figure. *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.*

### a.     Reasonable Hourly Rate

First, the Court must determine whether the fees the Defendants are requesting were incurred at a reasonable hourly rate. Doing so requires the Court to consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services. *Id.* at 1299. In determining the prevailing markets rates, the Court is to consider facts such as "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorneys' relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

### 1)     Burlington Schwiep for Architect Defendants

Burlington, Schwiep, Kaplan & Blonsky, P.A. ("Burlington Schwiep") incurred fees on behalf of the Architect Defendants in this case. The Architect Defendants requested hourly rates

of $300 to $425 for senior attorneys, $200 to $250 for junior attorneys and $80 to $90 for

paralegals.  Magistrate Judge O'Sullivan found that hourly rates of $350 to $425 for senior

attorneys, $225 for junior attorneys and $90 for paralegals were reasonable and appropriate,

based on Burlington Schwiep's reputation and experience, his familiarity with attorneys' fees in

general and his prior award of attorneys' fees against the Developer Defendants [DE-274].

Plaintiff has not opposed these findings and, after reviewing the record and pertinent authorities,

the Court agrees that hourly rates of $350 to $425 for senior attorneys, $225 for junior attorneys

and $90 for paralegals are reasonable and appropriate.

### 2)       Attorneys for Developer Defendants

The Developer Defendants request fees incurred by two firms: (1) Baker & McKenzie

and (2) Russomanno & Borello.  The fees requested by each firm will be addressed in turn.

### A)       Baker & McKenzie

The Developer Defendants' fee expert, Kenneth R. Hartmann ("Hartmann"), summarized

the requested rates for Baker & McKenzie's services as follows:

| Timekeeper | Type | Hourly Rate (suggested by Hartmann) |
|---|---|---|
| James Jacobs | Attorney | $495 |
| Mark Winston | Attorney | $450 |
| Donald Hayden | Attorney | $460 |
| Michael Stoker | Attorney | $325 |
| Jose M. Ferrer | Attorney | $200 |
| Yafit Tako | Attorney | $200 |
| Neil Reddy | Attorney | $200 |

| Michaela F. Carpio | Paralegal | $90 |
| Alana Goldberg | Paralegal | $90 |
| Mary Ferrari | Paralegal | $90 |
| Miami Paralegals | Paralegal | $90 |

Judge O'Sullivan found these rates to be consistent with his Order imposing sanctions on

Developer Defendants and awarding Plaintiff attorneys' fees [DE-274] and adopted them for

purposes of calculating the amount of reasonable fees incurred by Developer Defendants.

Plaintiff has not objected to these findings and, after reviewing the record and pertinent

authorities, the Court agrees the rates provided above are reasonable and appropriate.

### B)      Russomanno & Borello

Hartmann summarized the requested fees for Russomanno & Borello's services as

follows:

| Timekeeper | Type | Hourly Rate (suggested by Hartmann) |
| --- | --- | --- |
| Herman J. Russomano | Attorney | $300 |
| Robert J. Borello | Attorney | $300 |
| Lora Damiani | Attorney | $200 |
| Herman J. Russomano, Jr. | Law Clerk | $90 |
| Geman Palazzotto | Paralegal | $90 |
| Mark T. Marshall | Paralegal | $90 |

Judge O'Sullivan also found these rates to be reasonable and appropriate and adopted

them for purposes of calculating the amount of reasonable fees.  Plaintiff has not objected to

these findings and, after reviewing the record and pertinent authorities, the Court agrees the rates

provided above are reasonable and appropriate.

23

### b.    Hours Reasonably Expended

Next, the Court must assess the reasonableness of the hours expended by Defendants'
counsel in defending against the 2002 and April 2004 Copyrights during the time period in which
the Court is awarding attorneys' fees.  Before addressing the reasonableness of the hours
expended, the Court must define the scope of the fees it is to examine, based on its determination
that the Defendants will be awarded fees (a) incurred between May 5, 2005 and August 1, 2006,
and (b) defending against the 2002 and April 2004 Copyright claims.

First, the Court must reduce the amount fees the Defendants' have claimed based on its
determination that it will only award fees incurred between the date of Oravec's first deposition
(May 4, 2005) and the date when the Court entered final judgment in Defendants' favor (August
1, 2006).  As noted in Magistrate Judge O'Sullivan's Report and Recommendation, Defendants'
requested fees, excluding fees incurred by attorneys or paralegals who worked less than 15 hours
on the action,[20] can be summarized as follows:

| Firm | Hours | Fees |
|---|---|---|
| Burlington Schwiep (Architect Defendants) | 1,900.2 | $594,367.30 |
| Baker & McKenzie (Developer Defendants) | 1,333.3 | $212,500 (54.3% discount)[21] |
| Russomanno & Borello (Developer Defendants) | 1,670.4 | $412,722.00 |

[20]  Judge O'Sullivan omitted fees incurred by attorneys and paralegals who billed less than 15 hours on the
litigation, an approach recommended by one of the Defendants' fee experts.  Neither party has objected to the
approach and the Court finds that a reduction for fees incurred by attorneys and paralegals with no day-to-day
involvement in the litigation is appropriate.

[21]  Though Baker & McKenzie incurred $465,252.00 in fees under the rates provided above, it accepted the
substantially reduced amount of $212,500 in full satisfaction of its attorneys' fees when it withdrew as defense
counsel.  Thus, Baker & McKenzie provided Developer Defendants with a 54.3% discount.

The Court has reviewed the bills submitted by each firm and determined reductions should be made as follows. Burlington Schwiep represented the Architect Defendants at the early stages of the litigation through the Court's entry of final judgment. According to Burlington Schwiep's bills, it incurred $70,274.50 in claimed fees prior to May 5, 2005. As a result, the Court finds that Burlington Schwiep incurred $524,092.80 ($594,367.30 - $70,274.50) in fees during the time period in which the Court will award fees.[22]

Two firms represented the Developer Defendants during the relevant time period. Baker & McKenzie began the litigation and withdrew in August of 2005 after representing the Developer Defendants for about nine months. According to Baker & McKenzie's bills, it incurred $281,407 in fees through May 4, 2005. As a result, Baker & McKenzie incurred $183,845 ($465,252 - $281,407) in fees from May 5, 2005 until it concluded its involvement in the litigation in August of 2005. After applying the 54.3% discount Baker & McKenzie provided to the Developer Defendants, this amount is reduced to $84,017.17. Russomanno & Borello only began incurring fees in August 2005 and incurred just $1,680 after Final Judgment on August 1, 2006. As a result, the Court finds that Baker & McKenzie incurred $84,017.17 and Russomanno & Borello incurred $411,042.00 ($412,722.00 - $1,680.00) during the time period in which the Court will award fees.

To summarize, the Defendants' firms incurred fees during the relevant time period as follows:

---

[22] Architect Defendants requested fees incurred through July 18, 2006, so the Court need not subtract for fees incurred by their counsel after August 1, 2006.

| Firm | Hours (5/5/2005 - 8/1/2006) | Fees (5/5/2005 - 8/1/2006) |
|---|---|---|
| Burlington Schwiep (Architect Defendants) | 1,677.0 | $524,092.80 |
| Baker & McKenzie (Developer Defendants) | 840.6 | $84,017.17 (54.3% discount) |
| Russomanno & Borello (Developer Defendants) | 1,670.6 | $411,042.00 |

Second, the Court must determine the amount of fees incurred by the Defendants' firms in defending against the 2002 and April 2004 Copyright claims. The Court will apply a proportional figure based on an assessment of the effort Defendants expended in defending against claims based on those two Copyrights relative to the remaining three Copyrights. *Norman*, 836 F.2d at 1302 (allowing proportional reductions in lieu of hour-by-hour attribution of work to particular claims or defenses).

Having re-reviewed the docket, the Parties' Motions For Summary Judgment and the Defendants' bills, the Court finds that the Defendants generally asserted broad defenses that would each offer protection against all of Plaintiff's Copyright claims. For example, the Architect Defendants' Motion For Summary Judgment [DE-167] addresses almost entirely a series of defenses applicable to all of the Copyright claims at issue, including (1) Oravec's failure to satisfy the requisite standards for protection of an architectural work;[23] (2) Oravec's failure to establish that Defendants' accessed any of the protected materials; (3) lack of substantial similarity between Defendants' materials and the design of the Trump buildings; (4) the

---

[23] Obviously, this defense does not address the validity of the March 2004 Copyright, which was registered as a pictorial, graphic and sculptural ("PGS") work. Instead of addressing whether the March 2004 Copyright consisted of protectable material, Defendants instead argued that the Copyright contained no plans from which they copied.

Architect Defendants' independent creation of the designs for the Trump buildings; (5) Oravec's improper solicitation of developers; and (6) laches.  However, of these arguments, only the defenses based on the lack of substantial similarity and lack of access required the Defendants' to assess evidence unique to the 2002 and April 2004 Copyrights.[24]  As a result, the Court will award Defendants 25% of the fees incurred during the relevant time period to compensate them for defending the 2002 and April 2004 Copyright claims while those claims were being unreasonably maintained.[25]

After applying the resulting 75% reduction, the base fees incurred during the relevant time period can be summarized as follows:

| Firm | Fees (5/5/2005 - 8/1/2006) |
| --- | --- |
| Burlington Schwiep (Architect Defendants) | $131,023.20 |

---

[24] Defendants argue that Plaintiff's 2002 submission to the Lower Manhattan Development Corporation waived *any* claims of copyright infringement, not just infringement of the 2002 and April 2004 Copyrights.  (*See* Architect Defendants' Motion For Summary Judgment at page 37).

[25] Plaintiff's claim that "as a practical matter, when the date of the Trump building designed was learned, pursuit of the 2002 and April 2004 Copyrights as to infringement was abandoned" is flatly contradicted by the record.  (*See* DE-332, Plaintiff's Objections to Judge O'Sullivan's Report and Recommendation at page 17).  On April 10, 2006, Plaintiff filed a Motion For Summary Judgment [DE-170] seeking to establish as a matter of law that his copyrights were valid and that the creation dates identified in his registration materials were valid.  Plaintiff sought summary judgment on these issues with respect to the 2002 and April 2004 Copyrights as well as the three other Copyrights.  Moreover, in his Statement Of Facts supporting his response to the Defendants' Motions For Summary Judgment, filed on May 4, 2006, Plaintiff continued to assert that Defendants infringed *all* of the Copyrights listed including the 2002 and April 2004 Copyrights.  (*See* DE-189 at pages 3-5).  Finally, Plaintiff argued in his brief responding to Architect Defendants' Motion For Summary Judgment that he created the materials underlying the 2002 and April 2004 Copyrights "long before Sieger Suarez completed its design for the Trump Palace and Royale."  (*See* DE-187 at pages 15-16).

In short, the record fails to provide any indication that Defendants should not have continued to vigorously defend against the 2002 and April 2004 Copyright claims through summary judgment.  While Defendants' bills do not identify whether work was being performed in defense against a particular copyright, there is no reason to penalize the Defendants for that given Plaintiff's continuous pursuit of claims pursuant to all five Copyrights and the unreasonableness of expecting the Defendants' attorneys in this case to attribute work to defending against a particular copyright given Plaintiff's decision to allege infringement of all five Copyrights in a single count.

| Baker & McKenzie (Developer Defendants) | $21,004.29 |
|---|---|
| Russomanno & Borello (Developer Defendants) | $102,760.50 |

Finally, the Court must address whether any additional reductions should be made for duplicative work or other hours that were not reasonably expended in defense against the 2002 and April 2004 Copyrights. The Court will examine the issue with respect to each of the firms that incurred fees on behalf of the Defendants.

### 1)   Burlington Schwiep For Architect Defendants

Judge O'Sullivan found that a twenty-five percent reduction to the Architect Defendants' base fees was necessary because Burlington Schwiep's time entries reflected duplicative work by multiple attorneys and block billing. His Report and Recommendation gave examples where multiple attorneys incurred fees on the same project, including attendance at depositions, meetings with experts, and preparation of Architect Defendants' summary judgment briefs. Neither Architect Defendants nor Plaintiff objected to this reduction.

While the complexity and financial stakes of this litigation could warrant having multiple attorneys compose a difficult and complex brief or attend a critical deposition, the burden is still on the Architect Defendants to explain "the distinct contribution each attorney made to the task." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 433 (11th Cir. 1999). Architect Defendants' bills do not identify how each attorney contributed to the tasks involving multiple attorneys. While Architect Defendants could have used averments from the participating attorneys or a fee expert to demonstrate the distinct contributions of the attorneys involved, *see, e.g., Trotter v. Columbia Sussex Corp.*, 2010 U.S. Dist. LEXIS 7625, at **20-22

28

(S.D. Ala. Jan. 29, 2010) (two attorneys who attended deposition together satisfying burden by submitting affidavits discussing their distinct contributions), their fee expert does not attempt to identify those contributions and they have not submitted affidavits from their attorneys.  As a result, after reviewing the record and pertinent authorities, the Court agrees that a twenty-five percent reduction in Architect Defendants' base fees is necessary, resulting in an award of $98,267.40 in fees.[26]

### 2)    Baker & McKenzie For Developer Defendants

Judge O' Sullivan found that the reduced fee Baker & McKenzie charged to Developer Defendants was reasonable and accounted for any excess hours or hourly rates that may have been charged.  Plaintiff has not objected to this finding, and after reviewing the record and pertinent authorities, the Court agrees that a reduction beyond Baker & McKenzie's 54.3% discount is not necessary.  As a result, Developer Defendants will be awarded $21,004.29 for fees incurred by Baker & McKenzie.

### 3)    Russomanno & Borello For Developer Defendants

Finally, Judge O'Sullivan found that a thirty-five percent reduction to Russomanno & Borello's base fees was necessary because its time entries also reflected duplicative work by multiple attorneys and block billing.  Examples included preparation of Developer Defendants' summary judgment briefs and work already performed by Baker & McKenzie before that firm withdrew as counsel.  Neither Developer Defendants nor Plaintiff objected to this reduction.  After reviewing the record and pertinent authorities, the Court agrees that a thirty-five percent

---

[26] Almost all of the examples of duplicative billing took place after May 4, 2005, so a twenty-five percent reduction is still necessary despite the limitation of base fees to fees incurred between May 5, 2005 and August 1, 2006.

reduction in Developer Defendants' base fees is necessary, resulting in an award of $66,794.33

for fees incurred by Russomanno & Borello.  Developer Defendants' total attorneys' fees award,

therefore, is $87,798.62 ($21,004.29 + $66,794.33).

### 2.     REASONABLE OUT-OF-POCKET EXPENSES UNDER 17 U.S.C. § 505

Defendants also seek reimbursement of out-of-pocket litigation expenses under Section

505 of the Copyright Act.  This Section authorizes an award of attorneys' fees encompassing

"out-of-pocket expenses incurred by the attorney which are typically charged to a client in the

course of providing legal services, such as photocopying, paralegal expenses, travel costs and

telephone costs." *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *14.

Judge O'Sullivan found that all of the Defendants' claimed out-of-pocket expenses were

contemplated under § 505 with the exception of Architect Defendants' claim for mediation

expenses.  Accordingly, he recommended awarding Architect Defendants $11,428.09 for out-of-

pocket expenses including postage, express mail, travel expenses, computer research and

photocopying, and Developer Defendants $11,200.19 for out-of-pocket expenses including

travel, couriers, postage and long distance telephone charges.  None of the Parties have objected

to these findings and, after reviewing the record and pertinent authorities, the Court agrees that

these reasonable out-of-pocket expenses should be awarded.[27]

---

[27] The Court also affirms and adopts Judge O'Sullivan's recommendation concerning expert fees.  Both sets of Defendants requested expert fees at rates exceeding the $40 per day rate allowed for such witnesses in the Eleventh Circuit in order to preserve the issue for appeal.  *See Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1040 (11th Cir. 2001).  However, Judge O'Sullivan did not award any costs related to experts because he could not ascertain from Defendants' filings how many expert witnesses were deposed and/or testified at court hearings.  Defendants have not objected to this recommendation.

### 3.   TAXABLE COSTS UNDER 28 U.S.C. § 1920

Finally, Defendants seek taxable costs under 28 U.S.C. § 1920.  Section 505 of the Copyright Acts authorizes the recovery of categories taxable costs pursuant to 28 U.S.C. § 1920 in addition to out-of-pocket litigation expenses.  Architect Defendants submitted a Bill of Costs [DE-329 and attachments] identifying $105,227.07 in costs, but the Architect Defendants ultimately requested $65,152.73 after making concessions in its reply.[28]  Developer Defendants submitted a Bill of Costs seeking reimbursement for $55,638.51 for court reporter fees, transcripts and copy fees [DE-328-1], but they also agreed to concessions reducing their claimed costs to a total of $42,986.73.

Judge O'Sullivan found that Architect Defendants' request for $65,152.73 in costs for witness fees, services fees, court reports, copies and other miscellaneous fees fell into the categories authorized by § 1920 and were reasonable.  He also found that Developer Defendants' request for $42,986.73 in costs for court reporters, transcripts and copying fees were reasonable.  None of the Parties have objected to these findings and, after reviewing the record and pertinent authorities, the Court agrees that these reasonable § 1920 costs should be awarded.  Having carefully considered Judge O'Sullivan's Report and Recommendation, Plaintiff's Objections, the record and pertinent authorities, it is hereby

ORDERED THAT

(1) Magistrate Judge O'Sullivan's Report and Recommendation [DE-330] is AFFIRMED AND ADOPTED IN-PART, AND REJECTED IN-PART.

---

[28]  As Judge O'Sullivan noted in his Report & Recommendation, Architect Defendants stated on page 11 of their reply that they sought $66,152.73 even though the aggregation of their concessions resulted in a total request for $65,152.73.  The discrepancy appears to have resulted from a typographical error.

(2) Architect Defendants are awarded $98,267.40 in attorneys' fees and Developer

Defendants are awarded $87,798.62 in attorneys' fees pursuant to 17 U.S.C. § 505.

(3) Architect Defendants are awarded $11,428.09 in out-of-pocket expenses and

Developer Defendants are awarded $11,200.19 in out-of-pocket expenses pursuant to 17

U.S.C. § 505.

(4) Architect Defendants are awarded $65,152.73 in costs and Developer Defendants are

awarded $42,986.73 in costs pursuant to 17 U.S.C. § 505.

(5) Plaintiff's Motion For Hearing on Judge O'Sullivan's Report and Recommendation is

DENIED [DE-337].

(6) This case is CLOSED and all other pending motions are DENIED as moot.

DONE and ORDERED in Miami, Florida, this 30ᵗʰ day of March, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge John J. O'Sullivan
      Counsel of Record

32